**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **Storage Technology Corporation,** | **Civil No. 00-2253 (JRT/SRN)** |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| **Cisco Systems, Inc.,** | |
| **Defendant.** | |

---

Victor E. Lund, Esq., Ernie L. Brooks, Esq., and Thomas A. Lewry, Esq. on behalf of Plaintiff.

Joseph W. Hammell, Esq. on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on January 31, 2001, on Defendant's Motion Opposing Plaintiff's Motion for Pro Hac Vice Admission of the Brooks and Kushman law firm.[1] (Doc. No. 15.) For the reasons set forth herein, Defendant's motion is denied.

## I. BACKGROUND

This case arises out of Plaintiff's allegation that Defendant hired twenty six employees from Storage Technology, Inc. ("StorageTek") to develop and market a product to compete with

---

[1]On October 23 and October 25, 2000, Francis D. Dosal, Clerk of Court for the Federal District Court, District of Minnesota, granted Petitions for Admission Pro Hac Vice for Ernie L. Brooks, Seth E. Rodack, Philip Abromats, and Thomas A. Lewry. (Doc. No. 7.) Because these attorneys from the Brooks and Kushman law firm have been admitted to practice in this district pro hac vice, Defendant's motion is not properly characterized as a challenge to granting pro hac vice. Therefore, the Court will construe Defendant's motion as a motion to disqualify the Brooks and Kushman law firm from this case.

FILED MAR 13 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

StorageTek's computer networking products. (Compl., Doc. No. 1, ¶¶ 10, 11, 12.) Tim Kuik and Mark Bakke are two former employees of StorageTek and are implicated in this lawsuit. Their interactions with StorageTek attorneys of the Brooks and Kushman law firm, in addition to other facts, provide the basis for Defendant's claim that the Brooks and Kushman law firm should be disqualified.

**Tim Kuik**

Tim Kuik is a software engineer who worked for Network Systems Corporation ("Network Systems"). (Compl., ¶ 9.) As an employee at Network Systems, Mr. Kuik signed an Employee Agreement stating that he would "assign (and I do hereby assign) to the Company all of my rights to such Inventions and to applications for letters patent and/or copyrights in all countries and to letters patent and/or copyrights granted upon such Inventions in all countries." (Pl.'s Supp. Mem., Doc. No. 27, Attach.) Network Systems was then acquired by StorageTek. (Pl.'s Supp. Mem., Doc. No. 27, p. 2.)

As an employee of StorageTek, Mr. Kuik helped to invent a "Method and System for Dynamically Selecting Tape Drives to Connect with Host Computers." (Kuik Aff., Doc. No. 17, ¶ 3.) StorageTek sought a patent on this invention. (Id.) In connection with the patent application, Mr. Kuik signed a document entitled "Declaration for Patent Application and Power of Attorney." (Kuik Aff., Doc. No. 17, Ex. A.) The power of attorney appointed members of the Brooks and Kushman law firm "to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith."[2] (Id.) StorageTek was successful in

---

[2]Among the attorneys listed in the power of attorney were Ernie Brooks and Thomas Lewry, two attorneys that were granted pro hac vice admission in this case. (Kuik Aff., Doc. No.

prosecuting the patent.

In December 1999, Mr. Kuik left StorageTek and began working for NuSpeed, Inc., which was later acquired by Defendant Cisco Systems, Inc. ("Cisco"). (Kuik Aff., Doc. No. 17, ¶ 2.) In September 2000, Mr. Kuik was contacted by Mark Chuey, a non-lawyer patent agent from the Brooks and Kushman law firm, concerning StorageTek's desire to patent additional inventions created by Mr. Kuik when he was an employee at StorageTek. (Kuik Aff., Doc. No. 17, ¶ 5; Pl.'s Mem., Doc. No. 19, p. 3.) Mr. Chuey sent Mr. Kuik three additional draft patent applications. (Kuik Aff., Doc. No. 17, Ex. B.)

Between September 29 and October 19, Mr. Kuik had approximately six telephone calls with Mr. Chuey regarding the patent applications. (Kuik Aff., Doc. No. 17, ¶ 8.) Mr. Kuik explained to Mr. Chuey that he was unsure whether he could sign the documents because he was no longer a StorageTek employee. (Id.) In addition, Mr. Kuik was uncomfortable signing the documents because he knew that StorageTek was involved in litigation against his current employer Cisco in California concerning other patents. (Id.) Mr. Kuik discussed signing the StorageTek patent applications with Cisco's legal department. (Kuik. Aff., Doc. 17, Ex. C.) On October 19, 2000, Mr. Kuik wrote an email to Mr. Chuey stating: "Sorry for the delay. As Bakke indicated, we are waiting for word from cisco's [sic] legal department but it sounds like we'll be able to sign the applications." (Id.) In this same email, Mr. Kuik clarified some technical information regarding the patents. (Id.)

In December 2000, two months after this lawsuit was filed in October 2000, Mr. Kuik

---

17, Ex. A.)

received three letters from Mr. Chuey regarding the three patents that StorageTek was prosecuting. (Kuik Aff., Doc. No. 17, ¶ 14.) The letters enclosed the final patent applications for Mr. Kuik's signature. (Bakke Aff., Doc. No. 18, Exs. C, D, E.) The patent applications also included a power of attorney and an assignment provision acknowledging that the inventor assigns his rights in the patents to StorageTek. (Id.)

**Mark Bakke**

Mark Bakke is also a former employee of StorageTek and is a subject of this lawsuit. Mr. Bakke left StorageTek in December 1999 to work for NuSpeed, Inc., which was later acquired by Cisco. (Bakke Aff., Doc. No. 18., ¶ 2.) In April 2000, Thomas Lewry contacted Mr. Bakke to discuss the "APF patent."[3] (Bakke Aff., Doc. No. 18, ¶¶ 6, 7.) In May 2000, Mr. Bakke met with Mr. Lewry, and Mr. Brooks of the Brooks and Kushman law firm and Tim Schulte, StorageTek's in-house attorney. (Id.) The parties discussed Mr. Bakke's work at StorageTek in general and his work on the APF patent in particular. (Id.)

On September 29, 2000, Mr. Chuey sent Mr. Baake a letter and various documents regarding additional patent applications that StorageTek wanted to prosecute. (Bakke Aff., Doc. No. 18, ¶ 8.) The patent applications also contained a power of attorney. (Bakke Aff., Doc. No. 18, Ex. B.) Mr. Bakke conferred with Mr. Kuik on this correspondence and they agreed to discuss the matter with Cisco's in-house legal department. (Bakke Aff., Doc. No. 18, ¶ 9.) In December 2000, Mr. Bakke received three letters from Mr. Chuey regarding the three

[3]APF stands for "Method and Apparatus for Accelerated Packet Forwarding" and is a patent assigned to StorageTek, which is the subject of litigation between StorageTek and Cisco in California. (Bakke Aff., Doc. No. 18, ¶ 5.)

additional patents that StorageTek was prosecuting. (Bakke Aff., Doc. No. 18, ¶¶ 12, 13.) The letters enclosed the final patent applications for Mr. Bakke's signature. (Bakke Aff., Doc. No. 18, Exs. C, D, E.) The patent applications also included a power of attorney and an assignment provision acknowledging that the inventor assigns his rights in the patents to StorageTek. (Id.)

## II. DISCUSSION

Defendant argues that the Brooks and Kushman law firm should be disqualified from representing Plaintiff in this case because: (1) the Brooks and Kushman firm has a conflict given its prior relationship and dealings with Cisco employees who are accused of wrongdoing in this suit, specifically an attorney client relationship with Mr. Kuik; (2) the Brooks and Kushman law firm violated Minnesota Rule of Professional Conduct 4.3 in dealing with Mr. Bakke; (3) the Brooks and Kushman law firm will gain an improper advantage because it is representing StorageTek in a separate lawsuit in California against Cisco; (4) the conduct of Brooks and Kushman lawyers in other litigation shows that they are unfit to practice in the District of Minnesota; and (5) StorageTek is not prejudiced by the removal of the Brooks and Kushman law firm from this case. (Def.'s Mem., Doc. No. 16, pp. 1-2.)

Pursuant to Minnesota District Court Local Rule 83.6, the professional conduct of attorneys who practice in this Federal District Court is governed by the Minnesota Rules of Professional Conduct. Bieter Co. v. Blomquist, 132 F.R.D. 220, 223 (D. Minn. 1990) The Code of Professional Responsibility establishes proper guidelines for the professional conduct; however, a violation of the code does not automatically result in disqualification of counsel. Central Milk Producers Co-op. v. Sentry Food Stores, Inc., 573 F.2d 988, 991 (8th Cir 1978). The Court should also consider "the ABA Code of Professional Responsibility, the court's duty

to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceeding." United States v. Agosto, 675 F.2d 965, 969 (8th Cir. 1982).

"[T]he Court has wide discretion in framing sanctions to remedy abuses, including attorney disqualification, the assessment of attorney's fees, monetary sanctions, and the dismissal of an action." Olson v. Snap Products, Inc., 183 F.R.D. 539, 541 (D. Minn. 1998); see also Jenkins v. Missouri, 931 F.2d 470, 484 (8th Cir. 1991). Because of the potential for abuse, motions for disqualification should be subjected to particularly strict judicial scrutiny. Harker v. C.I.R., 82 F.3d 806, 808 (8th Cir. 1996). The party seeking the disqualification of opposing counsel bears the burden of showing that disqualification is warranted. A.J. by L.B. v. Kierst, 56 F.3d 849, 859 (8th Cir. 1995). However, any doubt as to whether a law firm should be disqualified is to be resolved in favor of disqualification. Coffelt v. Shell, 577 F.2d 30, 32 (8th Cir.1978).

## A. CONTACTS WITH TIM KUIK

Defendant argues that the Brooks and Kushman law firm should be disqualified from this case because of a conflict of interest. (Pl.'s Mem., Doc. No. 16, p. 13.) The alleged conflict arises out of Mr. Kuik's appointment of Brooks and Kushman attorneys to handle certain patent matters when he was an employee at StorageTek. (Id.) According to Defendant, the Brooks and Kushman law firm should be disqualified from representing StorageTek because they would be advancing positions adverse to their former client, Mr. Kuik. (Id.)

In September 1999, Mr. Kuik signed a "Declaration for Patent Application and Power of Attorney," which stated that "I hereby appoint the following registered practitioners to prosecute this application and to transact all business in the Patent and Trademark Office." (Kuik Aff.,

Doc. No. 17, Ex. A.) The listed practitioners included members of the Brooks and Kushman law firm, some of whom also represent StorageTek in this lawsuit -- Ernie Brooks and Thomas Lewry. (Id.) Defendant argues that the power of attorney provision in the patent application clearly establishes an attorney client relationship between Mr. Kuik and the Brooks and Kushman law firm, citing Henry Filters, Inc v. Peabody Barnes, Inc., 82 Ohio App.3d 255, 611 N.E.2d 873 (1992).[4] (Pl.'s Mem., Doc. No. 16, p. 14.)

It is undisputed that the power of attorney provision in this case is almost identical to the provision at issue in Henry Filters. Although the Ohio Court of Appeals found that the existence of such a document, in addition to other factors, established an attorney client relationship, the Henry Filters case has only limited persuasive, not precedential, value.

This district has not addressed the discrete issue of whether an attorney client relationship is established when there is a power of attorney provision contained in a patent application. However, the Federal Circuit Court of Appeals has addressed this exact issue in Sun Studs Inc. v. Applied Theory Associates, Inc., 772 F.2d 1557, 1568 (Fed. Cir. 1985). The Federal Circuit

---

[4]In Henry Filters, the trial court granted defendant's motion to disqualify attorneys who agreed to represent both plaintiff and defendant in preparing and prosecuting a joint patent application, abandoned the patent application, failed to notify defendant of the abandonment, and then represented plaintiff in a suit against defendant for defective goods. Henry Filters, 82 Ohio App.3d at 257-59, 611 N.E.2d at 874- 75. The Ohio Court of Appeals affirmed the trial court's decision stating that the ultimate issue was whether the client reasonably believed that an attorney- client relationship existed between itself and the attorneys. As evidence of such reasonable belief, the court noted the following: (1) the inventor expressly appointed the attorneys in a document signed by both parties that read, "I hereby appoint the following attorney(s) and /or agents to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith;" (2) the inventor supplied the attorneys with confidential information for the purpose of preparing the patent application; and (3) the inventor agreed to pay one-half of the attorney fees. Id. at 258-61, 611 N.E.2d at 874-76.

Court of Appeals has exclusive jurisdiction over patent appeals in the federal district and its precedent controls patent law issues. See Multi-Tech Systems, Inc. v. VocalTec Communications, Inc., 122 F.Supp.2d 1046, 1049 (D. Minn. 2000); 28 U.S.C. § 1295(a).

In Sun Studs, the Federal Circuit Court of Appeals briefly described the process of applying for a patent and the inventor's role in that procedure. See Id. at 1568. The Court explained that an inventor who is employed by a company, and who develops an invention in the course of his work, which he has agreed to assign to the company, is required to execute whatever papers are necessary for the company to prosecute the patent application on behalf of the company. Id.; 35 U.S.C. § 111; 37 C.F.R. § 1.41. The Court stated that it is routine in the patent process that an inventor execute an application appointing the attorneys who prepared the application at the direction of the party to whom the application must be assigned and on whose behalf it will be prosecuted. The choice of attorney is a decision made by the employer/assignee, not the inventor, and the power of attorney is given for the benefit of the employer/assignee, not for the inventor. Id . at 1569. Therefore, the Court determined that:

> Where the former relationship between the inventor and the patent counsel was solely technical in nature, and where the patent counsel in the former relationship was chosen by and at all times was working on behalf of the company rather than the inventor, it should not serve as automatic disqualification that the defendant is the inventor or a company with which he is associated.

Id. at 1568.

The Sun Studs case is factually similar to the case before the Court today. On March 1, 1994, Mr. Kuik signed an employee agreement with StoragTek's predecessor, Network Systems, which stated that Mr. Kuik assigned "all of my rights to such Inventions and to applications for

letters patent and/or copyrights in all countries and to letters patent and/or copyrights granted upon such Inventions in all countries." (Pl.'s Supp. Mem., Doc. No. 27, Attach.) Defendant argues, however, that Mr. Kuik assigned his rights in inventions only to Network Systems and that there is no such assignment to StorageTek. (Def. Supp. Mem., Doc. No. 26, p. 4.)

Although there is no express document assigning Mr. Kuik's invention rights directly to StorageTek, StorageTek presumably assumed all of Network Systems' rights and obligations when it acquired Network Systems. Furthermore, the Court does not find Defendant's assertion, that there was no assignment to StorageTek, compelling. Mr. Kuik does not claim to be the title holder to the patent for the "Method and System for Dynamically Selecting Tape Drives to Connect with Host Computers," the application which contained the power of attorney provision at issue here. Rather, the evidence shows StorageTek to be the rightful title holder to this patent.[5]

Thus, when Mr. Kuik appointed the Brooks and Kushman law firm to prosecute the patent application, he was merely fulfilling his obligation to assist StorageTek, who had the sole right of prosecution. See Teletronics Proprietary, Ltd. v. Medtronic, Inc., 836 F.2d 1332, 1336-37 (Fed. Cir. 1988) (no attorney client relationship when inventor merely assisted employer in preparing and prosecuting the patent application, including the routine execution of a power of

[5]Defendant also notes that Mr. Chuey included assignment agreements in the December 2000 correspondence to Mr. Kuik concerning the three additional patent applications. (Def. Supp. Mem., Doc. No. 26, p. 4.) Defendant argues that the inclusion of these assignment agreements demonstrates that Mr. Kuik never assigned his rights to StorageTek. (Id.) The Court declines to make a determination on the reason for including the assignment agreements because the power of attorney provision at issue in this case was signed in conjunction with the patent application for the "Method and System for Dynamically Selecting Tape Drives to Connect with Host Computers," to which StorageTek clearly holds title.

attorney). Mr. Kuik invented the "Method and System for Dynamically Selecting Tape Drives to Connect with Host Computers," and signed the patent application and the power of attorney for the patent. These facts demonstrate that Mr. Kuik's involvement in the prosecution of the patent was merely technical in nature. Therefore, under Sun Studs, the Court finds that the power of attorney form did not create an attorney client relationship requiring disqualification of the Brooks and Kushman law firm.

### B. CONTACTS WITH MARK BAKKE

Defendant also argues that the Brooks and Kushman law firm violated Minnesota Rule of Professional Conduct 4.3 in its dealings with Mark Bakke. (Pl.'s Mem., Doc No. 16, p. 15.) Rule 4.3 states:

> (a) In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall clearly disclose whether the client's interests are adverse to the interests of such person and shall not state or imply that the lawyer is disinterested.
>
> (b) When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.
>
> (c) During the course of representation of a client a lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, on those issues as to which the interests of each person are or have a reasonable possibility of being in conflict with the interests of the client.

Minnesota Rule of Professional Conduct 4.3. Defendant asserts that members of the Brooks and Kushman law firm did not disclose that StorageTek's interests were adverse to his own interests during the following contacts: (1) the April 2000 telephone call with Mr. Lewry to set up a meeting; (2) the May 2000 meeting with Mr. Lewry, Mr. Brooks, and Mr. Schulte to discuss the

APF patent; and (3) the September and December telephone and letter correspondence with Mr. Chuey concerning the three new patent applications. (Pl.'s Mem., Doc No. 16, p. 16.) According to Mr. Bakke, "[t]hey gave no indication that they or StorageTek might have interests adverse to me or that StorageTek might assert claims based upon any alleged wrongdoing by me. On the contrary, they acted as if their interests and mine were the same." (Bakke Aff., Doc. No. 18, ¶ 7.)

It is unclear from the record what information was exchanged during the May 2000 meeting and the extent of that information. See Olson v. Snap, 183 F.R.D. 539, 545 (D. Minn. 1998) (the pivotal question in evaluating the propriety of contacts with former employees is the likelihood that the information gathered intruded on legally privileged matters). However, according to Mr. Bakke's affidavit, the parties discussed Mr. Bakke's work at StorageTek in general and his work on the APF patent in particular. (Bakke Aff., Doc. No. 18, ¶ 7.) Mr. Bakke does not claim that he disclosed confidential or privileged information that StorageTek was not entitled to learn during the May 2000 meeting.

Furthermore, there was no lawsuit pending between StorageTek and NuSpeed/Cisco during the May 2000 meeting. Mr. Lewry stated that "we had no knowledge that there was, or would be, any adversary relationship between StorageTek and NuSpeed. The sole purpose of our meeting was with respect to Mr. Bakke's inventorship of a patent while working at Network Systems Corporation, a company later acquired by StorageTek. (Lewry Aff., Doc. No. 21, ¶ 2.) It may have been preferable for the Brooks and Kushman attorneys to have advised Mr. Bakke clearly that their interests may in the future become adverse to his interests as a way to dispel any confusion Mr. Bakke had concerning their representation. However, given that there was no

active lawsuit, and that the information exchanged at the meeting does not appear to be improperly disclosed, the Court finds that the April and May 2000 contacts with Mr. Bakke do not warrant the disqualification of the Brooks and Kushman law firm.

Similarly, Mr. Chuey's September and December telephone correspondence and letter correspondence do not present a basis for disqualification. (Chuey Aff., Doc. No. 20, ¶¶ 6, 7, 8, 12.) All of Mr. Chuey's contacts with Mr. Bakke were made in effort to secure Mr. Bakke's signature on patent applications for patents developed during Mr. Bakke's employment at StorageTek. In addition, Cisco's legal department was aware that StorageTek was seeking Mr. Bakke's signature on the patent applications. (Kuik Aff., Doc. 17, Ex. C.) Mr. Chuey's contacts with Mr. Bakke did not violate Rule 4.3, and therefore cannot provide a basis for disqualification.

### C. OTHER GROUNDS FOR DISQUALIFICATION

Defendant offers three additional grounds for disqualifying the Brooks and Kushman law firm: (1) the Brooks and Kushman law firm will gain an improper advantage in this lawsuit because they are also representing StorageTek in a separate lawsuit in California against Cisco; (2) the conduct of Brooks and Kushman lawyers in other litigation shows that they are unfit to practice in the District of Minnesota; and (3) StorageTek is not prejudiced by the removal of Brooks and Kushman from this case. (Def.'s Mem., Doc. No. 16, pp. 1-2.) The Court does not find these arguments persuasive.

Defendant is concerned that the Brooks and Kushman law firm could "circumvent appropriate discovery parameters and court orders" by gaining access to confidential information in one case that would not be available in the other case. (Def.'s Mem., Doc. No. 16, p. 17.)

Defendant further asserts that Plaintiff's decision to file this lawsuit after Cisco acquired NuSpeed, Inc. suggests that Plaintiff filed this suit to gain some advantage in the patent litigation against Cisco in California. (Def.'s Mem., Doc. No. 16, p. 18.) The Court disagrees. StorageTek has the right to hire Brooks and Kushman to represent it in both lawsuits, and absent evidence of actual impropriety, the Court is not inclined to disqualify StorageTek's choice of attorneys in this case. See Meat Price Investigators Ass'n v. Spencer Foods, Inc., 572 F.2d 163, 165 (8th Cir. 1978) (recognizing the importance of a party being represented by counsel of its choice).

Furthermore, Defendant has offered no credible evidence that the past actions of the Brooks and Kushman law firm are so egregious as to warrant banning the Brooks and Kushman law firm from representing StorageTek in this case in particular or from appearing in the Federal District of Minnesota in general. The Court has the highest expectation that both parties will conduct themselves according to the Minnesota Rules of Professional Conduct.

StorageTek chose the Brooks and Kushman law firm to represent them in this case, and the Court will not disturb that decision absent sufficient evidence to outweigh that decision.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

Defendant's Motion to Disqualify the Brooks and Kushman law firm (Doc. No. 15) is **DENIED**.

Dated: March 13, 2001

SUSAN RICHARD NELSON
United States Magistrate Judge