UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Storage Technology Corporation,

Plaintiff,

v.

Civ. No. 00-2253 (JNE/JGL)
ORDER

Cisco Systems, Inc.,

Defendant.

---

Ernie L. Brooks, Esq., and Thomas A. Lewry, Esq., Brooks & Kushman P.C., Richard P. Mahoney, Esq., Mahoney, Dougherty and Mahoney, P.A., and Timothy R. Schulte, Esq., Storage Technology Corporation, appeared for Plaintiff Storage Technology Corporation.

Roy A. Ginsburg, Esq., Joseph W. Hammell, Esq., and Clifford S. Anderson, Esq., Dorsey & Whitney LLP, and Neal Rubin, Esq., Cisco Systems, Inc., appeared for Defendant Cisco Systems, Inc.

---

Storage Technology Corporation (Storage) brought this action against Cisco Systems, Inc. (Cisco) asserting claims for interference with contractual relations, inducing breach of contract, corporate raiding, conversion, misappropriation of trade secrets under the Minnesota Uniform Trade Secret Act (MUTSA), Minn. Stat. §§ 325C.01-.08 (2002), and breach of fiduciary duties. The case is before the Court on Cisco's motion for summary judgment. For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

Storage is a technology company that focuses on storage networking. In late 1999 and into 2000, several of its employees left to join NuSpeed, Inc., a start-up company that opened in January 2000. NuSpeed sought to develop a storage-networking product. In September 2000, Cisco acquired NuSpeed for $450 million in Cisco stock. The next month, Storage commenced this action. Cisco now moves for summary judgment.

SEP 25 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED SEP 25 2003
DEPUTY CLERK'S INITIALS

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Interference with contractual relations

Storage asserts that Cisco interfered with noncompete, nonsolicitation, and nondisclosure provisions in contracts of former Storage employees. Under Minnesota law, the elements of a claim for tortious interference with contractual relations are: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) the intentional procurement of its breach; (4) without justification; and (5) damages. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998); *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994). Cisco argues *inter alia* that it is entitled to summary judgment because Storage failed to submit evidence of its damages resulting from the alleged breaches.

Citing *Miller v. Miller*, 222 N.W.2d 71, 78 (Minn. 1974), Storage asserts that "[d]amages for . . . interference with contract . . . are determined under the law of unjust enrichment." The Court disagrees. Considering the doctrine of corporate opportunity, *Miller* set forth the standards to determine whether a business opportunity belongs to a corporation. *Id.* at 78-81. *Miller* does not establish the measure of damages for interference with contractual relations.

Under Minnesota law, damages for interference with contract are limited to those that "might have been recovered for a breach of the contract itself." *Swaney v. Crawley*, 157 N.W. 910, 911 (Minn. 1916); *see Pothoff v. Jefferson Lines, Inc.*, 363 N.W.2d 771, 777 (Minn. Ct. App. 1985). Damages for breach of contract must be proved to a reasonable certainty. *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1016 (8th Cir. 2001). Recovery of speculative, remote, or conjectural damages is not allowed. *Id.* "Once the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is a reasonable basis upon which to approximate the amount." *Leoni v. Bemis Co.*, 255 N.W.2d 824, 826 (Minn. 1977).

Here, Storage claims neither lost sales nor lost profits as a result of the alleged breaches, and Storage does not identify any quantifiable damages resulting from the alleged breaches.[1] The sole measure of damages offered by Storage is contained in the expert report of George Norton, who opines that Storage's damages are $450 million, the acquisition price of NuSpeed. Norton's analysis does not satisfy Storage's burden to submit evidence of its damages.

[1] At the motion hearing Storage advanced a curious argument regarding the damages element, asserting that it had satisfied the element because it experienced delay and disruption from its employees' departures: "We had to hire people to replace them. We had to spend money for the training of others." The Court inquired: "How much is that worth and who is going to testify about that? Has the time come and gone?" Storage responded: "Nobody. . . . [T]hat is not our damages theory. . . . [W]e are not going to quantify it, because that is not what we are claiming." Storage's attempt to avoid summary judgment based on alleged damages that it expressly disclaims is unavailing.

As evidenced by his deposition testimony, Norton's analysis bears no relation to the damages resulting from the alleged breaches of contracts:

> Q: And when you were trying to come up with a value of damages, you did not try to assess damages based on any specific breach of any particular provision of any contract, correct?
>
> A: Correct.

To similar effect is a later exchange at the deposition:

> Q: Do you in your analysis consider any way in which [Storage's] situation would have been different but for the alleged breaches of contractual . . . duties by former [Storage] employees?
>
> A: No.

Under these circumstances, the Court finds the following remarks of the Seventh Circuit particularly appropriate:

> For years we have been saying, without much visible effect, that people who want damages have to prove them, using methodologies that need not be intellectually sophisticated but must not insult the intelligence. *Post hoc ergo propter hoc* will not do; nor the enduing of simplistic extrapolation and childish arithmetic with the appearance of authority by hiring a professor to mouth damages theories that make a joke of expert knowledge. The expert should have tried to separate the damages that resulted from [a competitor's lawful conduct] from the damages that resulted from particular forms of misconduct allegedly committed by that competitor . . . . No such effort was made.

*Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415-16 (7th Cir. 1992) (citations omitted). "Allowance for uncertainty is one thing, and rank speculation another." *Zazu Designs v. L'Oreal S.A.*, 979 F.2d 499, 506 (7th Cir. 1992) (citation omitted).

Storage's reliance on Norton to establish its damages from the alleged breaches of contracts by its former employees is misplaced. Having failed to identify any damages resulting from its former employees' alleged breaches of contract and failed to offer any reasonable basis to measure the alleged damages resulting from those breaches, Storage has not satisfied its

burden to submit evidence to create a genuine issue of material fact with respect to the fifth element of its claim for interference with contractual relations. The Court therefore concludes that Cisco is entitled to summary judgment on this claim.

**B. Inducing breach of contract**

The elements of a claim for inducing breach of contract are the same as those of the claim for interference with contractual relations. *Asklason v. Home Savings Association*, 416 N.W.2d 786, 788 (Minn. Ct. App. 1987) (citing *Royal Realty Co. v. Levin*, 69 N.W.2d 667, 671 (Minn. 1955)). Because Storage failed to submit evidence to establish its damages from the alleged breaches of contract, Cisco is entitled to summary judgment on this claim as well.

**C. Corporate raiding**

The parties dispute whether a cause of action for corporate raiding exists under Minnesota law. Storage characterizes the cause of action as a "systematic and massive program of hiring another company's employees." Storage contends that raiding is a form of unfair competition that is likely to be recognized in Minnesota, if it is not already part of Minnesota's law of unfair competition. The sole case cited by Storage to support its contention is *Medtronic, Inc. v. Eli Lilly & Co.*, Civ. No. 4-89-277, 1990 WL 61161 (D. Minn. Fed. 1, 1990). *Medtronic* does not recognize a cause of action for corporate raiding. Nor does the case predict whether the Minnesota Supreme Court would recognize such a cause of action if presented with the opportunity to do so. Instead, *Medtronic* analyzes allegations of improper solicitation of employees as a claim for tortious interference with prospective contractual relations. *Id.* at *2. In short, the Court finds Storage's reliance on *Medtronic* misplaced.

Relying on the disfavor with which Minnesota regards noncompete clauses and other restrictive covenants in employment contracts as restraints of trade, *see, e.g., Nat'l Recruiters,*

*Inc. v. Cashman*, 323 N.W.2d 736, 740 (Minn. 1982); *Ecolab, Inc. v. Gartland*, 537 N.W.2d 291, 294 (Minn. Ct. App. 1995), Cisco contends that Minnesota does not recognize such a cause of action and that the Minnesota Supreme Court would not recognize it. The rationale underlying Minnesota's disfavor of restrictive covenants in employment contracts, that "their enforcement decreases competition in the marketplace and restricts the covenantor's right to work and his ability to earn a livelihood," *Jim W. Miller Constr., Inc. v. Schaefer*, 298 N.W.2d 455, 458 (Minn. 1980), counsels against recognition of a novel cause of action that inhibits mobility in the workforce.

Given that Storage has not identified any case that either recognizes or predicts the recognition of a cause of action for corporate raiding in Minnesota law, that Minnesota views noncompete clauses and other restrictive covenants in employment contracts with disfavor, and that Minnesota law affords Storage causes of action for interference with contractual relations and inducing breach of contract, the Court declines to presume that the Minnesota Supreme Court would recognize a cause of action for corporate raiding if presented with the opportunity to do so.

In addition, Storage's failure to submit a viable damages theory entitles Cisco to summary judgment on the claim. Norton's analysis bears no relation to Storage's raiding claim:

> Q: As part of your analysis do you consider in any way how [Storage's] situation would have been different but for the alleged raiding of employees?
>
> A: No.

For these reasons, Cisco is entitled to summary judgment on Storage's corporate raiding claim.

**D. Conversion**

Conversion is "an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'" *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (quoting *Larson v. Archer-Daniels-Midland Co.*, 32 N.W.2d 649, 650 (Minn. 1948)). In *H.J., Inc. v. International Telephone & Telegraph Corp.*, 867 F.2d 1531 (8th Cir. 1989), the Eighth Circuit stated that it had "found no Minnesota cases which define the bounds of 'personal property' subject to conversion," and applied the general rule that a cause of action for conversion "applies to tangible property, or intangible property customarily merged in, or identified with, some document." *Id.* at 1547. In *Bloom v. Hennepin County*, 783 F. Supp. 418 (D. Minn. 1992), the court applied *H.J.* and concluded that Minnesota does not extend the tort of conversion to protect property interests in alleged trade secrets. *Id.* at 439-41. In this case, Storage has not distinguished its conversion claim from its MUTSA claim. Consequently, Cisco is entitled to summary judgment on Storage's conversion claim.

Even if the Court expanded Minnesota's law of conversion to apply to the property interest Storage asserts in its alleged trade secrets, Cisco would be entitled to summary judgment because Storage failed to submit a viable damages theory. "The measure of damages in a conversion case is generally the value of the property at the time of the conversion plus interest from that time." *McKinley v. Flaherty*, 390 N.W.2d 30, 32 (Minn. Ct. App. 1986). Again, Storage relies on Norton to establish its damages. Norton does not know what technology Storage claims was taken from it:

> Q: Do you know what the technology is that [Storage] claims was taken?
>
> A: No.

Not surprisingly, Norton does not attempt to value the technology that was allegedly converted:

Q: Well, you're trying to evaluate the people and the technology, correct?

A: At NuSpeed?

Q: Right.

A: Yes.

Q: Are you trying to differentiate between the people in technology who were once at [Storage] or are you just grouping it all together at NuSpeed?

A: It's not a matter of grouping it together, it's a matter of looking at the totality of what NuSpeed was, which was people and technology, and as you pointed out, venture capitalists, savvy venture capitalists in the background and good banking connections, and apparently a very impressive presentation capability as well.

Q: [Storage] had the opportunity itself to evaluate the worth of its employees and its technology, right?

A: I have no way to know.

Q: Do you think in the assessment of its worth of the people that used to work at [Storage] and the intellectual property that allegedly was misappropriated from [Storage], that [Storage's] own opinions as to the value of those people and technology should be taken into consideration?

A: Not in my opinion.

Q: Why not?

A: My opinion relates to what Cisco actually paid, not what [Storage] might have thought.

Q: So you didn't consider in any way any valuation [Storage] may have placed on these people or technology; is that correct?

A: I don't recall doing that.

. . . .

Q: Do you analyze in any way how [Storage's] situation would have been any different but for the alleged conversion of trade secrets?

A: No.

For these reasons, Cisco is entitled to summary judgment on the conversion claim.

**E. Misappropriation of trade secrets**

The MUTSA protects certain information by providing for an action for misappropriation of a trade secret. *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 897 (Minn. 1983). A plaintiff asserting a misappropriation claim must identify the trade secrets that it seeks to protect. *See Fox Sports Net N. L.L.C. v. Minn. Twins P'ship*, 319 F.3d 329, 335 (8th Cir. 2003); *Electro-Craft*, 332 N.W.2d at 897-98. Cisco argues that Storage has failed to identify the trade secrets that were allegedly misappropriated.

Storage asserts that its supplemental response to one of Cisco's interrogatories identifies the misappropriated trade secrets. According to Cisco, the Court cannot consider the supplemental response because it fails to comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure, which provides in relevant part: "[A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635 n.20 (8th Cir. 2000) (stating that documents that fail to comply with Rule 56(e) cannot be considered in deciding motion for summary judgment); *Causey v. Balog*, 162 F.3d 795, 803 n.4 (4th Cir. 1998). The supplemental response's verification states:

> **ROBERT E. MUNSEY**, an employee of [Storage], verifies the foregoing interrogatory answers on behalf of [Storage]. The matters stated in the answers are not necessarily within my personal knowledge. The facts stated have been assembled by authorized personnel, including counsel. The facts stated are true to the best of my current knowledge and belief.

The verification fails to show affirmatively that Munsey is competent to testify to the matters stated in the supplemental response. Accordingly, the Court cannot consider the supplemental response in deciding Cisco's motion.

The same conclusion is warranted with respect to Storage's Particularized Trade Secret Statement and its Supplemental Particularized Trade Secret Statement. Storage's counsel prepared the statements; Storage personnel did not verify them. They are not evidence that the Court can consider in deciding Cisco's motion. *See* Fed. R. Civ. P. 56(e).

Putting aside Storage's failure to submit evidence identifying its alleged trade secrets, the trade secret statements and the supplemental response do not definitively set forth the alleged trade secrets at issue. The particularized trade secret statements states: "The list of trade secrets is based on [Storage's] best knowledge on November 28, 2001. Trade secret discovery has not yet begun. As [Storage] learns more information [in] discovery, this list may be revised or supplemented." Similarly, the supplemental particularized trade secret statement states:

> The following sections provide background information to place the trade secrets into the context of this case. The information contained here is based on [Storage's] best information to date. However, discovery on the trade secret part of this lawsuit has not yet begun. Accordingly, the information presented in this document is likely to change as discovery progresses.

The supplemental response details how the trade secrets contained in the supplemental particularized trade secret statement were misappropriated. In short, Storage has failed to identify with sufficient specificity the trade secrets at issue in this case. Accordingly, Cisco is entitled to summary judgment. *See Electro-Craft*, 332 N.W.2d at 897 ("Without a proven trade secret there can be no action for misappropriation, even if [a defendant's] actions were wrongful.").

Without regard to Storage's failure to identify the trade secrets at issue in this case, the lack of evidence to support findings that the information Storage seeks to protect is a trade secret and that Cisco misappropriated that information entitles Cisco to summary judgment. Storage contends that Cisco misappropriated trade secrets embodied in Storage's SAN Appliance. Specifically, Storage asserts that Cisco's SN 5420 is identical architecturally, operationally, and structurally to the SAN Appliance.

A trade secret is information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Minn. Stat. § 325C.01, subd. 5. In other words, for information to qualify as a trade secret: (1) the information must be neither generally known nor readily ascertainable; (2) the information must derive independent economic value from secrecy; and (3) the plaintiff must make reasonable efforts to maintain secrecy. *Electro-Craft*, 332 N.W.2d at 899; *Widmark v. Northrup King Co.*, 530 N.W.2d 588, 592 (Minn. Ct. App. 1995).

Storage derives its characterization of the SAN Appliance from an 8-page draft slide presentation. The presentation includes a slide comparing reasons why Storage should build the SAN Appliance with reasons why Storage should continue to buy a comparable product from another company. Other documentation reveals that the SAN Appliance did not advance beyond Phase 0 of Storage's product development process. That process commences with a product idea checklist. A product line team evaluates the checklist. If approved, a product proposal is prepared. Phase 0 concludes with a review of the proposal. Phase 1 commences with approval of the proposal, proceeds to formation of a "core team," then turns to project planning. Phase 1

includes product specification: functional, configuration, and physical requirements, and agency standards. Phase 1 concludes with another review. Phase 2 begins with approval, proceeds to allocation of resources to develop the product, verifies and tests the product, and concludes with another review. Phase 3 includes another approval, final testing, and the product's release. Viewed in the light most favorable to Storage, the record does not contain sufficient evidence to establish that the information related to the SAN Appliance constitutes a trade secret.

With regard to whether the information embodied in the SAN Appliance is generally known or readily ascertainable, the Court notes that "mere variations on widely used processes cannot be trade secrets." *Electro-Craft*, 332 N.W.2d at 899. A unique combination of known elements may constitute a trade secret. *Id.* Here, the SAN Appliance was contemplated as a replacement for a product that Storage already purchased from another company. Storage cannot claim trade secrets in information that is readily available in the marketplace.

Turning to the statutory requirement of independent economic value from secrecy, it carries forward the common law requirement that information must provide a competitive advantage to constitute a trade secret. *Id.* at 900. Whether a plaintiff developed the information at its own expense is a factor in considering whether the information provides a competitive advantage. *Id.* at 901 n.12. Here, the SAN Appliance never proceeded beyond Phase 0 of Storage's product development process. Consequently, Storage did not undertake Phase 1's product specification. Nor did Storage allocate resources to develop the SAN Appliance as contemplated in Phase 2. Indeed, a block diagram in the slide presentation reveals that Storage had not specified which components to use in the SAN Appliance. Viewed in the light most favorable to Storage, the record does not support Storage's contention that the information embodied in the SAN Appliance derives independent economic value from secrecy.

As to the requirement of reasonable efforts to maintain the secrecy of the information, the MUTSA requires neither the maintenance of absolute confidentiality nor the implementation of specific measures to maintain the secrecy of a trade secret. Minn. Stat. § 325C.01, subd. 5; *Electro-Craft*, 332 N.W.2d at 901. A plaintiff asserting a misappropriation claim must demonstrate that it undertook some effort to keep the information secret. *Electro-Craft*, 332 N.W.2d at 901. Here, Storage used general employee-confidentiality agreements, but such agreements are insufficient to satisfy the statutory requirement. *See id.* at 902. Given its rejection early in the product development process, very little information about the SAN Appliance exists. What little information does exist was not the subject of reasonable efforts to maintain its secrecy. For example, the author of the slide presentation did not mark it as confidential because he did not believe the design of the SAN Appliance was confidential, proprietary, or a trade secret. None of the limited documentation of the SAN Appliance was marked confidential. *See Fox Sports Net N., LLC, v. Minn. Twins P'ship*, 319 F.3d 329, 336 (8th Cir. 2003). Nor did Storage secure the documentation related to the SAN Appliance. Storage admits that it found the documentation on back-up disks left behind by departing employees. Moreover, upon the resignation of the slide presentation's author, Storage did not inform him of the secrecy of the SAN Appliance. *See Electro-Craft*, 332 N.W.2d at 903. In short, viewed in the light most favorable to Storage, the record reveals that Storage did not subject information about the SAN Appliance to reasonable efforts to maintain its secrecy.

Assuming that Storage had established the existence of a trade secret in the information embodied in the SAN Appliance, Cisco would still be entitled to summary judgment because the record does not contain evidence to support a finding of misappropriation by Cisco. "Misappropriation involves the acquisition, disclosure, or use of a trade secret through improper

means." *Id.*; *see* Minn. Stat. § 325C.01, subd. 3. "[D]irect evidence of industrial espionage is rarely available and not required" to establish a claim of trade secret misappropriation. *Pioneer Hi-Bred Int'l v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226, 1239 (8th Cir. 1994). Here, there is no direct evidence of misappropriation. Instead, Storage relies on Cisco's access to its alleged trade secrets and the similarity between Cisco's products and Storage's alleged trade secrets to establish misappropriation. *See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1361 (Fed. Cir. 2002) (citing *Sokol Crystal Prods., Inc. v. DSC Communications Corp.*, 15 F.3d 1427, 1429 (7th Cir. 1994)).

It is undisputed that Cisco had access to Storage's alleged trade secrets via the employees who left Storage to work for NuSpeed. Turning to whether Cisco's SN 5420 is similar to Storage's alleged trade secrets, Storage relies on Brian Berg, who describes himself as "an independent consultant in the area of computer software and computer peripheral devices" and "an expert in computer mass storage devices and their interfaces." According to Berg, some of Cisco's products are similar to the SAN Appliance. He offers two opinions:

> While at NuSpeed, and later Cisco, former [Storage] employees developed designs the same as, or very similar to, designs these same employees developed previously at [Storage]. The designs in question, which related to combining networking and storage capabilities, had been pursued at [Storage] since at least 1994.
>
> NuSpeed, and later Cisco, misappropriated [Storage] trade secret information in the design of . . . the . . . SN 5420 . . . . This misappropriation continues in Cisco's development plans.

Cisco contends that Berg's opinion should not be considered. Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon

> sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Here, Storage does not claim that Cisco misappropriated software. The misappropriation claims relate solely to hardware design. Berg's deposition testimony reveals that he is not qualified as an expert in hardware design:

> Q: And you would characterize yourself as a software consultant, correct?
>
> A: That's correct.
>
> Q: You are not an expert or profess to be an expert on hardware design, do you?
>
> A: I don't profess to be that, no.

Notwithstanding Berg's concession, Storage contends that the Court should consider Berg's testimony because "[n]othing Berg has done requires him to design hardware or be an expert on hardware design." Storage offers no explanation as to how opinions regarding hardware design of products at Storage, NuSpeed, and Cisco do not require expertise in hardware design. Berg's admission that he is not an expert on hardware design precludes him from offering opinions as to whether the designs of products at NuSpeed and Cisco are similar to those at Storage. Storage has not offered any other evidence to demonstrate the similarities between the SAN Appliance and the SN 5420. Accordingly, the Court concludes that Storage has failed to submit evidence that would support a finding that Cisco misappropriated Storage's trade secrets.

Without regard to whether Berg is an expert in hardware design, Cisco contends that the Court should disregard his opinion because it is not based on sufficient facts or data. At his deposition, Berg acknowledged that he had never physically reviewed the SN 5420, that he had asked to see it, and that Storage had declined his request citing the cost of flying him from California to Colorado. Berg never spoke to any Storage employees who had actually inspected

Cisco's SN 5420.[2] Under these circumstances, Berg lacks sufficient factual foundation for his opinions. Accordingly, the Court will not consider Berg's opinion and concludes that Storage has failed to submit evidence to create a genuine issue of fact as to whether Cisco misappropriated Storage's trade secrets.

Even if the record contained evidence of Storage's trade secrets and their misappropriation, Cisco would be entitled to summary judgment because Storage fails to submit a viable damages theory. With regard to damages, the MUTSA provides:

> Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

Minn. Stat. § 325C.03(a). Again, Storage does not identify any actual loss from the alleged misappropriation. Nor does Storage advance any argument regarding a reasonable royalty.[3] Storage's sole contention is that it is entitled to damages for unjust enrichment in the amount of $450 million, the acquisition price of NuSpeed.

Relying on the Restatement (First) of Restitution (1937) § 151, Storage contends that NuSpeed's acquisition price is the proper measure of its unjust enrichment damages. Storage's reliance on section 151 is misplaced because that section applies only to the tortious deprivation

---

2 No Storage employee who inspected the SN 5420 was able to identify any of Storage's alleged trade secrets in Cisco's product.

3 Even if Storage had claimed a reasonable royalty, the sole measure of damages offered by Storage, the acquisition price of NuSpeed, is not a viable measure of the value of a reasonable royalty for its allegedly misappropriated trade secrets. *See Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp. 2d 660, 671-73 (E.D. Tex. 2002); *cf. Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1375-76 (Fed. Cir. 2002) (patent infringement).

of an interest in "land, chattels, or choses in action," *id.* at cmt. a, and because it does not establish the acquisition price of a company as a measure of damages. Instead, "[u]njust enrichment is measured by the profits the defendant obtained from using the trade secret." *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 185 (S.D.N.Y. 2002) (citing *Electro-Miniatures Corp. v. Wendon Co.*, 771 F.2d 23, 27 (2d Cir. 1985)); *see* Restatement (First) of Restitution (1937) § 136. In this case, it is undisputed that neither Cisco nor NuSpeed profited from Storage's alleged trade secrets.

Without regard to Storage's failure to submit a viable damages theory, Norton's analysis is of no use to Storage in this proceeding because he does not know what the allegedly misappropriated trade secrets are. He has not valued them. He does not analyze how Storage would have fared had the alleged misappropriation not taken place. He attributes the entire acquisition price to the allegedly misappropriated trade secrets, presuming that the acquisition price is wholly attributable to interests that rightfully belong to Storage. He fails, however, to distinguish between the tangible and intangible assets acquired by Cisco, to account for goodwill, and to apportion Storage's alleged damages to its various causes of action. In short, Norton's opinion amounts to nothing more than rank speculation. For these reasons, Cisco is entitled to summary judgment on Storage's MUTSA claim.

**F. Breach of fiduciary duties**

Storage's claim for breach of fiduciary duties is premised on the conduct of Mark Schrandt in December 1999. Storage asserts that Schrandt breached his fiduciary duties to it in the time between his acceptance of an offer from NuSpeed in early December, and his resignation from Storage at the end of that month. A claim for breach of fiduciary duty includes four elements: (1) the existence of a duty; (2) breach of that duty; (3) causation; and (4) and

damages. *Conwed Corp. v. Employers Reinsurance Corp.*, 816 F. Supp. 1360, 1362 n.3 (D. Minn. 1993). Cisco argues *inter alia* that it is entitled to summary judgment because Storage has failed to submit evidence of its damages resulting from the alleged breaches. The Court agrees.

Again, Storage relies on Norton to establish its damages. Norton's deposition testimony reveals that his analysis bears no relation to Storage's claim for breach of fiduciary duties:

> Q: Do you in your analysis consider any way in which [Storage's] situation would have been different but for the alleged breaches of . . . fiduciary duties by former [Storage] employees?
>
> A: No.

Because Storage failed to submit a viable damages theory, Cisco is entitled to summary judgment on this claim.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Cisco's motion for summary judgment [Docket No. 127] is GRANTED.

2. Count 1, Count 2, Count 3, Count 4, Count 5, and Count 6 of Storage's Complaint [Docket No. 1] are DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 25, 2003

JOAN N. ERICKSEN
United States District Judge

SEP 25 2003

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.