# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-3673

| | | |
|---|---|---|
| Storage Technology Corporation, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Cisco Systems, Inc., | * | |
| | * | |
| Defendant - Appellee. | * | |

Submitted: June 16, 2004
Filed: January 26, 2005

Before LOKEN, Chief Judge, JOHN R. GIBSON, and BYE, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Storage Technology Corporation appeals the district court's[1] entry of summary judgment against it on its various claims against Cisco Systems, Inc. arising out of the hiring of a number of Storage Technology's employees by Cisco's predecessor, NuSpeed Internet Systems, Inc. The district court held that Storage Technology's claims for interference with contractual relations, inducing breach of contract, conversion, and breach of fiduciary duties failed because Storage Technology did not come forward with any evidence of recoverable damages. The district court held that

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

SCANNED
FEB 2 2 2005
U.S. DISTRICT COURT MPLS

the alleged breach of any of its contracts with the former employees. The tortious-interference-with-contract claim therefore failed for lack of proof of the element of damages. The claim for inducing breach of contract required proof of the same elements as the tortious interference claim and therefore failed with that claim. The conversion claim failed both because the type of property affected was trade secrets, which are not covered by the tort of conversion, and because Storage Technology failed to prove damages. Similarly, the district court held that Storage Technology's claim for breach of fiduciary duties by Mark Schrandt in December 1999 failed for lack of proof of damages.

The district court next considered Storage Technology's claim for "corporate raiding," or the "systematic and massive program of hiring another company's employees." The court held that Minnesota had not recognized a cause of action for corporate raiding and that Minnesota has disfavored any cause of action that would inhibit employees' mobility in the workforce, as seen by the disfavor with which Minnesota regards noncompetition clauses. Accordingly, the district court declined to fashion a new tort under Minnesota law.

Finally, the district court held that Storage Technology had failed to come forward with evidence of misappropriation of a trade secret sufficient to meet the requirements of Fed. R. Civ. P. 56(e), since it relied on assertions by people who had no personal knowledge of the subjects of their statements. Accordingly, the district court entered judgment for Cisco on the misappropriation of trade secrets count.

I.

We review the district court's entry of summary judgment de novo, using the same standard as the district court. Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 468 (8th Cir. 2004). Summary judgment is appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(c). "Thus, where the moving party can point to the absence of any evidence satisfying a necessary element of a claim, such as damages, and the non-moving party fails to produce any such evidence, summary judgment is properly entered." Meterlogic, Inc. v. KLT, Inc., 368 F.3d 1017, 1018-19 (8th Cir. 2004). We review for abuse of discretion the district court's decision to exclude an expert's testimony for purposes of determining whether there is an issue of material fact. Id. at 1019.

II.

Under Minnesota law, the elements of tortious interference with contract are (1) the existence of a contract, (2) the tortfeasor's knowledge of the contract, (3) the tortfeasor's intentional causation of a breach of the contract, (4) a lack of justification for the tortfeasor's action, and (5) damages resulting from the breach. Bouten v. Richard Miller Homes, Inc., 321 N.W.2d 895, 900 (Minn. 1982). The tort of inducing a breach of contract, which Storage Technology pleads in a separate count, requires the same elements. Aslakson v. Home Sav. Ass'n, 416 N.W.2d 786, 788 (Minn. Ct. App. 1987).

We turn to the question of whether Storage Technology adduced any evidence to prove its damages for the alleged tortious interference with its employment contracts.

A.

The district court focused on the nature of damages in a tortious interference with contract case. Storage Technology has declined to prove damages to its own business and instead only attempted to establish a right to restitution in the amount of Cisco's alleged unjust enrichment. Cisco contends, and Storage Technology does not deny, that Cisco lost money on the NuSpeed product. At the deposition of

Timothy Schulte, Storage Technology's counsel expressly denied that Storage Technology claims or has proven lost profits. Instead, Storage Technology contends it is entitled to $450 million, which was the price Cisco paid for NuSpeed. The district court held that "damages for interference with contract are limited to those that might have been recovered for a breach of the contract itself." The court held that because Storage Technology failed to prove what damages NuSpeed caused, Storage Technology had not made a showing sufficient to resist summary judgment.

The usual remedy provided by Minnesota law for interference with contract is to compensate the victim for the damages that resulted from the loss of the contract. The early case of Swaney v. Crawley, 157 N.W. 910, 911 (Minn. 1916), stated the principle that the "injured party is limited, as a general rule, to such damages as might have been recovered for a breach of the contract itself." Potthoff v. Jefferson Lines, Inc., 363 N.W.2d 771, 777 (Minn. Ct. App. 1985), modified this statement by allowing the award of damages for emotional distress in an interference with contract suit, whereas such damages would not be available in a suit on the contract itself. Potthoff observed that the trial court had relied on the Restatement (Second) of Torts § 774A (1979), which allows loss of the benefits of contract, consequential losses, and damages for emotional distress, all of which focus on loss to the aggrieved party. See also Kallok v. Medtronic, Inc., 573 N.W.2d 356, 363-64 (Minn. 1998) (holding recovery for tortious interference can include costs of litigation to enforce contract).

However, breach of some covenants and duties attendant on the employment relation entitles the aggrieved employer to restitution. An employee who breaches a noncompetition or nondisclosure covenant can be required to account for his profits. Cherne Indus., Inc. v. Grounds & Assoc., Inc., 278 N.W.2d 81, 94-95 (Minn. 1979). The remedy for breach of the fiduciary duty of loyalty is also restitutionary. See Miller v. Miller, 222 N.W.2d 71, 78 (Minn. 1974) (remedy for breach of fiduciary duty of loyalty is imposition of constructive trust).

Therefore, where the defendant has not merely enticed a competitor's employees to leave their employment, but also induced them to breach a fiduciary duty of loyalty or restrictive covenant, the remedy must reflect the underlying wrong. When the underlying wrong would have supported a claim of restitution, so should a claim for inducing that wrong. In Cherne, an employee of Cherne left and formed a corporation, Grounds & Associates, which hired away two other employees. 278 N.W.2d at 87. All three former employees had signed non-competition and non-disclosure-of-confidential-information covenants, id. at 86, which they breached in the service of the new corporation. Id. at 88-91. Grounds & Associates argued that the proper remedy was award of Cherne's lost profits, rather than a restitutionary award of Grounds's profits. The Minnesota Supreme Court held:

> Although damages for breach of contract are traditionally measured by the nonbreaching party's loss of expected benefits under the contract, where an employee wrongfully profits from the use of information obtained from his employer, the measure of damages may be the employee's gain. Also, this court has specifically found that the violator of a covenant not to compete may be required to account for his profits, and such illegal profits may properly measure the damages.

Id. at 94-95 (internal citations omitted). Cherne did not expressly discuss the fact that it was holding a third party liable for the employees' breach of the noncompetition covenants, but in a later case the Minnesota Supreme Court referred to Cherne as implicitly holding that "third-party interference with [a] noncompete agreement is a tort." Kallok, 573 N.W.2d at 361. Thus, where the interference alleged is inducement of breach of restrictive covenants or fiduciary duties, the remedy should mirror the restitutionary remedy available for the breach of the covenant or fiduciary duty.

Storage Technology's interference with contract theory is not clear from its complaint. The complaint's "interference with contractual relations" count only alleges that Storage Technology had employment contracts with its employees and that NuSpeed hired the employees without justification, knowing that they would then terminate their contracts with Storage Technology. It also alleges that NuSpeed accomplished the hiring by using knowledge about Storage Technology's pay structure, etc., but it does not pursue this theory before us. Thus, the count in the complaint appears to allege only hiring of plaintiff's at-will employees. However, Storage Technology pleads in separate counts that NuSpeed induced Schrandt, Fiore, Kuik, and Bakke to breach fiduciary duties to Storage Technology by disclosing confidential information and soliciting Storage Technology employees to leave Storage Technology. In its brief, it contends that Schrandt breached his duty of loyalty by recruiting Storage Technology employees for NuSpeed while still in Storage Technology's employ. In its reply brief, Storage Technology contends that it had a noncompetition agreement with Schrandt, which he violated. Storage Technology therefore appears to be pursuing a theory that NuSpeed induced Storage Technology's employees to breach noncompetition and nondisclosure covenants and to breach their fiduciary duty of loyalty to Storage Technology.

We conclude that Minnesota courts would allow a restitutionary remedy in a case in which the interference alleged was inducing an employee's breach of noncompetition and nondisclosure covenants and fiduciary duties. We further conclude that Storage Technology is alleging NuSpeed induced such breaches by Storage Technology's employees. We therefore must ascertain whether Storage Technology has made a sufficient showing of unjust enrichment to survive summary judgment.

B.

Storage Technology's entire evidentiary basis for a restitutionary remedy consisted of the report of its expert, George Norton, that "Cisco's valuation of NuSpeed (basically, its key people and storage technology expertise) was $450 million and represents a proper valuation of the damages to Storage Technology and due to it for the trade secret appropriation, corporate raiding, and breach of contract and fiduciary responsibilities promulgated." The district court rejected Norton's opinion as "rank speculation."

The first and most apparent problem with Norton's testimony is that he attributed the entire value of the NuSpeed acquisition to employees and trade secrets wrongfully appropriated from Storage Technology, even though NuSpeed had other assets and employees. Norton did not attempt to value the people or the technology supposedly belonging to Storage Technology by any means other than by ascertaining what price Cisco paid for NuSpeed. The undisputed evidence shows that a crucial aspect of the acquisition was Cisco's desire to obtain NuSpeed's product incorporating the iSCSI protocol, which had nothing to do with Storage Technology.

Norton opined, "The value inherent in the price Cisco paid for NuSpeed was in the key employees of NuSpeed who embodied the storage expertise technology Cisco sought." But Norton testified at his deposition that he did not know what the technology was. Norton later contended that the value of NuSpeed to Cisco was in the fifteen key employees named in the acquisition documents. Of these, five are listed as having come from firms other than Storage Technology. Norton did not know what percentage of NuSpeed's total employees were from Storage Technology at the time Cisco acquired the company. He did not know if the deal would have gone forward if the people listed had not agreed to go to Cisco. Norton testified that he did not take into account the terms of the employees' contracts with Storage

Technology. See Nordling v. N. States Power Co., 478 N.W.2d 498, 505 (Minn. 1991)("The fact that the contract is terminable at will . . . is to be taken into account in determining the damages that the plaintiff has suffered by reason of its breach.") (quoting Restatement (Second) of Torts § 766, comment g (1979)).

Norton was unwilling or unable to answer questions exploring what proportion of the acquisition price was attributable to what NuSpeed assets. His deposition was singularly uninformative:

> Q: [D]o you believe that StorageTek could include within its damages the amount that Cisco paid for tangible assets acquired?
> A: I don't understand how StorageTek includes things in its damages.
> . . . .
> Q: And you didn't attempt yourself to value any of those assets that Cisco was acquiring, whether tangible or intangible yourself, right?
> A: I think we had this discussion this morning. Cisco was in the best position to make that valuation and they did.
> Q: And you did not?
> A: And they wrote the check.
> Q: And you did not, correct?
> A: I did not, what?
> Q: You did not do an evaluation of the worth of the tangible or the intangible assets, correct?
> A: Yes, I did, that's $450 million. It says right here on page six, the $450 million price is the best representation of fair-market value for the tangible and intangible assets represented by all the stock of NuSpeed.
> Q: But you did not attempt to determine a worth for the tangible assets, correct?
> A. As I've said, one quick glance at the balance sheet will show that it is minutiae compared to the price paid for the people and the technology.
> Q: And the price paid because it did exceed the value of the tangible assets was paying for goodwill then, right? . . .

> A: If you say so. . . . I don't know what the current definition of goodwill is in the accounting so I can understand it, but again, if you say that's what it is, I see no reason to argue with you on it. . . .

Moreover, there is crucial evidence, which Norton does not take into account, that the reason Cisco was interested in NuSpeed was that NuSpeed had begun work on using iSCSI to access stored data. The Cisco executive who worked on the acquisition testified:

> Q. What made NuSpeed attractive to Cisco?
> A: So NuSpeed was the first implementation that we saw of the iSCSI standard; iSCSI standard was originally proposed by Cisco and IBM, and we saw that as a[n] early, first-to-market opportunity to enable storage over [internet protocol].

Nobody contends that Storage Technology had anything to do with the idea of using software incorporating the iSCSI standard for storage networking. Storage Technology admitted that no software was ever written for the "SAN Appliance"[2]--which it contends was the idea for a storage networking product that NuSpeed stole from Storage Technology. In fact, iSCSI did not even exist until February 2000, after Schrandt, Bakke, Thompson, Kuik and Fiore had already left Storage Technology. Norton did not take into account any value that may have resulted from the incorporation of the iSCSI standard in the SN 5420:

> Q: It [the acquisition price] also included the development work on NuSpeed's product, the SN 5420, correct?
> A: Again, I'd have to go back to the agreement and go through it line by line to find out exactly what was spelled out in terms of what that company represented at that point in time. . . .

---

[2]"SAN" stands for Storage Area Network.

> Q: And there are some things that NuSpeed employees developed which did not include any trade secrets or anything else of StorageTek, correct?
> A: I don't know.

In Alcatel USA, Inc. v. Cisco Sys., Inc., 239 F. Supp. 2d 660, 667-73 (E.D. Tex. 2002), the court entered summary judgment disposing of a trade secret suit in which the plaintiff asked to be awarded the acquisition price of the company allegedly in possession of trade secrets. The court listed the "dubious and tenuous inferences" that would be required to conclude that certain information was the crucial ingredient on which hung the whole value of the acquired company, id. at 668, and concluded that the theory and supporting evidence were too speculative to submit to a jury:

> Alcatel fails to apportion the value of its alleged trade secrets from the approximately $550 million price for which Monterey was purchased by Cisco. Instead, Alcatel essentially attempts to attribute every penny of Monterey's purchase price and every penny of the Wavelength Router technology to the value of its alleged trade secrets. This maneuver, however, reeks of incongruity and underscores the speculative nature of Alcatel's alleged damages.

Id. at 671. Storage Technology has done no better a job than Alcatel in establishing that the purchase price of the acquired company was due entirely, or at all, to the presence of Storage Technology engineers and knowledge, or in helping the jury apportion the acquisition price between assets attributable to Storage Technology and assets having no relation to Storage Technology.

We review for abuse of discretion the district court's decision that expert opinion is too speculative to be admissible. Group Health Plan, Inc. v. Phillip Morris USA, Inc., 344 F.3d 753, 760 (8th Cir. 2003). An expert's opinion must be based on "sufficient facts or data." Fed. R. Evid. 702. The district court should exclude expert

testimony if it is so fundamentally unsupported that it can offer no assistance to the jury. Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2004). The district court was well within its discretion in deciding that Norton's testimony was so uninformed and baseless that it could not assist the jury in the task of fixing damages.

Storage Technology contends that the fact of damage is certain and only the amount is uncertain. Under Minnesota law, damages may not be speculative, remote, or conjectural. Children's Broad. Corp. v. Walt Disney Co., 245 F.3d 1008, 1016 (8th Cir. 2001). However, once the fact of damages is proved with certainty, the extent of the damages need only be shown to have a reasonable basis in the evidence. N. States Power Co. v. Lyon Food Prods., Inc., 229 N.W.2d 521, 525 (Minn. 1975). Storage Technology points to nothing in the record besides Norton's testimony that would allow a jury to calculate damages. Cf. Children's Broad., 245 F.3d at 1016-17 (jury could "sort through" evidence of revenues, losses, valuations, and actual and potential sales to arrive at figure for damages). "When the record contains no proof beyond speculation to support the verdict," the defendant is entitled to judgment as a matter of law or summary judgment. Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 830 (8th Cir. 1996); see Fed. R. Civ. P. 56(c) (summary judgment appropriate when moving party would be entitled to judgment as a matter of law).

Storage Technology's failure to produce evidence substantiating any amount of damages or restitution is fatal to its claim for tortious interference with contractual relations, as well as to each of its other claims.

We affirm the judgment of the district court.

______________________________



A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans