STORAGETEK
Writer's Direct: (303) 673-5989

August 2, 2000

Mark Cree
President
NuSpeed Internet Systems
6450 Wedgwood Road
Maple Grove, MN 55311-3628

Dear Mr. Cree:

This letter is to advise you of a serious situation involving your company's recruitment of StorageTek employees from our Brooklyn Park facility. Over the past eight months, your company has hired seventeen StorageTek employees (including twelve engineers). Twelve of the seventeen employees have been hired in the last three months alone.

StorageTek is gravely concerned that this pattern of targeted recruitment evidences an intention on NuSpeed's part to use StorageTek's trade secrets to develop competing products. One of the first StorageTek employees to move to NuSpeed, Mark Schrandt, represented to StorageTek management that NuSpeed would be developing products in the application service provider market and not in the network storage market. Our current understanding is that is not accurate.

If NuSpeed is using StorageTek trade secrets to develop such a product, then such use constitutes trade secret misappropriation. In addition, from current employees being solicited by NuSpeed, we understand that NuSpeed is using salary, benefit, and other information obtained from the ex-StorageTek employees to recruit these current StorageTek employees. Such information also constitutes StorageTek trade secrets.

StorageTek demands that all use of StorageTek trade secrets cease immediately. Please provide me with your written assurance to that effect. If I do not receive such assurance, I will conclude that NuSpeed intends to continue such illegal practices and appropriate action by StorageTek will be taken.

Very truly yours,

Timothy R. Schulte
Assistant General Counsel

cc: Patrick J. Martin, President and CEO
Jeffrey M. Dumas, Corporate Vice President and General Counsel

VENTURE LAW GROUP
A PROFESSIONAL CORPORATION

RECEIVED
AUG 17 2000

August 15, 2000

**VIA FACSIMILE**

Mr. Timothy R. Schulte
Storage Technology Corporation
One StorageTek Drive
Louisville, CO 80028

RE: **NuSpeed Internet Systems/StorageTek**

Dear Mr. Schulte:

Mark Cree, Chief Executive Officer of NuSpeed Internet Systems ("NuSpeed " or the "Company") has forwarded to me your August 2, 2000 letter to him. Our firm represents NuSpeed with regard to employment matters. Please direct any further communications in this matter to my attention.

Before addressing the specific issues raised in the letters, on behalf of NuSpeed, I want to assure you that NuSpeed respects any confidential information and intellectual property rights that StorageTek does have. NuSpeed expects and requires its employees to honor any obligations they may have to their former employers, just as it expects and requires its former employees to honor their obligations to NuSpeed. In this regard, each NuSpeed employee is required to sign the company's standard Employee Proprietary Information and Inventions Agreement in which the employee covenants that he/she will not breach any agreement to keep in confidence information acquired outside of his/her employment with NuSpeed or bring for use or disclosure any materials, documents or information of a former employer or any third party that are not generally available to the public. As a condition of employment, NuSpeed requires strict compliance with this agreement.

While we would agree that NuSpeed has hired a number of former StorageTek employees and that each of such employees has an ongoing obligation to StorageTek to restrict his or her use of any StorageTek confidential information, and that such confidential information can include information regarding employees, we strongly dispute your claim that any former StorageTek employee or NuSpeed improperly used any such information in connection with NuSpeed's hiring practices. NuSpeed has no basis to believe that any former StorageTek employee has made any disclosure of StorageTek's confidential



2800 Sand Hill Road
Menlo Park, California 94025
Phone 650.854.4488 Fax 650.233.8386
www.vlg.com

VENTURE
LAW GROUP



information or otherwise breached any of his continuing duties or obligations to StorageTek. NuSpeed has never directed any of those individuals to do so.

NuSpeed takes very seriously the statements made in your letter. Please be assured that NuSpeed neither condones nor encourages violations of any legal or contractual obligations of its employees. As mentioned above, we believe that NuSpeed's past conduct with respect to these former StorageTek employees did not in any way violate any ongoing obligations to StorageTek.

Please feel free to contact me if you wish to further discuss these matters. I am hopeful that this response will allay the concerns of your client and put this matter to rest.

Very truly yours,

VENTURE LAW GROUP
A Professional Corporation

Renee R. Deming

Renee R. Deming

cc: Mark Cree

0445706.01

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

STORAGE TECHNOLOGY CORPORATION,

Plaintiff,

-vs-

CISCO SYSTEMS, INC.,

Defendant.

Civil File No. ___

**COMPLAINT AND JURY DEMAND**

## THE PARTIES AND JURISDICTION

1. Plaintiff, Storage Technology Corporation ("StorageTek") is a Delaware corporation with its principal place of business in Louisville, Colorado.

2. Defendant, Cisco Systems, Inc. ("Cisco") is a California corporation having its principal place of business at 170 West Tasman Drive, San Jose, California 95134. Cisco acquired NuSpeed, Inc. (d/b/a/ NuSpeed Internet Systems, Inc.) on September 8, 2000 and is NuSpeed's successor-in-interest. Cisco has regular and established places of business in Bloomington and Maple Grove, Minnesota. Cisco regularly conducts business within this judicial district.

3. Jurisdiction is based on 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000.

4. Venue is proper under 28 U.S.C. § 1391(a)(1) and (2).

## FACTUAL ALLEGATIONS

5. StorageTek is a provider of network storage. StorageTek solutions help customers collect, move, store, share and protect all types of digital content on platforms ranging from laptops to enterprise servers.

6. StorageTek has conceived, developed, and invented various new and improved computer technologies. In about 1995, StorageTek employees at StorageTek's Minnesota Research and Development Center ("MRDC") conceived two versions of a device for joining disparate and otherwise incompatible computer networks. That conception, and the information related to it, was and is confidential, proprietary information of StorageTek.

7. StorageTek, under the direction of key employees, including Mark Schrandt and Mark Bakke, decided to develop and market one version of the device, now known as the StorageNet 6000, and to postpone development of the second version of the device. StorageTek's design and development work on the StorageNet 6000, as well as its later work on the second version of the device, was and is confidential, proprietary information of StorageTek.

8. In November 1999, NuSpeed was founded by Mark Cree and Clint Jurgens. Mark Cree was formerly Director of Marketing at StorageTek.

9. StorageTek employees Mark Schrandt, Mark Bakke, Tim Kuik, and Ed Fiore left StorageTek in December 1999 to join NuSpeed. Mark Schrandt was Director of Engineering at StorageTek supervising 160 engineers and with access to some of StorageTek's most highly confidential, proprietary information. Mark Schrandt is now NuSpeed's Vice President of Engineering. Mark Bakke, Tim Kuik, and Ed Fiore were high level engineers at StorageTek with access to some of StorageTek's most highly confidential, proprietary information. Mark Bakke is now NuSpeed's Chief Architect. Ed Fiore is now NuSpeed's Director of Hardware Engineering. Tim Kuik now holds a high level software engineering position at NuSpeed.

10. From its founding in November 1999 to July 2000, NuSpeed's workforce grew quickly to 56 employees. Defendant has targeted StorageTek's employees for hiring. Between December 1999 and September 2000 defendant has hired away from StorageTek at least 26

employees. Defendant has also tried unsuccessfully to hire other StorageTek employees. Defendant's hirings from StorageTek comprise nearly fifty percent of NuSpeed's workforce and about ten percent of the workforce at StorageTek's MRDC. According to one NuSpeed investor, defendant was able to recruit in only seven or eight months "top talent" that would normally take two or three years to amass. Defendant has thus raided StorageTek's MRDC.

11. On behalf of defendant, and with defendant's knowledge and approval, former key StorageTek employees have actively participated in the raiding of StorageTek personnel, some in violation of agreements signed with StorageTek that forbid such solicitation of StorageTek employees.

12. Defendant improperly and unfairly used former StorageTek employees' knowledge of StorageTek's confidential pay structure, benefits system, salary information, and other information to recruit StorageTek employees.

13. Mark Schrandt, Ed Fiore, Mark Bakke, and Tim Kuik were key employees of StorageTek's MRDC. As such they had fiduciary duties to StorageTek. Among other things, these employees had a fiduciary duty (1) to keep secret, and to not use, StorageTek's confidential, proprietary information and (2) not to recruit or try to recruit StorageTek employees to other companies.

14. Defendant gave lavish inducements to some or all of the recruited former StorageTek employees.

15. Using StorageTek employees and StorageTek's confidential, proprietary information defendant has developed and is preparing to market a product or products based on the devices for joining disparate and otherwise incompatible computer networks originally conceived and developed by StorageTek's MRDC employees.

16. Defendant reportedly plans to hire about 190 more employees from the Minneapolis area by the end of next year.

## COUNT 1 - INTERFERENCE WITH CONTRACTUAL RELATIONS

17. Plaintiff realleges the allegations of paragraphs 1-16.

18. At the time defendant hired away StorageTek's employees, the employees had valid employment agreements with StorageTek, and defendant knew that the employees had such agreements.

19. Defendant, by recruiting and hiring StorageTek's employees, intended that those employees would terminate their employment agreements.

20. Defendant's actions were without justification.

21. Defendant improperly and unfairly used former StorageTek employees' knowledge of StorageTek's confidential pay structure, benefits system, salary information, and other information to recruit StorageTek employees.

22. Defendant, by systematically recruiting StorageTek's key employees, attracted away a large percentage of StorageTek personnel upon whom StorageTek depended to function.

23. As a proximate result, StorageTek has suffered injury in excess of $75,000 and in an amount to be determined at trial.

24. StorageTek has suffered, and will continue to suffer, irreparable harm unless preliminary and permanent injunctions issue to enjoin defendant.

## COUNT 2 - CORPORATE RAIDING

25. Plaintiff realleges the allegations of paragraphs 1-24.

26. Defendant hired away StorageTek employees by improperly and unfairly using former StorageTek employees' knowledge of StorageTek's confidential pay structure, benefits system, salary information, and other information.

27. Defendant recruited those employees harming StorageTek's business and misappropriating StorageTek's confidential, proprietary information.

28. As a proximate result, StorageTek has suffered injury in excess of $75,000 and in an amount to be determined at trial.

29. StorageTek has suffered, and will continue to suffer, irreparable harm unless preliminary and permanent injunctions issue to enjoin defendant.

**COUNT 3 - MISAPPROPRIATION OF TRADE SECRETS**

30. Plaintiff realleges the allegations of paragraphs 1-29.

31. The information concerning StorageTek's conception, design, and development of devices for joining disparate and otherwise incompatible computer networks is a StorageTek trade secret under the Minnesota Uniform Trade Secrets Act. Likewise the technology used in the devices is a StorageTek trade secret under the Minnesota Uniform Trade Secrets Act. These trade secrets were disclosed to StorageTek employees in confidence.

32. StorageTek's confidential pay structure, benefits system, salary information, and other related information are StorageTek trade secrets under the Minnesota Uniform Trade Secrets Act.

33. Defendant is a rival to StorageTek, especially in the market for devices for joining disparate and otherwise incompatible computer networks. The employees raided from StorageTek are, and will continue, doing the same jobs for defendant as they did for StorageTek.

34. Defendant has misappropriated StorageTek's trade secrets by hiring key StorageTek employees who will inevitably use and disclose StorageTek trade secrets in their work for defendant.

35. Defendant has misappropriated and threaten to continue misappropriating StorageTek's trade secrets in conjunction with raiding StorageTek employees.

36. Defendant's actions are in violation of the Minnesota Uniform Trade Secrets Act, M.S.A. § 325C.01 *et seq*.

37. Defendant's misappropriation is and has been wilful and malicious.

38. StorageTek has been, and will continue to be, harmed by defendant's continuing misappropriation unless enjoined by this court.

39. StorageTek has been damaged by defendant's continuing misappropriation in an amount to be determined at trial.

## COUNT 4 - INDUCING BREACH OF CONTRACT

40. Plaintiff realleges the allegations of paragraphs 1-39.

41. Defendant knew or should have known that at least some of the former StorageTek employees it hired had contracts with StorageTek prohibiting the employees from soliciting current StorageTek employees.

42. Without justification defendant induced StorageTek's former employees to breach their non-solicitation agreements with StorageTek.

43. As a proximate result, StorageTek has suffered injury in excess of $75,000 and in an amount to be determined at trial.

44. StorageTek has suffered, and will continue to suffer, irreparable harm unless preliminary and permanent injunctions issue to enjoin defendant.

**COUNT 5 - CONVERSION**

45. Plaintiff realleges the allegations of paragraphs 1-44.

46. Defendant has improperly acquired StorageTek's confidential, proprietary information and converted it to its own use.

47. As a proximate result, StorageTek has suffered injury in excess of $75,000 and in an amount to be determined at trial.

48. StorageTek has suffered, and will continue to suffer, irreparable harm unless preliminary and permanent injunctions issue to enjoin defendant.

**COUNT 6 - BREACH OF FIDUCIARY DUTIES**

49. Plaintiff realleges the allegations of paragraphs 1-48.

50. Mark Schrandt, Ed Fiore, Tim Kuik, and Mark Bakke were key employees of StorageTek's MRDC. As such they had fiduciary duties to StorageTek.

51. Among other things, these employees had a fiduciary duty (1) to keep secret, and to not use, StorageTek's confidential, proprietary information and (2) not to recruit or try to recruit StorageTek employees to other companies.

52. These employees breached their fiduciary duties to StorageTek when they used StorageTek's confidential, proprietary information to develop the second product, which they had chosen to not develop while at StorageTek.

53. These employees breached their fiduciary duties to StorageTek when they recruited and tried to recruit StorageTek employees to work for defendant.

54. Defendant knew of, encouraged, and condoned these breaches of fiduciary duties, which inured to the benefit of defendant.

55. As a proximate result of their breach, StorageTek has suffered injury in excess of $75,000 and in an amount to be determined at trial.

56. StorageTek has suffered, and will continue to suffer, irreparable harm unless preliminary and permanent injunctions issue to enjoin defendant.

57. The allegations of paragraphs 15, 27, 37, 46, 52, and 54 are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

**RELIEF**

**WHEREFORE,** StorageTek asks the Court to:

A. Enter a preliminary and permanent injunction to enjoin defendant, and those persons and entities acting in concert with it, from soliciting, actively recruiting or continuing to employ StorageTek's engineering, technical and management employees, or from disclosing or using any StorageTek confidential, proprietary information or trade secrets.

B. Order defendant to return to StorageTek all confidential, proprietary information improperly converted.

C. Award StorageTek damages against defendant.

D. Award StorageTek attorney fees pursuant to M.S.A. § 325C.04.

E. Award StorageTek interest and costs.

F. Award StorageTek such other relief as is just.

**JURY DEMAND**

StorageTek demands a jury trial for all issues so triable.

Dated: October 4, 2000.

MAHONEY, DOUGHERTY AND MAHONEY
Professional Association

Richard P. Mahoney (#6662X)
Mark J. Manderfeld (#6712X)
Kelley R. Lorix (#145828)
Attorneys for Plaintiff
801 Park Avenue
Minneapolis, MN 55404
Telephone: (612) 339-5863
Fax: (612) 339-1529

**Of Counsel:**

**Brooks & Kushman P.C.**
Ernie L. Brooks
Thomas A. Lewry
Philip Abromats
1000 Town Center
Twenty-Second Floor
Southfield, MI 48075
Phone: (248) 358-4400
Fax: (248) 358-3351

**Storage Technology Corp.**
Timothy R. Schulte
2270 South 88th Street
Louisville, CO 80028-4309
(303) 673-5989

file

# DORSEY & WHITNEY LLP

Anderson Aff. Ex. 00004

MINNEAPOLIS
NEW YORK
SEATTLE
DENVER
WASHINGTON, D.C.
DES MOINES
ANCHORAGE
LONDON
COSTA MESA

PILLSBURY CENTER SOUTH
220 SOUTH SIXTH STREET
MINNEAPOLIS, MINNESOTA 55402-1498
TELEPHONE: (612) 340-2600
FAX: (612) 340-2868

**ROY A. GINSBURG**
**(612) 340-8761**
**FAX (612) 340-2777**
**ginsburg.roy@dorseylaw.com**

BILLINGS
GREAT FALLS
MISSOULA
BRUSSELS
FARGO
HONG KONG
ROCHESTER
SALT LAKE CITY
VANCOUVER

*October 13, 2000*

*Via Messenger*

The Honorable James M. Rosenbaum
United States District Judge
United States District Court
U.S. Courthouse, Suite 15-E
300 South Fourth Street
Minneapolis, MN 55415

Re: Storage Technology Corporation vs. CISCO Systems, Inc.
File No. 00-CV-2253

Dear Judge Rosenbaum:

The law firm of Dorsey & Whitney LLP has been retained by CISCO Systems, Inc. in connection with the above-referenced litigation. I understand that this matter has been assigned to you and Magistrate Judge Susan Nelson.

I have been advised that the Complaint in this matter was served either late in the day on Thursday, October 5, or sometime on Friday, October 6. In-house counsel for CISCO Systems, Inc. ("CISCO") did not receive the Complaint and the accompanying discovery materials until October 9. Dorsey was contacted by CISCO promptly thereafter and we have been working diligently to clear all conflicts since that time. We were formally retained today.

We have been furnished with a copy of the Complaint and related discovery, including Interrogatories, Requests for Production of Documents and Requests for Admissions. In addition, Plaintiff served with the Complaint an *Ex Parte* Motion for

Expedited Discovery. In that Motion, Plaintiff requests that CISCO respond to all of its written discovery, much of which is vague and overbroad, by October 24 (twelve days from now), ostensibly to enable Plaintiff to begin conducting depositions in early November. All of this activity is linked to a proposed preliminary injunction hearing planned for some undetermined time in the future.

Although CISCO has no reticence to engage in discovery and a full exploration and airing of the facts, the schedule proposed by Plaintiff is both inequitable and unrealistic. CISCO deserves the opportunity to conduct an appropriate internal investigation of the allegations of the Complaint and propound its own discovery. Indeed, these activities are especially critical here because Plaintiff fails to identify in its Complaint, with any precision whatsoever, the alleged trade secrets supposedly misappropriated by CISCO. Similarly, although Plaintiff advances two claims linked to a supposed breach of contract, Plaintiff neither attached the alleged contracts to the Complaint nor identified which of its former employees even entered into such contracts. Moreover, Plaintiff's purported need for expedited discovery and an early preliminary injunction hearing is a bit surprising, given the fact that it has allowed nearly a year to elapse before taking any legal action to protect its alleged trade secrets and proprietary information.

In addition to the discovery, and *Ex Parte* Motion, Plaintiff also has requested the Court to impose a Protective Order that, on its face, is overbroad. Again, although CISCO has no objection (and indeed would support) the imposition of an appropriate Protective Order, that Order should be carefully tailored to address the specific needs of the parties to this litigation.

Given the numerous issues presented by Plaintiff's recent service and filings, CISCO respectfully suggests that the most logical and reasonable way to proceed would be for the parties to meet with Your Honor or Magistrate Judge Nelson in a Rule 16 case management conference. At that time, with the guidance from the Court, the parties could address systematically the various subjects set forth in Rule 16 (a) - (c). If not resolved through the conference, the Court also could establish an appropriate briefing schedule for the matters raised in Plaintiff's *Ex Parte* Motion for Expedited Discovery and in Plaintiff's request for a Protective Order.

If, however, the Court would prefer to entertain at this time the Plaintiff's two pending motions, CISCO would request that it be afforded an appropriate period to respond to Plaintiff's motions, so that the Court has the opportunity to consider the competing interests of the parties, including CISCO's employees, before making any determinations on these issues.

DORSEY & WHITNEY LLP



Thank you for your consideration of these matters. I look forward to hearing from the Court regarding the manner in which the Court would like the parties to proceed.

Sincerely,

Roy A. Ginsburg

Roy A. Ginsburg

CC: Richard Mahoney, Esq., Counsel for Plaintiff, *via* Facsimile
Michael Labianca, Esq.
Joseph W. Hammell, Esq.

**BROOKS & KUSHMAN P.C.**

Law Offices

*Intellectual Property and Technology Related Causes*

Ernie L. Brooks
James A. Kushman
David R. Syrowik
Mark A. Cantor
Ralph M. Burton
Robert C. J. Tuttle
Earl J. LaFontaine
Ronald M. Nabozny
Thomas A. Lewry

John E. Nemazi
Kevin J. Heinl
William G. Abbatt
Donald J. Harrington
Timothy G. Newman
John M. Halan
Jeffrey M. Szuma
Marla Franek Angileri
Frank A. Angileri

William G. Conger
Christopher W. Quinn
Sangeeta G. Shah
George R. Mosher
Frederick M. Ritchie
John M. Sheridan
Elizabeth F. Janda
Robert C. Brandenburg
A. Frank Duke

James R. Ignatowski
Konstantine J. Diamond
David S. Bir
James N. Kallis
Hugo A. Delevie
Ralph E. Smith
Gigette M. Bejin
Mark E. Stuenkel
Michael S. Brodbine

Seth E. Rodack
Pete N. Klousis
Raymond J. Vivacqua
John J. Ignatowski
James W. Proscia
Ginta D. Kukainis
Lawrence G. Almeda
Philip Abromats

Registered Patent Agents

Mark D. Chuey, Ph.D.
Stephanie M. Mansfield, Ph.D.
Jeremy J. Curcuri
Robert C. Jones
Matthew R. Mowers
Matthew M. Jakubowski

October 18, 2000

Honorable James M. Rosembaum
United States District Judge
United States District Court
U.S. Courthouse
Suite 15-E
300 South 4th Street
Minneapolis, MN 55415

***VIA HAND DELIVERY***

**Re: *Storage Technology v. Cisco Systems, Inc.***
**Civil Action No. 00 CV 2253**
**Our File No. STK 0133 L**

Dear Judge Rosembaum:

Brooks & Kushman represents Storage Technology Corporation in connection with the above-identified lawsuit. I received a copy of a letter sent to you by Cisco's counsel, Roy A. Ginsburg, dated October 13, 2000. I write in response to some of the comments made in that letter and to urge the Court to order expedited discovery, which is necessary so that StorageTek can file its motion for preliminary injunction.

StorageTek served the Complaint on Thursday, October 5, 2000. With the Complaint, StorageTek served a very limited set of discovery. That discovery was focused so that Cisco could provide a prompt response. StorageTek also served with the Complaint copies of two *ex parte* motions filed with the Court.

The first *ex parte* motion seeks to expedite the discovery process. Specifically, it asks that Cisco be ordered to respond to StorageTek's limited discovery in 20 days, rather than the normal 30 days, and produce four key witnesses for deposition November 7 and 8, 2000. The second motion asks the Court to enter a temporary Confidentiality Order until the parties can work

BK
1000 TOWN CENTER, TWENTY-SECOND FLOOR, SOUTHFIELD, MICHIGAN 48075
TELEPHONE (248) 358-4400, FACSIMILE (248) 358-3351

out the details of a more permanent order. This order is designed to protect Cisco to the extent Cisco believes that information responsive to StorageTek's discovery is confidential.[1]

As explained in StorageTek's motion for expedited discovery, and as set forth in the Complaint, Cisco recently acquired a company formerly known as NuSpeed for $450 million. NuSpeed is about to begin marketing its first product, a product that was developed with StorageTek proprietary, confidential, and trade secret information. Because this product introduction is imminent, StorageTek needs to move quickly to prevent release of its proprietary, confidential, and trade secret information.

StorageTek's Complaint provides details of the matters at issue in this case. Although Cisco complains that StorageTek has not identified the trade secrets in its Complaint, Cisco knows StorageTek cannot do so. The point of trade secrets is that they are secret. If StorageTek were to identify them in the Complaint, the secrets would no longer be secret.

Cisco also contends that StorageTek did not attach copies of the contracts to its Complaint. Cisco has hired more than 25 employees away from StorageTek. It would have vastly increased the bulk of the Complaint to have attached all of the agreements for all of the raided employees. More importantly, the people at the highest management levels of NuSpeed are former StorageTek employees and know the details of the contracts that they and the other employees signed.

Finally, with respect to Cisco criticism that StorageTek "has allowed nearly a year to elapse before taking any legal action to protect its alleged trade secrets and proprietary information," NuSpeed did not exist before November 1999 and still has no released products. StorageTek did not have sufficient knowledge of NuSpeed's as-yet-unreleased product to bring an action before now. StorageTek has moved quickly since gaining sufficient information to know that NuSpeed has misappropriated StorageTek's confidential, proprietary, and trade secret information.

Equally important, although StorageTek did not have certainty about NuSpeed's violations until recently, StorageTek had concerns. Cisco's NuSpeed organization was fully

---

[1] Cisco criticizes the proposed order as "over broad." As explained in StorageTek's motion, the language of that proposed order is taken directly from the local rules in the Northern District of California. The purpose of the order is to provide <u>temporary</u> protection for Cisco when it produces documents and other information. StorageTek does not intend that the order be the permanent order for this case. If Cisco does not need a Confidentiality Order before responding to StorageTek's discovery, StorageTek is willing to drop that motion.

informed of StorageTek's concerns in August 2000. (*See* letter dated August 2, 2000, attached). Cisco's NuSpeed organization responded that there were no violations (*see* letter dated August 15, 2000, attached), StorageTek later learned that there were indeed violations. StorageTek then promptly filed this lawsuit.

To expedite the preliminary injunction process, StorageTek asks the Court to enter the *ex parte* orders. Since the discovery time is reduced only by 10 days, it should not be a significant hardship on Cisco, which has enormous resources. In addition, StorageTek would welcome an early case management conference so that a quick schedule on the preliminary injunction motion can be set.

Thank you for your consideration of these matters.

Very truly yours,

**BROOKS & KUSHMAN P.C.**

Thomas A. Lewry

TAL:ds
cc: Mr. Roy A. Ginsburg (via facsimile)
Mr. Richard Mahoney
Mr. Timothy R. Schulte

BK

STORAGETEK

Writer's Direct: (303) 673-5989

August 2, 2000

Mark Cree
President
NuSpeed Internet Systems
6450 Wedgwood Road
Maple Grove, MN 55311-3628

Dear Mr. Cree:

This letter is to advise you of a serious situation involving your company's recruitment of StorageTek employees from our Brooklyn Park facility. Over the past eight months, your company has hired seventeen StorageTek employees (including twelve engineers). Twelve of the seventeen employees have been hired in the last three months alone.

StorageTek is gravely concerned that this pattern of targeted recruitment evidences an intention on NuSpeed's part to use StorageTek's trade secrets to develop competing products. One of the first StorageTek employees to move to NuSpeed, Mark Schrandt, represented to StorageTek management that NuSpeed would be developing products in the application service provider market and not in the network storage market. Our current understanding is that is not accurate.

If NuSpeed is using StorageTek trade secrets to develop such a product, then such use constitutes trade secret misappropriation. In addition, from current employees being solicited by NuSpeed, we understand that NuSpeed is using salary, benefit, and other information obtained from the ex-StorageTek employees to recruit these current StorageTek employees. Such information also constitutes StorageTek trade secrets.

StorageTek demands that all use of StorageTek trade secrets cease immediately. Please provide me with your written assurance to that effect. If I do not receive such assurance, I will conclude that NuSpeed intends to continue such illegal practices and appropriate action by StorageTek will be taken.

Very truly yours,

Timothy R. Schulte
Assistant General Counsel

cc: Patrick J. Martin, President and CEO
Jeffrey M. Dumas, Corporate Vice President and General Counsel

VENTURE LAW GROUP
A PROFESSIONAL CORPORATION

RECEIVED
AUG 17 2000

August 15, 2000

**VIA FACSIMILE**

Mr. Timothy R. Schulte
Storage Technology Corporation
One StorageTek Drive
Louisville, CO 80028

RE: **NuSpeed Internet Systems/StorageTek**

Dear Mr. Schulte:

Mark Cree, Chief Executive Officer of NuSpeed Internet Systems ("NuSpeed " or the "Company") has forwarded to me your August 2, 2000 letter to him. Our firm represents NuSpeed with regard to employment matters. Please direct any further communications in this matter to my attention.

Before addressing the specific issues raised in the letters, on behalf of NuSpeed, I want to assure you that NuSpeed respects any confidential information and intellectual property rights that StorageTek does have. NuSpeed expects and requires its employees to honor any obligations they may have to their former employers, just as it expects and requires its former employees to honor their obligations to NuSpeed. In this regard, each NuSpeed employee is required to sign the company's standard Employee Proprietary Information and Inventions Agreement in which the employee covenants that he/she will not breach any agreement to keep in confidence information acquired outside of his/her employment with NuSpeed or bring for use or disclosure any materials, documents or information of a former employer or any third party that are not generally available to the public. As a condition of employment, NuSpeed requires strict compliance with this agreement.

While we would agree that NuSpeed has hired a number of former StorageTek employees and that each of such employees has an ongoing obligation to StorageTek to restrict his or her use of any StorageTek confidential information, and that such confidential information can include information regarding employees, we strongly dispute your claim that any former StorageTek employee or NuSpeed improperly used any such information in connection with NuSpeed's hiring practices. NuSpeed has no basis to believe that any former StorageTek employee has made any disclosure of StorageTek's confidential

0445706.01

VENTURE LAW GROUP
A PROFESSIONAL CORPORATION



information or otherwise breached any of his continuing duties or obligations to StorageTek. NuSpeed has never directed any of those individuals to do so.

NuSpeed takes very seriously the statements made in your letter. Please be assured that NuSpeed neither condones nor encourages violations of any legal or contractual obligations of its employees. As mentioned above, we believe that NuSpeed's past conduct with respect to these former StorageTek employees did not in any way violate any ongoing obligations to StorageTek.

Please feel free to contact me if you wish to further discuss these matters. I am hopeful that this response will allay the concerns of your client and put this matter to rest.

Very truly yours,

VENTURE LAW GROUP
A Professional Corporation

Renee R. Deming

Renee R. Deming

cc: Mark Cree

# DORSEY & WHITNEY LLP

Anderson Aff. Ex. 00006

MINNEAPOLIS
NEW YORK
SEATTLE
DENVER
WASHINGTON, D.C.
DES MOINES
ANCHORAGE
LONDON
COSTA MESA

PILLSBURY CENTER SOUTH
220 SOUTH SIXTH STREET
MINNEAPOLIS, MINNESOTA 55402-1498
TELEPHONE: (612) 340-2600
FAX: (612) 340-2868

BILLINGS
GREAT FALLS
MISSOULA
BRUSSELS
FARGO
HONG KONG
ROCHESTER
SALT LAKE CITY
VANCOUVER

**ROY A. GINSBURG**
**(612) 340-8761**
**FAX (612) 340-2777**
**ginsburg.roy@dorseylaw.com**

*October 20, 2000*

*Via Messenger*
Honorable James M. Rosenbaum
United States District Judge
United States District Court
U.S. Courthouse, Suite 15-E
300 South 4th Street
Minneapolis, MN 55415

Re: Storage Technology Inc. vs. Cisco Systems, Inc.

Dear Judge Rosenbaum:

This letter is written in response to the correspondence to you dated October 18, 2000, from Thomas Lewry of Brooks & Kushman in connection with the above-captioned matter. A copy of that correspondence was delivered to my office on Wednesday (coincidentally, while I was out of the office at my first meeting with Cisco representatives).

In Mr. Lewry's correspondence, he reiterates his requests that the Court: a) expedite the discovery process; b) enter a Protective Order; and c) move the case quickly toward an injunction hearing. In support of these requests, STI makes a number of inaccurate and misleading assertions.

First, STI argues that the expedited discovery is justified by the fact that a more accelerated schedule would merely reduce the response time from 30 to 20 days. While perhaps technically correct, the practical implications are quite different. As previously reported to the Court, Cisco (a company based in California) moved diligently to obtain counsel in Minnesota. We were contacted during the week of October 9 and, after clearing conflicts, were retained on October 13. This date was just 11 days before the October 24 deadline STI advocates for the response to its discovery (see the Proposed Order on Plaintiff's *Ex Parte* Motion for Expedited

Discovery). When we met with Cisco's Minnesota representatives on October 18 (six days before Plaintiff's requested deadline), we provided our clients with copies of the written discovery; this was the first time the pertinent individuals here in Minnesota had received it.

Second, STI seeks to take depositions of certain Cisco employees in approximately two weeks. Yet, at this point, Cisco has no idea what trade secrets it has allegedly misappropriated and would be severely disadvantaged in trying to prepare any of these individuals for their depositions. The decision of Magistrate Judge Mason in the recent case of *Porous Media Corporation vs. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) is instructive on this point. Ordering the plaintiff in that litigation to identify its trade secrets with specificity, Judge Mason observed: "Ordering the listing of trade secrets at the outset of the litigation is a common requirement. (Citations omitted.) Failure to identify the trade secrets with sufficient particularity renders the Court powerless to enforce any trade secret claim."

Here, STI has failed to identify its trade secrets in its Complaint and advanced the position in its correspondence to the Court that it cannot do so because "they are secret." Yet, without this information, provided either in the body of the Complaint or through STI's responses to discovery, neither the Court nor Cisco would be able to evaluate "whether any of the items even constitutes a trade secret, and if so, whether any Defendant possesses or uses that trade secret, or may be enjoined from using it." *Porous Media*, 187 F.R.D. at 600. This information should be disclosed *before* any Cisco representatives are subjected to a deposition. Further, STI characterizes the depositions it would like to take as "preliminary" depositions, suggesting that they later will seek to redepose these same individuals. Plaintiffs should not be granted this unusual relief, providing them two bites at the apple.

Third, STI erroneously asserts that Cisco's product is based on STI's "proprietary, confidential and trade secret information." As the evidence will demonstrate as this case progresses, this assertion is unfounded. NuSpeed/Cisco's product is completely different from the product lines marketed by STI.

Fourth, just as it did in its Complaint, STI laments the fact that a number of its employees have left STI to join Cisco. Although that fact itself may be accurate, there is little else in STI's portrayal of the pertinent events which presents responsibly this situation to the Court. For example, although one of NuSpeed's two founders once worked for STI, he left the company in *1995*; NuSpeed's other founder never worked for STI.

The other employees who left STI did so, not in response to solicitations from NuSpeed, but rather for a variety of reasons that largely reflect the troubled economic circumstances of STI and the wonderful opportunity presented by Cisco. By way of illustration, STI, a company based in Colorado, announced in April, 1999, that it planned to "restructure its business;" in October, 1999, STI announced "more broad restructuring plans," including the elimination of

"approximately 1200 to 1400 positions." (See SEC Form 10-Q dated June 30, 2000.) In the same quarterly report, STI announced that its research and development expenses "decreased 11%" during the first six months of the year. In October, 1999, STI announced that it had hired Goldman Sachs & Company and McKinsey & Company "to look at the possibility of financial restructuring, acquisitions, divestitures, spin-offs and business combinations." (See Reuters, CNET News.com, 10-15-99.)

In circumstances like these, it is no surprise that STI's employees at its relatively small Minnesota research facility might legitimately conclude that more attractive and stable long-term economic opportunities existed with other companies. (It should be noted that STI's Minnesota workforce has been deserting the company in significant numbers, joining a variety of different Minnesota employers. Apparently unable to retain their employees by creating and maintaining a competitive working environment, STI has elected to try to address its serious attrition problems through unfounded litigation.)

Fifth, STI observes in its correspondence that it did not attach copies of the alleged "contracts" to its Complaint, apparently out of some concern for the increase in the "bulk" of the pleading. Frankly, STI could easily have quoted from one such illustrative contract or attached a single example of such a contract to the Complaint. Instead, its vague pleading has left Cisco wondering which former STI employees had contracts, what alleged restrictions they imposed, and other basic inquiries. When I requested opposing counsel on October 17 to grant a short two-week extension to respond to the vague allegations of the Complaint (a period we could have used to attempt to collect at least some of the pertinent documents, including any such contracts) plaintiff's counsel rejected this request, conditioning any extension on Cisco's agreement to the unreasonable expedited discovery timetable.

Other observations are warranted by STI's correspondence to the Court, but I suspect that this letter already is too lengthy. In closing, I would reiterate my earlier comment that this matter does not justify expedited discovery.[1] Rather, the parties should proceed on a reasonable timetable, with mutual (and simultaneous) exchanges of written discovery. In our view, the parties would benefit from the guidance of the Court at a Rule 16 case management conference, at which these, and any other issues pertinent to this matter could be discussed. Alternatively, we respectfully suggest that the Court should establish a briefing schedule for the issues surrounding STI's *ex parte* requests for expedited discovery and a Protective Order.

---

1/ I also think it would be beneficial to address the subject of the proposed Protective Order, again with an effort to craft an Order that would be appropriate for this litigation. STI misconstrues Cisco's comments by drawing the illogical inference that we do not believe any Protective Order is necessary.

Again, we thank you for your consideration of these points. If you have any questions, please give me a call.

Sincerely,

Roy A. Ginsburg

cc: Thomas A. Lewry, Esq., *via* Facsimile
Richard Mahoney, Esq., *via* Facsimile
Mark Michels, Esq.
Michael Labianca, Esq.

bcc: Mr. Mark Cree
Mr. Mark Schrandt
Joseph Hammell, Esq.
Thomas Vitt, Esq.