UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Storage Technology Corporation,

Plaintiff,

v.

Cisco Systems, Inc.,

Defendant.

Civil No. 00-2253 (JMR/SRN)

**NOTICE OF**
**PRETRIAL CONFERENCE**

TO: Plaintiff above named and to Mark J. Manderfeld, Esq., Richard P. Mahoney, Esq. and Kelley R. Lorix, Esq., Mahoney, Dougherty & Mahoney, 801 Park Avenue, Minneapolis, MN 55404; Ernie L. Brooks, Esq., Thomas A. Lewry, Esq., Philip Abromats, Esq. and Seth E. Rodack, Esq., Brooks & Kushman, 1000 Town Center, 22nd Floor, Southfield, MI 48075; and Timothy R. Schulte, Storage Technology Crop Corporate Counsel, 1 Storagetek Drive, Louisville, CO 80028 attorneys for Plaintiff;

Defendant above named and to J. Thomas Vitt, Esq., Joseph W. Hammell, Esq. and Roy A. Ginsburg, Esq., Dorsey & Whitney, Pillsbury Center South, 220 South 6th Street, Minneapolis, MN 55402, attorneys for Defendant.

If counsel for all parties are not listed above, it is the responsibility of Plaintiff counsel to (1) immediately notify those parties and counsel of this conference, and (2) inform those parties and counsel of the requirements set forth in this notice.

## I. DATE, TIME, PLACE AND PARTICIPANTS

Pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16 of the Rules of this District as amended effective November 1, 1996, a pretrial

Filed OCT 31 2000
Francis E. Dosal, Clerk
Judgment Entered ______
Deputy Clerk's Initials ______

conference of trial counsel in the above matter will be held in Chambers at 242 U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota, **December 11, 2000, at 10: 30 a.m.** before United States Magistrate Judge Susan Richard Nelson to consider the matters set forth in Rule 16(c), the Rule 26(f) disclosures, and related matters.

## II. MEETING, REPORTS AND DISCLOSURES REQUIRED

A. Pursuant to Federal Rule of Civil Procedure 26(f), trial counsel for each party shall meet in person on or before **November 27, 2000,** to discuss settlement, and to prepare the report required by Rule 26(f) and Local Rule 16.2, as amended effective November 1, 1996.

B. If the case does not settle, no later than **December 7, 2000**, counsel shall jointly prepare and file with the Clerk of Court a complete written report of the Rule 26(f) meeting. **A copy of the report shall also be delivered to chambers of this Court, 242 Federal Building, 316 North Robert Street, St. Paul, Minnesota, on or before December 7, 2000**. The report shall include:

1. **Date and Place of the Meeting; Identification of the Parties and Their Attorneys; Agenda of Matters for Pretrial Conference.**

    a. The date and place at which the meeting was held;

    b. Name, address and occupation or business of each party, together with the name, address and telephone number of the attorneys who represented each party at the meeting;

    c. Name of insurance carriers that may be liable for the defense or payment of any damage award; and

    d. An agenda of matters to be discussed at the Pretrial Conference.

2. **Description of the case**

a. A concise statement of the jurisdictional basis of the case, giving statutory citation and a brief narrative description;

b. A brief narrative of the facts giving rise to the lawsuit, including a description of legal claims and defenses; and

c. A summary itemization of the dollar amount of each element of the alleged damages.

3. **Pleadings**

a. A statement of whether the Complaint and all responsive pleadings have been filed, and whether any party proposes to amend its pleadings;

b. The date by which all motions that seek to amend the pleadings or add parties will be filed; and

c. Whether a jury trial is available under the law, and whether a jury trial has been timely demanded.

4. **Discovery Plan** (If parties are unable to agree on a discovery plan, the report shall separately set forth each party's proposed plan.) Such a plan shall include such matters as focusing the initial discovery on preliminary issues that might be case dispositive, instituting document control mechanisms, stipulating to facts to eliminate unnecessary discovery and any other matters counsel may agree upon to control litigation costs and delay.

a. Date by which the initial Rule 26(a)(1) disclosures of witnesses, documents, itemized damage computations and insurance will be completed (if not already completed);

b. Whether the parties wish to engage in any method of alternative dispute resolution following Rule 26(a)(1) disclosures but before formal discovery is commenced;

c. Whether discovery should be conducted in phases, or limited to or focused upon, particular issues;

d. The date by which each party shall disclose the identity of expert witnesses and their reports under Rule 26(a)(2)(A) and (B);

e. The number of interrogatories each party shall be permitted to serve;

f. The number of depositions (excluding depositions of expert witnesses) each party shall be permitted to take; and

g. The number of expert depositions each party shall be permitted to take.

5. **Close of Discovery and Non-Dispositive Motions**

The date by which all discovery shall be completed and all non-dispositive motions shall be filed and served.

6. **Dispositive Motions and Trial**

a. Date by which all dispositive motions shall be served, filed and heard by the Court;

b. Date by which case will be ready for trial;

c. The number of expert witnesses each party expects to call at trial; and

d. Estimated trial time (including jury selection and instructions, if applicable).

C. Unless otherwise agreed by counsel, the initial disclosures under Rule 26(a)(1) shall also be exchanged no later than **December 7, 2000.**

D. **Each party shall also submit a Letter/Memorandum concerning settlement, which shall remain confidential between the Court and that party. The confidential letter shall be delivered to Magistrate Nelson's chambers at least three days prior to the pretrial conference.**

## III. EXERCISE OF JURISDICTION BY U.S. MAGISTRATE JUDGE PURSUANT TO TITLE 28, UNITED STATES CODE, SECTION 636(c)

If the parties consent to have this matter tried before the Magistrate Judge, all counsel are requested to sign the enclosed form by **December 11, 2000.**

Send the form directly to:

Larry Lewis
Calendar Clerk to Judge James M. Rosenbaum
15E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Dated: October 31, 2000.

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

# DORSEY & WHITNEY LLP

MINNEAPOLIS
NEW YORK
SEATTLE
DENVER
WASHINGTON, D.C.
NORTHERN VIRGINIA
DES MOINES
LONDON
ANCHORAGE
SALT LAKE CITY

PILLSBURY CENTER SOUTH
220 SOUTH SIXTH STREET
MINNEAPOLIS, MINNESOTA 55402-1498
TELEPHONE: (612) 340-2600
FAX: (612) 340-2868
www.dorseylaw.com

**ROY A. GINSBURG**
**(612) 340-8761**
**FAX (612) 340-2777**
**ginsburg.roy@dorseylaw.com**

BRUSSELS
COSTA MESA
BILLINGS
FARGO
HONG KONG
GREAT FALLS
ROCHESTER
TOKYO
MISSOULA
VANCOUVER
SHANGHAI

July 20, 2001

_Via Facsimile_
_Original to Follow_
Thomas A. Lewry, Esq.
Brooks & Kushman, P.C.
1000 Town Center
Twenty-second Floor
Southfield, MI 48075

Re: Storage Technology vs. Cisco Systems, Inc.
Civil Action No. 00 CV 2253

Dear Mr. Lewry:

As you know, on October 5, 2000, your firm filed a six-count Complaint on behalf of your client, Storage Technology Corporation ("STK") against Cisco Systems, Inc. ("Cisco"). At the time STK initiated its action against Cisco, you also served a Motion for Expedited Discovery, including requests for expedited depositions of key Cisco personnel, as well as various interrogatories and document requests. Your firm also requested the Court to adopt a broad Protective Order. STK's Motions and discovery requests were premised on the erroneous notion that Cisco/Nuspeed was "about to begin marketing its first product, a product that was developed with StorageTek proprietary, confidential and trade secret information." (*See* correspondence dated October 18, 2000 from T. Lewry to Judge James Rosenbaum.) You further contended that "because this product introduction is imminent, StorageTek needs to move quickly to prevent release of its proprietary, confidential and trade secret information." (*Id.*) Your requests were premised on the notion that STK was desirous of advancing the "preliminary injunction process." (*Id.*)

Cisco opposed your various requests for expedited written discovery and expedited depositions. Cisco also suggested substantial modifications to your request for a Protective Order. Cisco advocated that the litigation be treated like any other complex

lawsuit between sophisticated adversaries. (*See* correspondence dated October 13 and October 20, 2000, from R. Ginsburg to Judge James Rosenbaum.)

After considering the issues raised in the parties' correspondence, the Court elected not to act on your Motions for Expedited Discovery and a Protective Order. Instead, the matter was referred out to Magistrate Judge Susan Nelson for a Rule 16 case management conference. In the interim, on October 25, 2000, Cisco timely answered STK's Complaint. Further, on November 15, 2000, in anticipation of the parties' mandatory Rule 26(f) Conference, Cisco provided you a draft Stipulated Protective Order. This draft Order was designed to address the critical confidentiality issues central to this litigation.

On November 16, 2000, my colleague, Joe Hammell, and I met with Ernie Brooks and you for our Rule 26(f) Conference. At that conference, you acknowledged that inasmuch as Cisco/Nuspeed had yet to launch its first product, STK did not know what, if any, STK trade secrets or proprietary information might have been incorporated into that product. You conceded that STK was considering dropping its theft of trade secret and misappropriation claims, and argued that the litigation was "primarily a raiding case." (We are now ten months into this lawsuit and Cisco still does not know whether STK is alleging that the trade secrets supposedly misappropriated involve hardware, software, or other media.)

The parties participated in the initial case management conference with the Court on December 11, 2000. At that time, Magistrate Judge Nelson posed some of the same inquiries to you that we had discussed at the Rule 26(f) case management conference. In particular, Magistrate Judge Nelson was perplexed regarding how STK could have alleged that its trade secrets were misappropriated, given that Cisco/Nuspeed had yet to release its first product. We urged the Magistrate Judge essentially to freeze the discovery until the Cisco/Nuspeed product launch, after which STK would have the opportunity to evaluate more accurately and thoughtfully whether the Cisco/Nuspeed product incorporated any STK proprietary or trade secret information.

Magistrate Judge Nelson adopted the approach Cisco advocated. She urged STK to await the release of the Cisco/Nuspeed product, after which STK could assess the trade secret issues more carefully. She also invited the parties to meet with her again following the product launch to address the way in which the trade secret issues would be handled in this litigation. Since the initial conference with the Court, very little has occurred on this litigation. The parties exchanged partial answers to some of the written discovery that had been served. The parties also litigated the issue of whether your firm would be

allowed to continue representing STK in this lawsuit. For the most part, the case has languished in the eight months since the conference with the Court.

The most significant development since the inception of the litigation is that Cisco/Nuspeed introduced its first product. That product launch, which occurred in approximately April, 2001, has provided STK the opportunity to evaluate Cisco/Nuspeed's product and confirm that no STK proprietary or trade secret information has been incorporated into Cisco's product. Since the product launch, STK has not made any effort to address with the Court the ways in which the proprietary information of either STK or Cisco should be handled in this lawsuit.

Another important, non-litigation, development since STK began its lawsuit has been the dramatic economic downturn that has affected the high-tech companies, especially those linked closely to the Internet. Although Cisco was largely immune to these adverse economic developments during most of 2000, the same cannot be said for Cisco's experience in 2001. As you may know, this has resulted in an announcement by Cisco's CEO that the Company largely would freeze its hiring for the foreseeable future. Especially when combined with the fact that Cisco/Nuspeed has not hired former STK employees for almost a year, your client's concerns about "raiding," which we felt were unfounded at the inception of this lawsuit, seem completely unwarranted now.

Looking backwards, we find ourselves ten months into the litigation STK initiated in October 2000. Little to nothing has been accomplished by the lawsuit. Indeed, after the initial skirmishes between the parties, the litigation has been dormant. Although we have repeatedly inquired about the status of the Protective Order we furnished to you in November 2000, until your very recent dialogue with Joe Hammell, we had not heard anything from you. In short, nine months since we sent you a draft Protective Order, we still do not even have an operative confidentiality agreement in place. Written discovery has not been completed. No depositions have been taken. Cisco's product has been launched and it should be abundantly clear that it does not incorporate any STK technology, trade secrets or other proprietary information. Both companies have been adversely affected by the downturn in the high-tech and Internet economy and Cisco has imposed a hiring freeze.

With this backdrop, it strikes me that the parties should explore promptly and thoughtfully the termination of this lawsuit. Just as STK has accomplished nothing to date, there is little chance, if any, that STK will accomplish anything in the future by pursuing this lawsuit further. I suggest, therefore, that STK agree to dismiss its lawsuit with prejudice, without costs or fees awarded to either party.

factual basis for the six claims STK has advanced. We do not believe that the claims are grounded on a sound legal foundation. If necessary, we will demonstrate the factual and legal infirmities of this litigation to the Court. If we do so, we will seek all associated costs and attorneys' fees. We are hopeful, however, that this effort (and the associated expenses both parties will incur) can be avoided.

If you would like to discuss the proposal set forth in this correspondence, please contact me at your convenience. Even if STK is uninterested in this proposal, I would appreciate hearing from you. If STK is not willing to dismiss its lawsuit, we then can focus our efforts on finalizing the Protective Order, completing the written discovery and establishing a deposition schedule that will allow both parties to timely complete discovery. We also will need to have another conference with Magistrate Judge Nelson for the purposes of addressing the existing case schedule, ensuring that there is a prompt disclosure by STK of the trade secrets that allegedly were misappropriated, and determining which federal judge will assume responsibility for this litigation.

I look forward to hearing from you. If you have any questions, please give me a call.

Very truly yours,

Roy A. Ginsburg

cc: Neal Rubin, Esq.
Michael Labianca, Esq.
Mark Michels, Esq.
Joe Hammell, Esq.

**********************
*** TX REPORT ***
**********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 0612 |
| CONNECTION TEL | 719*1##12483583351PP |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 07/20 10:08 |
| USAGE T | 00'53 |
| PGS. SENT | 5 |
| RESULT | OK |

# DORSEY & WHITNEY LLP

MINNEAPOLIS
NEW YORK
SEATTLE
DENVER
WASHINGTON, D.C.
NORTHERN VIRGINIA
DES MOINES
LONDON
ANCHORAGE
SALT LAKE CITY

PILLSBURY CENTER SOUTH
220 SOUTH SIXTH STREET
MINNEAPOLIS, MINNESOTA 55402-1498
TELEPHONE: (612) 340-2600
FAX: (612) 340-2868
www.dorseylaw.com

BRUSSELS
COSTA MESA
BILLINGS
FARGO
HONG KONG
GREAT FALLS
ROCHESTER
TOKYO
MISSOULA
VANCOUVER
SHANGHAI

## FAX COVER SHEET

The information contained in this facsimile message, if a client of this firm is a named addressee, or the message is otherwise intended for a client, is presumptively legally privileged and confidential information. If you are not a named addressee, or if there is any reason to believe that you may have received this message in error, (1) do not read the message below; (2) do not distribute or copy this facsimile; and (3) please immediately call us collect at the number of the sender below.

DATE: **July 20, 2001** TOTAL # OF PAGES (INCLUDING THIS COVER SHEET): **5**

| | | | |
|---|---|---|---|
| TO: | **Thomas A. Lewry** | FAX #: | **(248) 358-3351** |
| FIRM NAME: | **Brooks & Kushman, P.C.** | TELEPHONE #: | **(248) 358-4400** |
| FROM: | **Roy A. Ginsburg** | FAX #: | **(612) 340-2868** |
| TELEPHONE #: | **(612) 340-8761** | EMAIL: | **ginsburg.roy@dorseylaw.com** |

COMMENTS:

**R0Y A. GINSBURG**
**(612) 340-8761**
**FAX (612) 340-2777**
**ginsburg.roy@dorseylaw.com**

July 20, 2001

_Via Facsimile_
_Original to Follow_
Thomas A. Lewry, Esq.
Brooks & Kushman, P.C.
1000 Town Center
Twenty-second Floor
Southfield, MI 48075

Re: Storage Technology vs. Cisco Systems, Inc.
Civil Action No. 00 CV 2253

Dear Mr. Lewry:

As you know, on October 5, 2000, your firm filed a six-count Complaint on behalf of your client, Storage Technology Corporation ("STK") against Cisco Systems, Inc. ("Cisco"). At the time STK initiated its action against Cisco, you also served a Motion for Expedited Discovery, including requests for expedited depositions of key Cisco personnel, as well as various interrogatories and document requests. Your firm also requested the Court to adopt a broad Protective Order. STK's Motions and discovery requests were premised on the erroneous notion that Cisco/Nuspeed was "about to begin marketing its first product, a product that was developed with StorageTek proprietary, confidential and trade secret information." (*See* correspondence dated October 18, 2000 from T. Lewry to Judge James Rosenbaum.) You further contended that "because this product introduction is imminent, StorageTek needs to move quickly to prevent release of its proprietary, confidential and trade secret information." (*Id.*) Your requests were premised on the notion that STK was desirous of advancing the "preliminary injunction process." (*Id.*)

Cisco opposed your various requests for expedited written discovery and expedited depositions. Cisco also suggested substantial modifications to your request for a Protective Order. Cisco advocated that the litigation be treated like any other complex

lawsuit between sophisticated adversaries. (*See* correspondence dated October 13 and October 20, 2000, from R. Ginsburg to Judge James Rosenbaum.)

After considering the issues raised in the parties' correspondence, the Court elected not to act on your Motions for Expedited Discovery and a Protective Order. Instead, the matter was referred out to Magistrate Judge Susan Nelson for a Rule 16 case management conference. In the interim, on October 25, 2000, Cisco timely answered STK's Complaint. Further, on November 15, 2000, in anticipation of the parties' mandatory Rule 26(f) Conference, Cisco provided you a draft Stipulated Protective Order. This draft Order was designed to address the critical confidentiality issues central to this litigation.

On November 16, 2000, my colleague, Joe Hammell, and I met with Ernie Brooks and you for our Rule 26(f) Conference. At that conference, you acknowledged that inasmuch as Cisco/Nuspeed had yet to launch its first product, STK did not know what, if any, STK trade secrets or proprietary information might have been incorporated into that product. You conceded that STK was considering dropping its theft of trade secret and misappropriation claims, and argued that the litigation was "primarily a raiding case." (We are now ten months into this lawsuit and Cisco still does not know whether STK is alleging that the trade secrets supposedly misappropriated involve hardware, software, or other media.)

The parties participated in the initial case management conference with the Court on December 11, 2000. At that time, Magistrate Judge Nelson posed some of the same inquiries to you that we had discussed at the Rule 26(f) case management conference. In particular, Magistrate Judge Nelson was perplexed regarding how STK could have alleged that its trade secrets were misappropriated, given that Cisco/Nuspeed had yet to release its first product. We urged the Magistrate Judge essentially to freeze the discovery until the Cisco/Nuspeed product launch, after which STK would have the opportunity to evaluate more accurately and thoughtfully whether the Cisco/Nuspeed product incorporated any STK proprietary or trade secret information.

Magistrate Judge Nelson adopted the approach Cisco advocated. She urged STK to await the release of the Cisco/Nuspeed product, after which STK could assess the trade secret issues more carefully. She also invited the parties to meet with her again following the product launch to address the way in which the trade secret issues would be handled in this litigation. Since the initial conference with the Court, very little has occurred on this litigation. The parties exchanged partial answers to some of the written discovery that had been served. The parties also litigated the issue of whether your firm would be

allowed to continue representing STK in this lawsuit. For the most part, the case has languished in the eight months since the conference with the Court.

The most significant development since the inception of the litigation is that Cisco/Nuspeed introduced its first product. That product launch, which occurred in approximately April, 2001, has provided STK the opportunity to evaluate Cisco/Nuspeed's product and confirm that no STK proprietary or trade secret information has been incorporated into Cisco's product. Since the product launch, STK has not made any effort to address with the Court the ways in which the proprietary information of either STK or Cisco should be handled in this lawsuit.

Another important, non-litigation, development since STK began its lawsuit has been the dramatic economic downturn that has affected the high-tech companies, especially those linked closely to the Internet. Although Cisco was largely immune to these adverse economic developments during most of 2000, the same cannot be said for Cisco's experience in 2001. As you may know, this has resulted in an announcement by Cisco's CEO that the Company largely would freeze its hiring for the foreseeable future. Especially when combined with the fact that Cisco/Nuspeed has not hired former STK employees for almost a year, your client's concerns about "raiding," which we felt were unfounded at the inception of this lawsuit, seem completely unwarranted now.

Looking backwards, we find ourselves ten months into the litigation STK initiated in October 2000. Little to nothing has been accomplished by the lawsuit. Indeed, after the initial skirmishes between the parties, the litigation has been dormant. Although we have repeatedly inquired about the status of the Protective Order we furnished to you in November 2000, until your very recent dialogue with Joe Hammell, we had not heard anything from you. In short, nine months since we sent you a draft Protective Order, we still do not even have an operative confidentiality agreement in place. Written discovery has not been completed. No depositions have been taken. Cisco's product has been launched and it should be abundantly clear that it does not incorporate any STK technology, trade secrets or other proprietary information. Both companies have been adversely affected by the downturn in the high-tech and Internet economy and Cisco has imposed a hiring freeze.

With this backdrop, it strikes me that the parties should explore promptly and thoughtfully the termination of this lawsuit. Just as STK has accomplished nothing to date, there is little chance, if any, that STK will accomplish anything in the future by pursuing this lawsuit further. I suggest, therefore, that STK agree to dismiss its lawsuit with prejudice, without costs or fees awarded to either party.

Lest you interpret this overture as a reflection of any concern about our position in the litigation, however, let me restate the obvious. We do not believe that there is any factual basis for the six claims STK has advanced. We do not believe that the claims are grounded on a sound legal foundation. If necessary, we will demonstrate the factual and legal infirmities of this litigation to the Court. If we do so, we will seek all associated costs and attorneys' fees. We are hopeful, however, that this effort (and the associated expenses both parties will incur) can be avoided.

If you would like to discuss the proposal set forth in this correspondence, please contact me at your convenience. Even if STK is uninterested in this proposal, I would appreciate hearing from you. If STK is not willing to dismiss its lawsuit, we then can focus our efforts on finalizing the Protective Order, completing the written discovery and establishing a deposition schedule that will allow both parties to timely complete discovery. We also will need to have another conference with Magistrate Judge Nelson for the purposes of addressing the existing case schedule, ensuring that there is a prompt disclosure by STK of the trade secrets that allegedly were misappropriated, and determining which federal judge will assume responsibility for this litigation.

I look forward to hearing from you. If you have any questions, please give me a call.

Very truly yours,

Roy A. Ginsburg

cc: Neal Rubin, Esq.
Michael Labianca, Esq.
Mark Michels, Esq.
Joe Hammell, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Storage Technology Corporation, Civil No. 00-2253 (JRT/SRN)

Plaintiff,

v.

**PRETRIAL SCHEDULING ORDER**

Cisco Systems, Inc.,

Defendants.

---

Pursuant to Rule 16 of the Federal Rules of Civil Procedure and the Local Rules of this Court as amended effective November 1, 1996, and in order to secure the just, speedy, and inexpensive determination of this action, the following schedule shall govern this proceeding. The schedule may be modified only upon formal motion and a showing of good cause as required by Local Rule 16.3.

**Discovery Plan**

1. **Discovery shall be commenced in time to be completed by December 31, 2001.**

2. All pre-discovery disclosures required by Rule 26(a)(1) shall be completed on or before December 15, 2000.

3. Disclosure of the identity of expert witnesses under Rule 26(a)(2)(A) shall be made as follows:

   a. By Plaintiff(s) on or before August 30, 2001.

   b. By Defendant(s) on or beforé September 30, 2001.

FILED DEC 1 1 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

4. Full disclosure of expert testimony, required by Rule 26(a)(2)(B), accompanied by the written report prepared and signed by the expert witness, shall be made as follows:

   1. By Plaintiff(s) on or before October 30, 2001.

   2. By Defendant(s) on or before November 30, 2001.

5. No more than 50 interrogatories [counted in accordance with Fed. R. Civ. P. 33(a)] shall be served by any party.

6. No more than 35 depositions (15 limited to 3 hours or less), excluding expert witness depositions, shall be taken by any party. Each party shall take no more than 4 expert depositions.

**Non-Dispositive Motions**

(Non-dispositive motions may be scheduled for hearing by calling Beverly Riches, Calendar Clerk, 651-848-1200.)

1. All motions which seek to amend the pleadings must be served by January 31, 2001. All motions which seek to add parties must be served by December 29, 2000.

2. All other non-dispositive motions and supporting documents, including those which relate to discovery, shall be served and filed by January 15, 2002.

3. All non-dispositive motions shall be scheduled, filed and served in compliance with Local Rules 7.1, 37.1, and 37.2.

**Dispositive Motions**

1. All dispositive motions shall be served, filed and heard by March 1, 2002. (Counsel are reminded that they must anticipate the time required for scheduling this hearing by calling Calendar Clerk Larry Lewis, 612-664-5053.)

2. All dispositive motions shall be scheduled, filed and served in compliance with Local Rule 7.1.

**Trial**

This case shall be ready for trial **(JURY)** on May 1, 2002, or upon resolution of any pending dispositive motions. Anticipated length of trial is 3 - 4 weeks.

Dated: December 11, 2000

Susan Richard Nelson
United States Magistrate Judge

BROOKS & KUSHMAN P. C.

Law Offices

*Intellectual Property and Technology Related Causes*

Ernie L. Brooks
James A. Kushman
David R. Syrowik
Mark A. Cantor
Ralph M. Burton
Robert C. J. Tuttle
Earl J. LaFontaine
Ronald M. Nabozny
Thomas A. Lewry
John E. Nemazi
Kevin J. Heinl
William G. Abbatt
Donald J. Harrington
John M. Halan
Jeffrey M. Szuma
Maria Franek Angileri
Frank A. Angileri
William G. Conger
Christopher W. Quinn
Sangeeta G. Shah
Konstantine J. Diamond
George R. Mosher
Frederick M. Ritchie
John M. Sheridan
Elizabeth F. Janda
Robert C. Brandenburg
A. Frank Duke
James R. Ignatowski
David S. Bir
James N. Kallis
Hugo A. Delevie
Ralph E. Smith
Mark E. Stuenkel
Michael S. Brodbine
Seth E. Rodack
Pete N. Kiousis
James W. Proscia
Ginta D. Kukainis
Lawrence G. Almeda
Philip Abromats
Thomas W. Cunningham
John S. LeRoy
*Anessa Owen Kramer
Jeremy J. Curcuri
*Admitted in D.C. & M.D.
Registered Patent Agents
Mark D. Chuey, Ph.D.
Stephanie M. Mansfield, Ph.D.
Robert C. Jones
Matthew R. Mowers
Matthew M. Jakubowski
Marc Lorelli

July 30, 2001

**VIA FACSIMILE: (612) 340-2868**
**AND VIA FIRST-CLASS MAIL**

Mr. Roy A. Ginsburg
Dorsey & Whitney, LLP
Pillsbury Center South
220 South Sixth Street
Minneapolis, Minnesota 55402-1498

Re: **Storage Technology v. Cisco Systems, Inc.**
**Civil Action No. 00 CV 2253**
**Our File No. STK 0133 L**

Dear Roy:

Your letter of July 20, 2001 arrived while I was in trial in South Dakota. I have now had time to read your letter.

As I understand your letter, you are not proposing a settlement, but rather, suggesting that StorageTek simply dismiss the case. StorageTek has no intention of dismissing this case unilaterally.

There is no question that NuSpeed, now Cisco, raided employees from StorageTek. Those employees were given job assignments very similar to the assignments they had while at StorageTek.

1000 TOWN CENTER, TWENTY-SECOND FLOOR, SOUTHFIELD, MICHIGAN 48075
TELEPHONE (248) 358-4400, FACSIMILE (248) 358-3351

Your letter of July 20, 2001 is the first formal notice that Cisco released a product developed by the former StorageTek employees. With this information, StorageTek is prepared to proceed with the case. In that regard, we are filing a motion asking the Court to enter StorageTek's confidentiality order so the exchange of confidential documents can proceed.

Very truly yours,

**BROOKS & KUSHMAN P.C.**

Thomas A. Lewry

TAL/cej
cc: Mr. Richard P. Mahoney
Mr. Timothy R. Schulte

Anderson Aff. Ex. 00011

**BROOKS & KUSHMAN P. C.**

Law Offices

*Intellectual Property and Technology Related Causes*

Ernie L. Brooks
James A. Kushman
David R. Syrowik
Mark A. Cantor
Ralph M. Burton
Robert C. J. Tuttle
Earl J. LaFontaine
Ronald M. Nabozny
Thomas A. Lewry
John E. Nemazi
Kevin J. Heinl
William G. Abbatt
Donald J. Harrington
John M. Halan
Jeffrey M. Szuma
Maria Franek Angileri
Frank A. Angileri
William G. Conger
Christopher W. Quinn
Sangeeta G. Shah
Konstantine J. Diamond
George R. Mosher
Frederick M. Ritchie
John M. Sheridan
Elizabeth F. Janda
Robert C. Brandenburg
A. Frank Duke
James R. Ignatowski
David S. Bir
James N. Kallis
Hugo A. Delevie
Ralph E. Smith
Mark E. Stuenkel
Michael S. Brodbine
Seth E. Rodack
Pete N. Klousis
James W. Proscia
Ginta D. Kukainis
Lawrence G. Almeda
Philip Abromats
Thomas W. Cunningham
John S. LeRoy
*Anessa Owen Kramer

*Admitted in D.C. & M.D.

Registered Patent Agents
Mark D. Chuey, Ph.D.
Stephanie M. Mansfield, Ph.D.
Jeremy J. Curcuri
Robert C. Jones
Matthew R. Mowers
Matthew M. Jakubowski
Marc Lorelli

July 31, 2001

FAX RECEIVED FOR
ATTY Hammell
FLOOR 14EB
SECY Capra

***Via Facsimile (612) 340-2868***

Mr. Joseph W. Hammell
Dorsey & Whitney LLP
Pillsbury Center South
220 South Sixth Street
Minneapolis, MN 55402-1498

**Re: *Storage Technology v. Cisco Systems, Inc.***
**Civil Action No. 00 CV 2253**
**Our File No. STK 0133 L**

Dear Mr. Hammell:

This letter is in response to your July 30, 2001 communication regarding the protective order issue. You imply in your letter that we have delayed in responding to the protective order issue. Until your client released a product, this case was on hold. There was no need to discuss the protective order. At the time of Cisco's release of the SN5420, Cisco proposed a protective order in the California case. We forwarded it to you on June 4, 2001. If there was any delay, it was your delay between June 4, 2001 and your July 30, 2001 response.

As you know, we believe that a protective order commensurate in scope with the one entered in the *StorageTek v. Cisco* case pending in the Northern District of California is appropriate. The use of such a protective order will avoid confusion when the parties produce documents. If your proposed changes are minor, I am willing to consider them. If you intend to make wholesale changes, we will ask the Court to enter the protective order as is.

BK

1000 TOWN CENTER, TWENTY-SECOND FLOOR, SOUTHFIELD, MICHIGAN 48075
TELEPHONE (248) 358-4400, FACSIMILE (248) 358-3351

Mr. Joseph W. Hammell
July 31, 2001
Page 2

In any event, I am willing to discuss your proposed changes to the protective order of the California lawsuit. As requested, I will e-mail a copy of the draft to you today.

Very truly yours,

**BROOKS & KUSHMAN P.C.**

Thomas A. Lewry

ML/aw

# DORSEY & WHITNEY LLP

MINNEAPOLIS
NEW YORK
SEATTLE
DENVER
WASHINGTON, D.C.
NORTHERN VIRGINIA
DES MOINES
LONDON
ANCHORAGE
SALT LAKE CITY

PILLSBURY CENTER SOUTH
220 SOUTH SIXTH STREET
MINNEAPOLIS, MINNESOTA 55402-1498
TELEPHONE: (612) 340-2600
FAX: (612) 340-2868
www.dorseylaw.com

BRUSSELS
COSTA MESA
BILLINGS
FARGO
HONG KONG
GREAT FALLS
ROCHESTER
TOKYO
MISSOULA
VANCOUVER
SHANGHAI

**ROY A. GINSBURG**
**(612) 340-8761**
**FAX (612) 340-2777**
**ginsburg.roy@dorseylaw.com**

August 1, 2001

*Via Facsimile*
*Original to Follow*
Thomas A. Lewry, Esq.
Brooks & Kushman, P.C.
1000 Town Center
Twenty-second Floor
Southfield, MI 48075

Re: Storage Technology vs. Cisco Systems, Inc.
Civil Action No. 00 CV 2253

Dear Mr. Lewry:

I am in receipt of your correspondence dated July 30, 2001, rejecting Cisco Systems, Inc.'s ("Cisco") suggestion that Storage Technology, Inc. ("STK") dismiss the above-referenced litigation. After letting this matter languish for nine months, STK apparently intends to proceed with this lawsuit. Given that fact, your short correspondence warrants a few responsive observations and questions.

First, it is perplexing to us that you would feign surprise that the Cisco/Nuspeed product was launched this spring. In your first communications with the Court back in October, 2000, you referenced the fact that Cisco was "about to begin marketing its first product," and pointed out that the "product introduction was imminent." (*See* correspondence from T. Lewry to Judge Rosenbaum dated October 18, 2000.)

When Joe Hammell and I met with you and Mr. Brooks in mid-November, 2000, we inquired about what alleged trade secrets had supposedly been incorporated into the Cisco/Nuspeed product. You were unable to answer that question, pointing out that the product was not yet on the market. You emphasized that as soon as the product was launched, you would be in a position to address that issue.

When counsel for the parties met with Magistrate Judge Susan Nelson in December 2000, the Court inquired about what trade secrets allegedly had been incorporated into the Cisco/Nuspeed product. Again, you stated that you were unable to respond to that inquiry, but that your client would be able to evaluate that issue when the product was launched. Counsel had an extended discussion with the Court regarding the likely March/April 2001 product launch, ultimately leading to an informal discovery standstill agreement until the product launch.

The Cisco/Nuspeed product was released on April 4, 2001. A press conference was conducted in conjunction with this product launch and numerous articles were written about the release of this product. Since its launch, the product has been monitored closely and discussed frequently in the industry press. Given your previous claims that the product incorporated STK technology, we assumed that you and your client would pay close attention to this Cisco product. Charitably put, we are skeptical about your contention that you expected "formal notice" that the product had been launched. Nevertheless, my client and I were pleased to discover that in the four months since the product was launched, STK was not even aware that it was on the market. Obviously, the release of the Cisco/Nuspeed product has not had any impact on the sales of any allegedly competitive product sold by STK and has not caused STK any damage whatsoever.

Second, in your correspondence, you state that my July 20 letter is the "first formal notice that Cisco released a product *developed by the former StorageTek employees*." Although it should be abundantly clear that we disagree with that silly characterization, I did not want you to assume that a failure to respond to that specific assertion reflected acquiescence.

Third, now that your client apparently has made the imprudent decision to proceed with this litigation, we are back to the fundamental inquiries we posed in November 2000. Is STK willing to drop its claims which either directly or indirectly hinge on the unsupportable allegations that Cisco has misappropriated STK's trade secrets (Count III, Misappropriation of Trade Secrets; Count V, Conversion; and Count VI, Breach of Fiduciary Duties)? On several occasions during the early discussions about this lawsuit, you and Mr. Brooks have suggested that this is a "raiding" case and that you were considering dropping the misappropriation counts. Consistent with your earlier observations, in your July 30 correspondence, you referenced the alleged "raiding" claim, but no other aspect of STK's Complaint. Have you made a decision on whether you will drop the claims unrelated to raiding? Do you need additional time to resolve this question? If so, when will you be able to make this decision?

If you are not willing to drop the claims relating to your misappropriation of trade secrets theory, when are you going to disclose the trade secrets you contend were misappropriated? As you know, we served discovery, including Interrogatories and Document Requests, on STK on October 27, 2000. Central to our inquiries were questions addressing STK's allegations that Cisco misappropriated its trade secrets (*see, e.g.,* Document Request No. 19, 20, 30, 32, 33, 34, 35, and Interrogatory Nos. 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, and 18.) Following our mandatory Rule 26(f) conference with you, on November 21, 2000, we revised and re-served this discovery.

STK responded to Cisco's revised discovery on December 26, 2000. At that time, STK took the position that Cisco's inquiries regarding trade secrets were "premature." You also pointed out that "the Court has ruled that discovery on the confidential, proprietary, and trade secret portion of this lawsuit will not commence until Cisco/NuSpeed has released its product." (*See, e.g.,* STK's Responses to Cisco's Revised Interrogatories, Response to Interrogatory No. 8.) The dual response of "prematurity" and the need to wait for the product launch was STK's mantra to virtually every question or document request involving trade secrets. (Of course, given this response, it is especially difficult to understand why STK completely disregarded the Cisco product launch for more than four months.)

In any event, the Cisco product has been on the market for four months. STK has had ample opportunity to evaluate the product and assess whether it incorporates any proprietary STK technology. (It doesn't.) Therefore, STK either needs to drop these claims or respond to our outstanding discovery. Please let me know at your earliest convenience whether STK will dismiss its trade secret claims. If your client will not do so, please let me know at your earliest convenience when you are going to respond to our long overdue discovery. If STK will not respond to our discovery on these issues in a timely manner, we need to hold a Rule 37 conference, followed by a Motion to Compel.

Fourth, you reference in your letter the Protective Order. Again, we are somewhat perplexed by your approach. After disregarding our efforts to address the confidentiality agreement for more than 10 months, you now have provided us an entirely different order (albeit an order used in another STK/Cisco case) and threaten to file a motion with the Court regarding this Order. As you know, Joe Hammell is handling the Protective Order issues. We remain hopeful that the parties can reach an accord on the Protective Order without seeking judicial intervention. Indeed, we believe that this issue could have (and should have) been resolved months ago.

If you have any questions about any aspect of this letter or any other facet of this litigation, please give me a call.

Very truly yours,

Roy A. Ginsburg

Roy A. Ginsburg

cc: Neal Rubin, Esq.
Joe Hammell, Esq.

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO            0903
CONNECTION TEL      719*1##12483583351PP
SUBADDRESS
CONNECTION ID
ST. TIME            08/01 17:13
USAGE T             00'53
PGS. SENT             5
RESULT              OK
```

# DORSEY & WHITNEY LLP

MINNEAPOLIS
NEW YORK
SEATTLE
DENVER
WASHINGTON, D.C.
NORTHERN VIRGINIA
DES MOINES
LONDON
ANCHORAGE
SALT LAKE CITY

PILLSBURY CENTER SOUTH
220 SOUTH SIXTH STREET
MINNEAPOLIS, MINNESOTA 55402-1498
TELEPHONE: (612) 340-2600
FAX: (612) 340-2868
www.dorseylaw.com

BRUSSELS
COSTA MESA
BILLINGS
FARGO
HONG KONG
GREAT FALLS
ROCHESTER
TOKYO
MISSOULA
VANCOUVER
SHANGHAI

## FAX COVER SHEET

The information contained in this facsimile message, if a client of this firm is a named addressee, or the message is otherwise intended for a client, is presumptively legally privileged and confidential information. If you are not a named addressee, or if there is any reason to believe that you may have received this message in error, (1) do not read the message below; (2) do not distribute or copy this facsimile; and (3) please immediately call us collect at the number of the sender below.

DATE: **August 1, 2001**

TOTAL # OF PAGES (INCLUDING THIS COVER SHEET): ~~6~~ 5

TO: **Thomas A. Lewry** FAX #: **248-358-3351**

FIRM NAME: **Brooks & Kushman** TELEPHONE #:

FROM: **Roy A. Ginsburg** FAX #: **(612) 340-2868**

TELEPHONE #: **(612) 340-8761** EMAIL: **ginsburg.roy@dorseylaw.com**

COMMENTS: