**Briefs and Other Related Documents**

Only the Westlaw citation is currently available.

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

Court of Appeal, Second District, Division 6, California.
MEISSNER FILTRATION PRODUCTS, INC., Plaintiff and Appellant,
v.
Steven HARRINGTON, Defendant and Respondent.
**2d Civil No. B170707.**
**(Ventura County Super. Ct. No. CIV212103).**

Sept. 30, 2004.

Superior Court County of Ventura, Frederick H. Bysshe, Judge.

Schroeder Comis Nelson & Kahn LLP, Mary E. Schroeder, Stuart A. Comis; Lascher & Lascher, Wendy Cole Lascher and Alfred Vargas for Plaintiff and Appellant.

Higgs, Fletcher & Mack LLP, John Morris and Alexis Gutierrez for Defendant and Respondent.

PERREN, J.

*1 Respondent, Steven Harrington, worked as an engineer for appellant, Meissner Filtration Products, Inc. (MFP). Harrington accepted an offer to become a manager at PTI Advanced Filtration, Inc. (PTI), a competitor of MFP. Before Harrington began working for PTI, and while he was still employed by MFP, plaintiff filed this lawsuit against him. The complaint alleged misappropriation of trade secrets. MFP immediately sought a temporary restraining order to prevent Harrington from working for PTI, claiming that its trade secrets would inevitably be disclosed to PTI.

The court refused to issue the restraining order and, several months later, Division Three of the Fourth District expressly rejected the doctrine of inevitable disclosure. (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1447.) Despite this authority, appellant persisted in pursuing the claim, conducted extensive discovery and tried to prevent Harrington from working at PTI or any other competitor.

Ultimately, MFP filed its dismissal of the lawsuit. Harrington moved for attorney's fees and costs, alleging that MFP prosecuted the suit in bad faith. (Civ.Code, § 3426.4.) [FN1] The trial court agreed and awarded respondent $31,012.26 in fees and costs. We affirm.

FN1. All statutory references are to the Civil Code unless otherwise stated.

Facts and Procedural History

In 1995, MFP hired Harrington as a process control and development engineer whose primary responsibilities were to create, develop, test, and sell Accuflux, a device for testing membrane filters. As a condition of his employment with MFP, Harrington executed a confidentiality agreement, which was called an "invention and secrecy agreement" (hereafter confidentiality agreement). Under the confidentiality agreement, Harrington agreed not to disclose to third parties the inventions, improvements, and developments he created while working at MFP. MFP admitted that Harrington did an "admirable job of protecting and maintaining the security" of its trade secrets.

On May 28, 2002, when Harrington informed MFP he had accepted a position at PTI, he reiterated that he would adhere to the confidentiality agreement. Indeed, he notified PTI of the agreement with MFP, and executed a similar confidentiality agreement with PTI.

On June 7, 2002, before he began working for PTI, MFP filed this action under the Uniform Trade Secrets Act seeking a temporary restraining order, injunctive relief, and damages for misappropriation of its trade secrets. (§ 3426 et seq. [hereafter UTSA].) The complaint alleged that Harrington had misappropriated trade secrets before he announced he was leaving MFP for PTI, and that "it is impossible for defendant to act as the manager ... for PTI ... without utilizing the trade secrets...." The complaint also

alleged it was "inevitable" that many of MFP's techniques would be divulged to PTI through Harrington. MFP sought to enjoin Harrington from disclosing its trade secrets and from accepting any employment involving product development or manufacturing at PTI or at any other company that manufactures micro filters. In effect, MFP sought to enjoin Harrington from working in his chosen field.

***2** On June 10, 2002, the last day he worked for MFP, the complaint was served on Harrington in the MFP parking lot in front of another employee, and he was informed that MFP was seeking a temporary restraining order against him. On June 11, 2002, Harrington began working for PTI as its manager of new product development. That same day, MFP sought a restraining order to prevent Harrington from working there. MFP again asserted it was inevitable that Harrington would divulge its trade secrets. Harrington responded that the inevitable disclosure doctrine was not recognized in California, and contended that MFP was, in effect, seeking a covenant not to compete.

Pending a hearing on the matter, the court permitted Harrington to work for PTI, but ordered him not to disclose any trade secrets and to provide a declaration explaining how he could work for PTI without revealing them. The court ordered MFP to provide a list of documents to the court which might divulge its trade secrets. (Code Civ. Proc., § 2019, subd. (d).)

After two failed attempts to secure a temporary restraining order against Harrington, MFP asked the court for a preliminary injunction. At the July 29, 2002, hearing on the preliminary injunction, the court concluded that California law does not follow the doctrine of inevitable disclosure. In so ruling, the court expressed concern that MFP's claim might preclude Harrington from ever obtaining comparable employment. Indeed, the complaint expressly sought to preclude him from working anywhere else in positions for which he is trained. The court found that Harrington "takes very conscientiously his confidentiality agreement with [MFP] and his agreement not to disclose trade secrets of others to PTI...." The court found that there was a tremendous potential loss to Harrington, but only speculative loss to MFP. Accordingly, the court denied the request for a preliminary injunction, but it kept in place protective orders prohibiting the disclosure of trade secrets and the MFP training manual.

On November 1, 2002, MFP moved for a discovery protective order without specifying any of its alleged trade secrets to the court. It also set depositions pursuant to Code of Civil Procedure section 2019, subdivision (d). (§ 3426.5.) The court granted a protective order to MFP, subject to in camera disclosure of the claimed trade secrets, pursuant to Code of Civil Procedure section 2019, subdivision (d). The order outlined the means by which the confidentiality of trade secrets, if any, would be maintained, pendente lite. The court defined "confidential" to mean all information or material produced for or disclosed to any party, or submitted to the court, that contains trade secrets or highly sensitive technical, marketing, financial or other information, confidential and proprietary technical, scientific or commercial information, whether embodied in physical objects, documents, or the factual knowledge of persons and that has been so designated by the producing party in the manner set forth in the order. At the time it issued this order, the court denied MFP's request to depose defendant every 45 days.

***3** On March 14, 2003, MFP dismissed the case.

Harrington sought attorney's fees and costs totaling $87,492.58, pursuant to section 3426.4. MFP argued that such fees were not recoverable because it acted in good faith. The court disagreed. It found this action was specious and pursued in bad faith. It awarded Harrington $29,794.26 in attorney's fees and $1,218 in costs. (§ 3426.4; *Gemini Aluminum Corp. v. California Custom Shapes, Inc*. (2002) 95 Cal.App.4th 1249; Code Civ. Proc., § 1032, subds. (a)(4), (b).) MFP appeals from the judgment.

Discussion

Section 3426.4 of the UTSA provides, in pertinent part, "[i]f a claim of misappropriation [of trade secrets] is made in bad faith, ... the court may award reasonable attorney's fees to the prevailing party." The UTSA does not define "bad faith." (*Gemini Aluminum Corp. v. California Custom Shapes, Inc., supra,* 95 Cal.App.4th at p. 1261.) *Gemini* held that "bad faith," for purposes of section 3426.4, means

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"objective speciousness of the plaintiff's claim, as opposed to frivolousness, and its subjective bad faith [misconduct] in bringing or maintaining the claim." (*Gemini,* at pp. 1261-1262.) *Gemini* concluded that section 3426.4 was enacted to deter specious claims of misappropriation of trade secrets. (*Gemini,* at p. 1261, citing legislative history.)

A claim of misappropriation is "objectively specious" if it is made without actual merit or substance. (*Gemini Aluminum Corp. v. California Custom Shapes, Inc., supra,* 95 Cal.App.4th at p. 1261 [no substance in reality].) Unlike Code of Civil Procedure section 128.5, which also concerns bad faith actions and tactics, section 3426.4 of the UTSA does not contain the word "frivolous." (*Gemini,* at p. 1262.) Accordingly, *Gemini* concluded that one need not establish that a claim for misappropriation is both specious and frivolous or intended solely to cause unnecessary delay in order to obtain fees under section 3426.4. (*Gemini,* at p. 1262.) Because the claim need not be frivolous, a section 3426.4 motion for fees may be granted even if the suit superficially appears to have merit. (*Gemini,* at p. 1262.)

Subjective bad faith exists if the plaintiff has been grossly negligent or reckless, if not intentional and willful, in bringing the claim. Subjective bad faith may be inferred by evidence that the plaintiff intended to cause unnecessary delay, brought the claim to harass the defendant, or harbored some other improper motive. (*Gemini Aluminum Corp. v. California Custom Shapes, Inc., supra,* 95 Cal.App.4th at p. 1263.) The timing of the action may raise an inference of subjective bad faith. (*Ibid.*) Subjective bad faith may also be shown when a plaintiff continues to pursue the claim even after its fatal shortcomings are revealed by opposing counsel. (*Id.,* at p. 1264.)

An award of attorney's fees under section 3426.4 constitutes a sanction which is determined by a factual inquiry over which trial courts have broad discretion. (*Gemini Aluminum Corp. v. California Custom Shapes, Inc., supra,* 95 Cal.App.4th at p. 1262.) " 'Assuming some evidence exists in support of the factual findings, the trial court's exercise of discretion will not be disturbed unless it exceeds the bounds of reason. [Citation.] In reviewing the facts which led the trial court to impose sanctions, we must accept the version thereof which supports the trial court's determination, and must indulge in the inferences which favor its findings. [Citations.]' " (*Id.,* at pp. 1262-1263, citing case; see also *Whyte v. Schlage Lock Co., supra,* 101 Cal.App.4th at p. 1458.)

Objective Bad Faith

***4** Substantial evidence supports the trial court's finding that this suit has no merit. It is undisputed that Harrington took the confidentiality agreement seriously. MFP admitted that Harrington did "an admirable job of protecting and maintaining the security" of its trade secrets. Indeed, MFP sought to keep Harrington in its employ while it was filing and serving this action. Even as he was leaving MFP, Harrington reiterated that he would adhere to the confidentiality agreement.

There is no evidence he disclosed any of MFP's trade secrets to PTI. In fact, when he started working for PTI, Harrington told them of his confidentiality agreement with MFP and executed another one with PTI. Furthermore, there is substantial evidence that the trade secrets he learned at MFP would not be useful in Harrington's new position at PTI because PTI focused on new and different products.

Subjective Bad Faith

Substantial evidence supports the trial court's finding that MFP had improper motives for filing and maintaining this action. Even though MFP knew and admitted that Harrington abided by the confidentiality agreement, MFP preemptively filed this suit and served it in its parking lot in front of another MFP employee. Allegations that Harrington wrongly downloaded the training manual to his home computer for surreptitious dissemination before he left are suspect. The manual is largely a compilation of fundamental, publicly available information. The preemptive nature of the claim, the dramatic way in which it was served, the questionable concern about downloading the manual, and the evidence of Harrington's integrity belie MFP's need to file this action.

On September 12, 2002, the Court of Appeal in *Whyte* rejected the doctrine of inevitable disclosure in California. Under this doctrine, an employee may be enjoined from taking new employment if that employment "will inevitably lead him to rely on the plaintiff's trade secrets." (See

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PepsiCo, Inc. v. Redmond (7th Cir.1995) 54 F.3d 1262, 1269; Whyte v. Schlage Lock Co., supra, 101 Cal.App.4th at p. 1458.) As the court in *Whyte* explained, "decisions rejecting the inevitable disclosure doctrine correctly balance competing public policies of employee mobility and protection of trade secrets. The inevitable disclosure doctrine permits an employer to enjoin the former employee without proof of the employee's actual or threatened use of trade secrets based upon an inference (based in turn upon circumstantial evidence) that the employee inevitably will use his or her knowledge of those trade secrets in the new employment. The result is not merely an injunction against the use of trade secrets, but an injunction restricting employment." (*Whyte,* at pp. 1461- 1462.)

The doctrine tends to be improperly used as a substitute for actual proof of misappropriation. Here, MFP had no proof that Harrington did or would disclose its trade secrets. To the contrary, given Harrington's impeccable record of adherence to the confidentiality agreement, there was very strong evidence that Harrington would not disclose trade secrets. Still, MFP continued to rely on this now discredited doctrine.

***5** MFP contended that it reasonably relied on the doctrine of inevitable disclosure because it has been accepted by some federal courts. (E.g., *PepsiCo, Inc. v. Redmond, supra,* 54 F.3d at p. 1269.) We disagree. Decisions of federal courts are not binding on state courts. (*Whyte v. Schlage Lock Co., supra,* 101 Cal.App.4th at p. 1460.) Alternatively, MFP relies on a depublished opinion of this court and an article written by Harrington's counsel to support its position. Depublished decisions of California Courts of Appeal may not be cited as precedent, and counsel's journal article is not persuasive in light of outstanding precedent to the contrary. (*Hankins v. El Torito Restaurants, Inc.* (1998) 63 Cal .App.4th 510, 518, fn. 2 [depublished decisions]; and see generally *Carlin v. Superior Court* (1996) 13 Cal.4th 1104, 1117, fn. 7 [re journals].)

MFP continued to maintain this suit until March 2003, nearly six months after Harrington's counsel informed MFP about *Whyte*. As the trial court found, a "significant amount of the work in this case continued after that [the *Whyte* ] decision was acknowledged...." MFP filed repeated requests for injunctions, propounded further written discovery, and sought to take repeated depositions of Harrington on a regular basis. It did so without providing the court with a list of documents which contained or specified its trade secrets, in derogation of court orders. (*Whyte v. Schlage Lock Co., supra,* 101 Cal.App.4th at p. 1453 [party seeking to protect trade secret must identify it with specificity to the court]; Code Civ. Proc., § 2019, subd. (d).)

Conclusion

We conclude that the trial court did not abuse its discretion in finding that MFP acted in bad faith by filing and maintaining this action, and in ordering MFP to pay attorney's fees pursuant to section 3426.4.

When fees are recoverable pursuant to statute, as here, they are available for services rendered both at trial and on appeal. (*Gemini Aluminum Corp. v. California Custom Shapes, Inc., supra,* 95 Cal.App.4th at p. 1264.) Because Harrington is the prevailing party at trial and on appeal, he is entitled to fees for both under section 3426.4. Although we have the power to fix attorney's fees on appeal, we follow the practice of having the trial court determine such fees. (*Gemini,* at pp. 1264-1265.)

The judgment and orders are affirmed. The matter is remanded to the trial court for its determination of reasonable attorney's fees. Harrington is also awarded costs on appeal.

We concur: GILBERT, P.J., and COFFEE, J.

2004 WL 2189249 (Cal.App. 2 Dist.) Not Officially Published, (Cal. Rules of Court, Rules 976, 977)

**Briefs and Other Related Documents (Back to top)**

. 2004 WL 1063881 (Appellate Brief) Appellant's Opening Brief (Mar. 04, 2004)Original Image of this Document (PDF)

. 2004 WL 1063882 (Appellate Brief) Appellant's Opening Brief (Mar. 04, 2004)Original Image of this Document (PDF)

. B170707 (Docket) (Oct. 15, 2003)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
JLM FORMATION, INC., a California corporation,
Plaintiff,
v.
FORM+PAC, a Hong Kong corporation; and Betty Chow,
an individual dba Modern
Creative, Defendants.
**No. C 04-1774 CW.**

Aug. 19, 2004.

Christopher Ashworth, Kalpana V. Peddibhotla, Jonathan W. Brown, Silicon Valley Law Group, San Jose, CA, for Plaintiff.

J. Scott Gerien, Noel Matthew Cook, Owen, Wickersham & Erickson, P.C., San Francisco, CA, for Defendants.

ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES

WILKEN, J.

***1** Defendants Form+Pac and Betty Chow have filed a motion for attorneys' fees pursuant to California Civil Code § 3426.4, Federal Rule of Civil Procedure 54(d)(2) and Civil Local Rule 54-5. Plaintiff JLM Formation, Inc. opposes this motion. This matter was submitted on the papers. Having considered all of the papers filed by the parties, the Court DENIES Defendants' motion

BACKGROUND

This dispute arises out of a business relationship between Plaintiff JLM Formation, an American company, and Defendant Form+PAC, a Hong Kong company directed by Defendant Betty Chow. Plaintiff develops custom products for retailers. During the course of its business, Plaintiff has developed internal manuals, product designs and pricing information that it considers to be trade secrets. It contracted for Defendants' assistance with overseas portions of its business. The relationship soured when Defendants began bidding for work from the same retailers as Plaintiff.

Plaintiff initiated this action on May 5, 2004, alleging, *inter alia,* that Defendants misappropriated its internal manuals, product designs and pricing information in violation of the Uniform Trade Secret Act (UTSA), Cal. Civil Code §§ 3426, *et seq.* The same day it filed its complaint, JLM Formation also moved for a temporary restraining order (TRO). On June 10, 2004, this Court denied Plaintiff's motion for a TRO. Less than one month later, on July 1, 2004, Plaintiff filed a notice of voluntary dismissal without prejudice. Defendants filed this motion for attorneys' fees on July 15, 2004.

LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(2) and Civil Local Rule 54-5 provide that a motion for fees must be filed no later than fourteen days after entry of judgment. Because judgment has not entered in this case, Defendants' motion is timely.

California Civil Code § 3426.4 is the attorneys' fees provision of the UTSA. It provides, in relevant part, "If a claim of misappropriation is made in bad faith ... the court may award reasonable attorney's fees to the prevailing party." "Making" a trade secret claim in bad faith means bringing and maintaining that claim in bad faith. *VSL Corp. v. Gen. Techs., Inc.,* 46 U.S.P.Q.2d 1356, 1360 (N.D.Cal.1998). Thus, in evaluating whether bad faith exists, a court must examine actions taken by the plaintiff in both the commencement and the prosecution of a claim. *Stilwell Dev. ., Inc. v. Chen,* 11 U.S.P.Q.2d (BNA) 1328, 1330 (C.D.Cal.1989).

The UTSA does not define bad faith. As noted in *Gemini Aluminum Corp. v. California Custom Shapes, Inc.,* 95 Cal.App.4th 1249, 1261, 116 Cal.Rptr.2d 358 (2002), it is generally recognized that the purpose of the statute is to deter specious misappropriation actions. In order to be deterrable, a trade secret claim must involve conduct more culpable than negligence; it must be "at least reckless or grossly negligent, if not intentional and willful." *Stilwell,* 11 U.S.P.Q.2d at 1331.

***2** In awarding attorneys' fees under § 3426.4, courts require that a trade secret claim involve two elements: (1) objective speciousness; and (2) subjective misconduct.

Gemini, 95 Cal.App.4th at 1262, 116 Cal.Rptr.2d 358. An objectively specious claim is one that is completely unsupported by the evidence, Computer Econ., Inc. v. Gartner Group, Inc. 1999 WL 33178020, *6 (S.D.Cal.1999), or one that lacks proof as to one of its essential elements. Stilwell, 11 U.S.P.Q.2d at 1331. "Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." Computer Econ., 1999 WL at *6. A court may determine a plaintiff's subjective misconduct by examining evidence of the plaintiff's knowledge during certain points in the litigation and may also infer it from the speciousness of a plaintiff's trade secret claim. *Id.*

## DISCUSSION

### I. Bad Faith

The central question is whether Plaintiff's trade secret claim was made in bad faith within the meaning of § 3426.4. Before discussing the presence or absence of Plaintiff's bad faith, the Court begins by noting the short timeline of this case. Defendants fail to cite convincing authority that Plaintiff "maintained" or "prosecuted" its trade secret claim to any significant extent. The procedural posture of the cases upon which Defendants rely renders them inapposite to the instant case. In both *Gemini* and *Stilwell,* the plaintiffs presented evidence on their trade secret claims at trial. In *Gemini,* a jury rendered an advisory verdict that the plaintiff had pursued its trade secret misappropriation claims in bad faith. Gemini, 95 Cal.App.4th at 1255, 116 Cal.Rptr.2d 358. In *Stilwell,* the court granted the defendant's motion for a directed verdict on the plaintiff's trade secret claim. Stilwell, 11 U.S.P.Q.2d at 1329. In *Computer Econ.* and *VSL,* the parties conducted discovery and the plaintiffs' trade secret claims were rejected on summary judgment. Computer Econ., 1999 WL at *1; VSL, 46 U.S.P.Q.2d 1356, 1358.

By contrast, Plaintiff voluntarily dismissed its trade secret claim less than two months after it had initiated the case. Thus, Defendants' contention that Plaintiff "made" a trade secret claim within the definition of § 3264.4, is not strong.

The Court next examines whether Plaintiff's trade secret claim was objectively specious. The UTSA defines as a trade secret information that derives economic value from not being generally known to the public. The owner of a trade secret must make a reasonable effort to maintain its secrecy. Cal. Civ.Code § 3426.1(d). In order to establish misappropriation, Plaintiff would have had to show that Defendants disclosed or made use of one of its trade secrets without express or implied consent, and that Defendants: (1) used improper means to acquire knowledge of the trade secret; or (2) at the time of the disclosure or use, knew or had reason to know that its knowledge of the trade secret was (a) derived from or through a person who had utilized improper means to acquire it; (b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (c) derived from or through a person who owed a duty to the owner to maintain its secrecy or limit its use. *Id.* § 3426.1(b)(1).

***3** The question is whether there was a total failure of proof of one of these elements. As noted above, this is not a case like those upon which Defendants rely, in which there was a complete lack of evidence at trial or on summary judgment as to one or more essential elements of a trade secret claim. Although the Court has considered some evidence presented by the parties in denying the TRO, the Court has not made an evidentiary finding on the merits of Plaintiff's claim. Instead, the Court merely determined that Plaintiff had not proven a likelihood of success on the merits.

Even considering the limited amount of evidence before the Court in evaluating the motion for a TRO, Plaintiff has demonstrated that its trade secret claim was not objectively specious. Plaintiff offered some evidence that its internal manuals, product designs and pricing information were trade secrets, and were misappropriated by Defendants. Although the Court determined that Plaintiff had not demonstrated sufficient likelihood of success to warrant the exceptional remedy of a TRO, the Court did not determine that Plaintiff's claim was without merit.

Nor can it be said that Plaintiff engaged in subjective misconduct. The evidence before the Court in evaluating Plaintiff's motion for a TRO is insufficient to show that Plaintiff "knowingly and intentionally prosecuted a specious claim." Stilwell, 11 U.S.P.Q.2d at 1331. Under the facts before the Court on that motion, Plaintiff could have

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reasonably believed that Defendant misappropriated its trade secrets. This case is distinguishable from *Gemini,* where the plaintiff pursued its trade secret claim through trial, even though it knew it lacked proof that its alleged trade secret had economic value. *Gemini,* 95 Cal.App.4th at 1263, 116 Cal.Rptr.2d 358. This case is also unlike *VSL,* in which the plaintiff failed to conduct a reasonable investigation as to whether the information at issue qualified as a trade secret. *VSL,* 46 U.S.P.Q.2d at 1360.

In sum, Plaintiff did not make its trade secret claim in bad faith within the meaning of § 3426.4.

II. Prevailing Party

The parties disagree as to whether Defendants are the prevailing party in this action. However, because the Court has determined that Plaintiff did not bring its trade secret claim in bad faith, the Court need not reach the issue of whether Defendants are entitled to attorneys' fees as the prevailing party.

CONCLUSION

For the foregoing reasons, Defendants' motion for attorneys' fees is DENIED (Docket no. 25).

IT IS SO ORDERED.

2004 WL 1858132 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

. 4:04CV01774 (Docket) (May. 05, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.