**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Massachusetts.
PRINCESS HOUSE, INC.
v.
JEWELS BY PARK LANE, INC.
**Civ. A. No. 90-11983-Z.**

Aug. 18, 1994.

Gary R. Greenberg, Goldstein & Manello, Boston, MA, Charles A. Gilman, Linda Wintner, James Sandnes, Cahill, Gordon & Reindel, New York City, George W. Mykulak, Goldstein & Manello, Boston, MA, for plaintiff Princess House, Inc.

Timothy J. Dacey, III, Frances S. Cohen, Hill & Barlow, Boston, MA, Zachary R. Karol, Bingham, Dana & Gould, Boston, MA, Allen B. Grodsky, Edward A. Woods, Jon M. Leader, Browne & Woods, Beverly Hills, CA, Lisa I. Fair, Michael J. Rovell, Law Offices of Michael J. Rovell, Chicago, IL, for defendant Jewels by Park Lane, Inc.

*MEMORANDUM OF DECISION*

ZOBEL, District Judge.

*1 In 1986, the parties entered into a court-approved consent decree that regulated defendant's recruiting from plaintiff's sales force. Plaintiff complained in 1990 that defendant had violated the decree in several particulars. After trial, the Court found defendant in contempt of its 1986 decree and plaintiff entitled to damages as well as attorney's fees and costs expended in the enforcement action. Following a further hearing, plaintiff was awarded damages in the amount of $605,387.00. There remains pending plaintiff's application for attorney's fees and expenses in the total amount of $1,003,325.00. Defendant, of course, objects to the size of the request and suggests an award of no more than $200,000.00.

I start with some general observations.

1. The prosecution of this case was heavily staffed, with hearings typically attended by at least four lawyers, three from New York and one from Boston. Additional lawyers, law clerks and paralegals participated in research, drafting of the petition, motions, responses and discovery documents, reviewing and analyzing a variety of documents pertaining to the consent decree and the contempt, and preparing for trial.

2. In the Court's observation, trial counsel for defendant (not defendant's current counsel), engaged in deliberate obstructionist conduct that unquestionably added to plaintiff's costs. The affidavit of plaintiff's counsel substantiates this.

3. Although I find the request to be excessive, plaintiff's counsel exercised careful and reasonable billing judgment in its preparation.

4. With respect to work performed and costs incurred after June 30, 1991, plaintiff provides neither detail nor documentation. The total fee requested for this latter seven-month period appears to be $297,256.10 and the total disbursement, $45,485.43. Furthermore, the fees of one of the experts, Professor Robert Simon, in the amount of $55,400.00, remain wholly unexplained.

A court may assess attorney's fees as a sanction for the willful disobedience of a court order; I earlier determined that defendant's misconduct was willful. *See* *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991). The parties agree that a reasonableness standard governs the fee award in this case. One means of applying that standard to a fee request is to seek articulation of the detail underlying the request. Absent such detail, a court may deny an award. *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir.1984).

Plaintiff submitted two highly particularized affidavits with respect to the period from the beginning of the law suit through June 30, 1991. Cahill Gordon & Reindel ("Cahill Gordon") seeks $290,810.90 for this period, a reduction of approximately $109,000.00 from its actual time charges that eliminates time spent on a related case and accounts for the somewhat lower hourly rates customary in this forum as opposed to in New York. Goldstein & Manello, plaintiff's local counsel, claims its actual time charges of $60,668.00.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Even allowing for extra work occasioned by defense counsel's lack of cooperation, I find the amounts claimed excessive and shall reduce them by an additional ten percent, $29,081.09 and $6,066.80 respectively.

*2 Cahill Gordon's costs include $46,729.50 for word processing, $15,477.15 for Xeroxing, and $4,516.19 for "Outside Reproduction." I find these amounts to be excessive and deny any amount for word processing and allow only fifty percent of the inside and outside reproduction costs. The costs of Goldstein & Manello in the total amount of $5,093.67 are allowed in full. Plaintiff provides no detail for the time period subsequent to June 30, 1991. Because plaintiff has not particularized its claim of $292,150.20 for fees and $50,591.33 for costs incurred after that date, it cannot recover those amounts.

The expert witness fees need to be addressed separately. The court will assess expert witness fees under its inherent power only in cases of fraud or egregious abuse of the judicial process, as they customarily are governed by 28 U.S.C. § 1821(b) (1994). *Chambers v. NASCO, Inc.*, 501 U.S. at 45- 46; *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed.Cir.1994). Defendant's misconduct does not rise to the level of bad faith required by those cases. Any award for expert witness fees is thus limited to $40.00 per day for testifying in court. *See* 28 U.S.C. § 1821(b) (1994).

In summary, Cahill Gordon is awarded a fee of $261,729.81 plus costs of $41,258.73 plus $40.00 for the expert witness, for a total of $303,028.54. Goldstein & Manello is awarded a fee of $54,601.80 and costs of $5,093.67, a total of $59,695.47.

1994 WL 548054 (D.Mass.)

**Motions, Pleadings and Filings** (Back to top)

. 1:90CV11983 (Docket) (Aug. 15, 1990)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**

**Motions, Pleadings and Filings**

United States District Court, S.D. New York.
JACK FROST LABORATORIES, INC., Plaintiff,
v.
PHYSICIANS & NURSES MANUFACTURING CORPORATION, Defendant.
**No. 92 CIV. 9264 (MGC).**

April 10, 1996.

Jones & Askew Atlanta, Georgia by Stephen M. Schaetzel, Daniel J. Warren, Weiss, Dawid, Fross, Zelnick & Lehrman, P.C., New York City by Barbara A. Solomon, for Plaintiff.

Felfe & Lynch New York City by John E. Lynch, Alfred H. Hemingway, Jr., Andrew L. Tiajoloff, John A. Bauer, for Defendant.

*MEMORANDUM OPINION AND ORDER*

CEDARBAUM, District Judge.

*1 Jack Frost Laboratories, Inc. sued Physicians & Nurses Manufacturing Corporation ("P&N") for infringement of Jack Frost's patents for microwavable gel packs. From July 24, 1995 to July 27, 1995, pursuant to Fed. R. Civ. P. 42(b) and with the consent of the parties, a separate bench trial was held of P&N's affirmative defense that Jack Frost's patents are invalid on two grounds: (1) the invention covered by the patents was placed on sale more than one year prior to the date on which Jack Frost filed its initial patent application; and (2) Jack Frost made fraudulent representations to the Patent Office in its patent applications. In an opinion dated October 17, 1995, I concluded that Jack Frost's patents are invalid under 35 U.S.C. § 102(b) (1988) and are unenforceable as a result of Jack Frost's inequitable conduct.. *Jack Frost Labs., Inc. v. Physicians & Nurses Mfg. Corp.*, 901 F. Supp. 718, 728-29 (S.D.N.Y. 1995).

P&N has moved for an award of attorney fees, expert witness fees and prejudgment interest. In my opinion of October 17, 1995, I made detailed and extensive findings concerning the conduct of Jack Frost that bear on this motion. I refer to those findings and incorporate them into this opinion. For the reasons that follow, P&N's motion is granted in part and denied in part.

P&N also moved to set aside my prior judgment and to amend its answer to assert counterclaims under Section 43(a) of the Lanham Act and under New York common law. During oral argument, I denied that motion as untimely. (Tr. at 28- 29.)

*Discussion*

1. *Attorney Fees*

Attorney fees may be awarded to the prevailing party in a patent action pursuant to 35 U.S.C. § 285 (1988) when there is clear and convincing evidence that the case is "exceptional," and when an award of attorney fees to the prevailing party is warranted. *Interspiro USA, Inc. v. Figgie Int'l Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994). The purpose of 35 U.S.C. § 285 is to provide discretion to award attorney fees "where it would be grossly unjust that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear." *J.P. Stevens Co. v. Lex Tex, Inc.*, 822 F.2d 1047, 1052 (Fed. Cir. 1987). In cases where the alleged infringer prevails, "exceptional" cases normally involve fraud or inequitable conduct by the patentee in procuring the patent. *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050-51 (Fed. Cir. 1992) (citing *Standard Oil Co. v. American Cyanamid Co.* 774 F.2d 448, 455 (Fed. Cir. 1985)).

P&N proved by clear and convincing evidence that Jack Frost engaged in inequitable conduct during the prosecution of its patent application. 901 F. Supp. at 729. Jack Frost failed to disclose material information in its patent application. *Id.* at 728. Moreover, Mr. Francis' lack of candor in his trial testimony and his extraordinary willingness to contradict prior deposition testimony bolstered the conclusion that he intended to deceive the Patent Office when he applied for the patent. *Id.* at 729.

*2 Considering the conduct of Jack Frost as a whole, and on the basis of the specific findings in my prior opinion, I find that this is an "exceptional" case within the meaning of 35 U.S.C. § 285 and that an award of attorney fees incurred in the defense of this action is warranted. However, P&N may

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not recover attorney fees incurred in the prosecution of third-party claims against Pfizer, Inc., Clairol, Inc. and Prescribed Marketing, Ltd.

2. *Expert Witness Fees*

An award under 35 U.S.C. § 285 encompasses only attorney fees. Expert witness fees fall under 28 U.S.C. § 1920 (1988), subject to the limitations set forth in 28 U.S.C. § 1821(b) (1988 & Supp. 1993). *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377 (Fed. Cir. 1994). A district court has the inherent sanctioning power to award full expert witness fees if there has been a fraud or abuse of the judicial process. *Id.* at 378. Not every case that warrants attorney fees under 35 U.S.C. § 285 qualifies for sanctions under the court's inherent power. A party's conduct must be even more egregious to justify an award of full expert witness fees. *Id.*

Jack Frost's conduct in the prosecution of this action was not sufficiently egregious to meet the standard established in *Amsted.* Jack Frost did waive its right to a jury trial on P&N's affirmative defense, and thereby expedited the resolution of the case. P&N's motion for an award of full expert witness fees pursuant to my inherent sanctioning power is denied.

3. *Prejudgment Interest*

A district court has the inherent equitable power, in cases of "bad faith or other exceptional circumstances" to award prejudgment interest on an award made pursuant to 35 U.S.C. § 285. *Mathis v. Spears*, 857 F.2d 749, 761 (Fed. Cir. 1988). For the reasons discussed in the section on expert witness fees, P&N's motion for prejudgment interest is denied.

*Conclusion*

For the foregoing reasons, P&N's motion for attorney fees is granted. P&N's motion for full expert witness fees is denied, although it may recover witness fees taxable pursuant to 28 U.S.C. §§ 1821 & 1920. P&N's motion for prejudgment interest is denied. P&N is directed to document its attorney fees in accordance with this opinion within fifteen days. Jack Frost may file any objections within fifteen days thereafter.

SO ORDERED.

1996 WL 167720 (S.D.N.Y.), 39 U.S.P.Q.2d 1607

**Motions, Pleadings and Filings (Back to top)**

. 1:92CV09264 (Docket) (Dec. 23, 1992)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.
Tanya SCHEIDECKER, Plaintiff,
v.
ARVIG ENTERPRISES, INC., Royale Comtronics, Inc., Royale Comtronics Sales & Service, Inc., and Nancy Ettish, Defendants.
Susan Von RUDEN, Plaintiff,
v.
ARVIG ENTERPRISES, INC., East Otter Tail Telephone Company, Nancy Ettish, and Catherine Ekern, Defendants.
**No. CIV.99-1259ADM/RLE.**

July 31, 2001.

Stephen W. Cooper, Esq., and Stacey R. Everson, Esq., The Cooper Law Firm, Minneapolis, Minnesota, and Brent Walz, Kennedy & Nervig, Wadena, Minnesota, on behalf of the Plaintiff.

Mary E. Stumo, Esq., David Goldstein, Esq., and Angela M. Crandall, Esq., Faegre & Benson, Minneapolis, Minnesota, on behalf of the Defendants.

MEMORANDUM OPINION AND ORDER

MONTGOMERY, District J.

I. INTRODUCTION

***1** This matter is before the undersigned United States District Judge pursuant to Plaintiff Tanya Scheidecker's ("Scheidecker") Petition for Attorneys' Fees and Costs [Doc. No. 132] and Susan Von Ruden's ("Von Ruden") Petition for Attorneys' Fees and Costs [Doc. No. 108]. Arvig Enterprises, Inc., et al., ("Defendants") oppose Scheidecker's and Von Ruden's Petitions, arguing that the amounts requested by Plaintiffs' attorney are not reasonable under the circumstances. For the reasons discussed below, the Petitions are granted in part.

II. BACKGROUND [FN1]

FN1. For a detailed discussion of the background of this case and the relationship between the named Defendants, see *Scheidecker v. Arvig Enters.*, 122 F.Supp.2d 1031 (D.Minn.2000).

In May of 1998, Royale Comtronics Sales & Service, Inc., terminated Scheidecker's employment. Subsequently, she brought this suit, alleging, *inter alia,* [FN2] pregnancy discrimination. On December 29, 2000, Scheidecker accepted Defendants' Offer of Judgment in the amount of $30,000, plus reasonable attorneys' fees and costs. Von Ruden began this action after Arvig Enterprises, Inc., terminated her employment in the summer of 1998, alleging, *inter alia,* [FN3] pregnancy discrimination. On April 5, 2001, Von Ruden and Defendants executed a Confidential Settlement Agreement [Doc. No. 116]. The settlement includes an agreement by Defendants to pay reasonable attorneys' fees and costs. In both cases, the parties reserved the issue of attorneys' fees and costs to be decided by the Court.

FN2. Summary judgment was granted, dismissing Scheidecker's other claims. *See* Scheidecker, 122 F.Supp.2d at 1045-46.

FN3. Summary judgment was granted, dismissing Von Ruden's other claims. *See Scheidecker,* 122 F.Supp.2d 1045.

III. DISCUSSION

Generally, absent a statute mandating otherwise, each party to a lawsuit is responsible for their own attorneys' fees and costs. In a Title VII case, reasonable attorneys' fees may be awarded to the prevailing party. *See* 42 U.S.C. §§ 2000e-5(k); *Parton v. GTE North, Inc.*, 971 F.2d 150, 155 (8th Cir.1992). The amount of a reasonable attorneys' fee must be determined on the facts of each case. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The district court has wide discretion in determining the amount of the attorneys' fees award. *See id.* at 437; *see, e.g., Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1084-85 (8th Cir.2000); *Rural Water Sys. # 1 v.* City of Sioux Center, 202 F.3d 1035, 1039 (8th Cir.2000); *Keslar v. Bartu*, 201 F.3d 1016, 1017 (8th Cir.2000); *Delph v. Dr. Pepper Bottling Co.*, 130 F.3d 349, 358 (8th Cir.1997); *Rogers v. Kelly*, 866 F.2d 997, 1001 (8th Cir.1989). The Eighth Circuit has stated that it gives "great deference to the district courts on fee matters having to do with services performed before them [because those

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

courts] are necessarily more familiar than we are with the members of their own bar and with the course of litigation before them, including what lawyers may have done that was unnecessary and what may have taken up more time than it needed to." *Griffin v. Jim Jamison, Inc.,* 188 F.3d 996, 997 (8th Cir.1999). The Supreme Court has cautioned that "[a] request for attorney's fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437.

The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley,* 461 U.S. at 433. "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* The number of hours and rates submitted by Plaintiffs' counsel [FN4] is a departure point for the analysis of the present attorneys' fees request.

> FN4. Although Stephen Cooper of The Cooper Law Firm provided most of the legal services to both Plaintiffs, Stacey Everson and Eric Bull of The Cooper Law Firm, and Brent Walz of Kennedy & Nervig, LLP, also provided legal services.

*2 Scheidecker's counsel requests $130,019.10 in attorneys' fees and $13,280.87 in costs. The Cooper Law Firm billed 445.37 hours for a total of $106,048.10, resulting in an average hourly rate of $238.11. Kennedy & Nervig, LLP, billed 229.55 hours for a total of $23,971.00, indicating an average hourly rate of $104.43.

Von Ruden's counsel requests $125,474.50 in attorneys' fees and $16,397.78 in costs. The Cooper Law Firm billed 417.01 hours for a total of $96,413.00, registering an average hourly rate of $231.20. Kennedy & Nervig, LLP, billed 286.90 hours for a total of $29,061.50, making the average hourly rate $101.29.

The grand total of attorneys' fees and costs requested by Plaintiffs' counsel is $255,173.25. There are factors that may weigh in favor of adjusting this attorneys' fees request downward. The factors that may be evaluated are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley,* 461 U.S. at 430 n. 3. (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974); ABA Code of Professional Responsibility, Disciplinary Rule 2-106); *accord Tusa v. Omaha Auto. Auction Inc.,* 712 F.2d 1248, 1256 (8th Cir.1983). It is unnecessary for the Court to examine exhaustively and explicitly all factors relevant to the amount of a fee award in every case. *Griffin,* 188 F.3d at 997 (citing *Johnson,* 488 F.2d 714, and *Lawrence v. Westerhaus,* 749 F.2d 494 (8th Cir.1984)). Some specifics of the request in this case merit discussion.

The Cooper Law Firm's billing documentation reveals entries that are either clerical errors or excessive billing practices. *See* Stumo Aff. Ex. C. For example, a lawyer at The Cooper Law Firm billed more than 15 hours in a single day on seven different occassions. Furthermore, on April 19, 2000, Stephen Cooper billed 25 .82 hours between the two cases for "Deposition of Ettish and preparation." *Id.* During the following two days, he billed 24.57 hours for "Deposition of Ekern," and 21.91 hours for "Deposition of Donald Swenson and Preparation." *Id.* Plaintiffs' counsel has conceded that the April 19-21 entries were due to clerical mistakes. Nevertheless, these examples cast doubt on the accuracy and veracity of the billing records.

Fees will not be awarded for unnecessary and excessive hours billed by Plaintiffs' counsel. Defendants illustrate numerous examples of litigation conduct by Plaintiffs' counsel that resulted in the expenditure of unreasonable hours. *See* Def. Mem. in Opp., at § I(B)-(F). For example, the hours spent opposing Defendants' Motion to Dismiss were unreasonable because the claims at issue were largely devoid of merit. Plaintiffs' counsel will not be compensated for pursuing, and only abandoning at the eleventh hour, claims that a reasonable inquiry would have shown early on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

would not survive analysis. *See* Dalal v. Alliant Techs., Inc., 927 F.Supp 1374, 1381 (D.Colo.1996); *see, e.g.,* Warner v. Jordan, 1998 WL 713473 (Minn.Ct.App.1998). Moreover, Plaintiffs are not entitled to attorneys' fees for time spent requesting extensions or continuances due to their own lack of diligence. Steele v. Van Buren Pub. School Dist., 845 F.2d 1492, 1496 (8th Cir.1988). Plaintiffs' counsel cannot recover fees for hours spent drafting discovery requests in violation of the scheduling order, *see* Def. Mem. in Opp., at § I(D), and drafting the poor-quality Motion to Compel. *See id.* at § I(E); Motion to Compel Transcript at 85, 89; Order on Motion to Compel dated Nov. 17, 2000. The foregoing examples of unreasonable hours expended during this litigation by Plaintiffs' counsel justify a reduction in the reasonable attorneys' fees award. Gumbhir v. Curators of Univ. of Missouri, 157 F.3d 1141, 1146 (8th Cir.1998) ("attorneys should not be permitted to run up bills that are greatly disproportionate to the ultimate benefits that may be reasonably attainable").

***3** In evaluating the reasonableness of the attorneys' fees, the most important factor is the magnitude of Plaintiffs' success in the case as a whole. Hensley, 461 U.S. at 436 ("the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained"); Jenkins v. State of Mo., 127 F.3d 709, 716 (8th Cir.1997). Results matter. Thus, where a "plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Hensley, 461 U.S. at 433. Here, Plaintiffs settled on sums significantly less than what they initially sought.

In her Statement of the Case dated October 14, 1999, Scheidecker sought $667,680 in lost wages and over $100,000 in emotional distress damages. Scheidecker failed to prevail on all but one of the claims brought in her Complaint. *See* Scheidecker, 122 F.Supp .2d at 1035 n. 2, 1045-46. Scheidecker accepted the Offer of Judgment for $30,000. This sum is approximately four percent of the amount she initially sought. The results obtained for Scheidecker reflect that when the allegations' hyperbole of a conflagration of discrimination cleared and the smoke dispersed, what remained was a small flame. Consistent with all the foregoing considerations, a reasonable attorneys' fee for the work in Scheidecker's case is $43,350, with The Cooper Law Firm receiving $35,350 and Kennedy & Nervig $8,000. [FN5]

> FN5. Scheidecker's request is timely in light of the settlement agreements and the interrelatedness of these two cases, regardless of her failure to comply with Local Rule 54.3(b).

Von Ruden's Statement of the Case dated October 14, 1999, sought $689,910 in lost wages and over $100,000 in emotional distress damages. All but two of Von Ruden's claims were dismissed before settlement. *See* Scheidecker, 122 F.Supp.2d at 1035 n. 1, 1045. Although Von Ruden's settlement award is confidential, suffice it to say it is substantially less than the amount initially sought. Accordingly, a reasonable attorneys' fee for the work in Von Ruden's case is $62,500, with The Cooper Law Firm receiving $48,000 and Kennedy & Nervig $14,500.

Costs are awarded in the amount of $12,630. The Cooper Law Firm should receive $8,220. Kennedy & Nervig should receive $4,410.

The foregoing awards take into consideration both the sanction and the expert witness fiasco. Plaintiffs are not entitled to charge as a cost the sanction Magistrate Judge Erickson imposed on Plaintiffs' counsel during the course of this litigation. During the litigation, disputes arose over Plaintiffs' expert, K. David Hirshey. This expert purported to render opinions regarding Plaintiffs' disparate impact claims, which were dismissed. *See* Scheidecker, 122 F.Supp.2d at 1043-44. Because a reasonable inquiry would have revealed that these claims lacked merit, the additional time required to depose the expert, for which Plaintiffs' counsel is responsible, was unreasonably expended. *See* Def. Mem. in Opp., at 14-16, 29-30.

## IV. CONCLUSION

Based upon all of the files, records & proceedings herein, and for the foregoing reasons, IT IS HEREBY ORDERED that:

***4** (1) Scheidecker's Petition for Attorneys' Fees and Costs [Doc. No. 132] is GRANTED IN PART, attorneys' fees are awarded in the amount of $43,350, The Cooper

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Law Firm receiving $35,350 and Kennedy & Nervig $8,000.

(2) Von Ruden's Petition for Attorneys' Fees and Costs [Doc. No. 108] is GRANTED IN PART, attorneys' fees are awarded in the amount of $62,500, The Cooper Law Firm receiving $48,000 and Kennedy & Nervig $14,500.

(3) Costs are awarded in the amount of $12,630, The Cooper Law Firm receiving $8,220 and Kennedy & Nervig receiving $4,410.

2001 WL 1631319 (D.Minn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**C**
Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.
DELUXE CORPORATION, and Deluxe Financial Services, Inc., Plaintiffs,
v.
MIPS DATALINE AMERICA, INC., Defendant.
**No. Civ. 99-1975 ADM/SRN.**

May 4, 2001.

Daniel W. McDonald, and Jeffrey C. Brown, Merchant & Gould, P.C., Minneapolis, Minnesota, on behalf of the Plaintiffs.

AMENDED JUDGMENT AND ORDER

MONTGOMERY, J.

***1** On March 28, 2001, this Court issued an Order granting default judgment in favor of Plaintiffs Deluxe Corporation and Deluxe Financial Services, Inc. ("Deluxe") and against Defendant MIPS Dataline America, Inc. ("Defendant") [Doc. No. 25]. This matter is before the undersigned United States District Judge pursuant to Deluxe's Petition for Attorneys' Fees [Doc. No. 27]. After a review of all the files, records, pleadings and proceedings herein, Deluxe's Petition for Attorneys' Fees is granted.

As a general rule, each party to a lawsuit is responsible for their own attorneys' fees, absent a statute mandating otherwise. Two statutes operate here. The Lanham Act allows the prevailing party to recover reasonable attorneys' fees in circumstances where the other party's conduct is "exceptional." *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). An exceptional case is one in which "one party's behavior went beyond the pale of acceptable conduct." *Aromatique, Inc. v. Gold Seal, Inc.,* 28 F.3d 863, 877 (8th Cir.1994). Such exceptional behavior involves action that is "groundless, unreasonable, vexatious, or pursued in bad faith." *Scott Fetzer Co. v. Williamson,* 101 F.3d 549, 555 (8th Cir.1996); *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 123 (8th Cir.1987). The Minnesota Deceptive Trade Practices Act ("MDTPA") permits the court to award attorneys' fees to the prevailing party if "the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Minn.Stat. § 325D.45, subd. 2; *see Porous Media Corp. v. Pall Corp.,* 173 F.3d 1109, 1118 (8th Cir.1999) (stating that the MDTPA permits, but does not require, an award of attorneys' fees and affirming a denial of such). The MDTPA attorneys' fees provision is not preempted by the Lanham Act. *See Tonka Corp. v. Tonk-A- Phone, Inc.,* 805 F.2d 793, 795 (8th Cir.1986).

The petition for an award of attorneys' fees in this case blurs the distinction between "exceptional" cases under the Lanham Act and "willful & knowing" conduct under the MDTPA. *See Minnesota Pet-Breeders, Inc. v. Schell & Kampeter, Inc.,* 843 F.Supp. 506, 519-20 (D.Minn.1993) (finding that the Lanham Act provision allowing award of attorneys' fees only in exceptional cases is a "stricter standard" than the willful standard applied in the MDTPA). Because there are no facts or circumstances making this an *exceptional* case as defined by the case law, an award of attorneys' fees pursuant to the Lanham Act is not appropriate. The MDTPA, however, allows an award of attorneys' fees in this case.

Deluxe received a default judgment in its favor after alleging in its Complaint that Defendant willfully & knowingly misappropriated and diluted the "Deluxe" mark. A party's default is deemed to constitute a concession of all well pleaded allegations of liability. *See McMillian/McMillian, Inc. v. Monticello Ins. Co.,* 116 F.3d 319, 321 (8th Cir.1997) (holding that when a default judgment has been entered, facts alleged in the complaint may not be contested by the defaulted party); *Greyhound Exhibitgroup, Inc. v. ELUL Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992); Fed.R.Civ.P. 8(d). Because Defendant is deemed to have conceded that it willfully engaged in a trade practice knowing it to be deceptive, pursuant to the MDTPA reasonable attorneys' fees may be awarded to Deluxe. *See* Minn.Stat. § 325D.45, subd. 2. The more difficult question becomes: what fee is reasonable?

***2** The amount of a reasonable attorneys' fee must be determined on the facts of each case. *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983). The district court has wide discretion in determining the amount of the attorneys' fee

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

award. *See* id., at 437; *see, e.g., Jarrett v. ERC Properties, Inc.,* 211 F.3d 1078, 1084-85 (8th Cir.2000) (concluding that granting an attorneys' fees award of $21,816, while rejecting a claim for $36,360, was not an abuse of the district court's "substantial discretion"); *Rural Water Sys. # 1 v. City of Sioux Center,* 202 F.3d 1035, 1039 (8th Cir.2000) (affirming a forty-four percent reduction of the attorneys' fees requested); *Rogers v. Kelly,* 866 F.2d 997, 1001 (8th Cir.1989) (concluding that the district court did not abuse its discretion in making fee awards of $3,375 to one attorney and $1,875 to another, denying their requests of $14,053.50 and $9,227.50, respectively). The Eighth Circuit stated that it gives "great deference to the district courts on fee matters having to do with services performed before them [because those courts] are necessarily more familiar than we are with the members of their own bar and with the course of litigation before them, including what lawyers may have done that was unnecessary and what may have taken up more time than it needed to." *Griffin v. Jim Jamison, Inc.,* 188 F.3d 996, 997 (8th Cir.1999). The Supreme Court warned that "[a] request for attorney's fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* Deluxe's counsel requests $55,200.50 in attorneys' fees, an amount reached by multiplying 208.95 hours by an average billing rate of approximately $264.18 per hour. This lodestar amount is not the end of the inquiry. There are factors that may weigh in favor of adjusting the fee upward or downward. The factors to be evaluated are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley,* 461 U.S. at 430 n. 3. (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974); ABA Code of Professional Responsibility, Disciplinary Rule 2-106); *accord Tusa v. Omaha Auto. Auction Inc.,* 712 F.2d 1248, 1256 (8th Cir.1983) ("the district court should have used the rate it considered reasonable to reach the lodestar amount and then used the *Johnson* factors to adjust the lodestar amount").

***3** It is unnecessary for the Court to examine exhaustively and explicitly all of the factors that are relevant to the amount of a fee award in every case. *Griffin,* 188 F.3d at 997 (citing *Johnson,* 488 F.2d 714, and *Lawrence v. Westerhaus,* 749 F.2d 494 (8th Cir.1984)). In this case, three factors are relevant.

The first factor to examine is the time and labor this case required of Deluxe's counsel. A review of the timekeeping report indicates that Deluxe's counsel diligently recorded their hours and described the corresponding tasks. *See* Brown Aff., Ex. D. Deluxe's counsel billed a total of 208.95 hours. *Id.* This amount of time appears reasonable under the circumstances.

The experience, reputation, and ability of the attorneys is another consideration in determining a reasonable fee. There is little doubt that Deluxe's attorneys possess a high level of skill and competence in intellectual property litigation. *See, e.g.,* Mem. in Supp., at 8-9. Analyzing the legal complexity factor, however, reveals that the legal questions presented in pursuing this default judgment were not particularly novel or difficult. Deluxe's counsel have filed a Complaint [Doc. No. 1], a Rule 26(f) Report [Doc. No. 20], and a Motion for & Memorandum in Support of Default Judgment [Doc. Nos. 21-22]. While the practical inconveniences and ethical considerations involved in dealing with the withdrawal of Defendant's counsel and the attempts by Mr. Thomas Villwock [FN1] to appear *pro se* on behalf of Defendant may have been frustrating to Deluxe's attorneys, such circumstances do not rise to the level of difficult or novel legal issues. This case simply did not require the full range of intellectual property litigation expertise possessed by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Deluxe's counsel. A lower hourly billable rate than requested is reasonable.

FN1. Mr. Villwock is President of Defendant MIPS Dataline America, Inc..

Consistent with the foregoing considerations, a reasonable hourly rate of $200 will be multiplied by the 208.95 hours billed in this case, resulting in an attorneys' fees award of $41,790. Pursuant to the MDTPA, and as requested, Deluxe also is awarded $3,529.50 in costs. *See* Minn.Stat. § 325D.45, subd. 2. ("Costs shall be allowed to the prevailing party unless the court otherwise directs."). The total attorneys' fees and costs awarded to Deluxe are $45,319.50.

Based upon all of the files, records and proceedings herein, and for the foregoing reasons, IT IS HEREBY ORDERED that:

Deluxe's Petition for Attorneys' Fees [Doc. No. 27] is GRANTED.

Attorneys' fees and costs are awarded to Deluxe in the amount of $45,319.50. LET JUDGMENT BE ENTERED ACCORDINGLY.

2001 WL 476584 (D.Minn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.