Westlaw.



**H**
Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.
Aimee L. STORLIE, Plaintiff,
v.
RAINBOW FOODS GROUP, INC, a Nevada corporation, d/b/a Rainbow Foods, and John Albert Martinson, Defendants.
**No. CIV. 00-1817DDAFLN.**

Jan. 9, 2002.

Nichols, Kaster & Anderson by Donald H. Nichols and Paul J. Lukas, Minneapolis, for Plaintiff.

Rider, Bennett, Egan & Arundel, LLP, by John D. Thompson and Piper L. Kenney, Minneapolis, for Defendant Rainbow Foods Group, Inc.

ORDER ON PLAINTIFF'S MOTION FOR FEES AND COSTS

ALSOP, Senior J.

***1** This case presents a textbook example of the gross distortion fee shifting statutes have wrought upon the objective evaluation of claims for purposes of settlement, all to the detriment of an orderly judicial process. Plaintiffs Catherine M. Pierce (Pierce) and Aimee L. Storlie (Storlie) were former employees of Rainbow Foods Group, Inc. (Rainbow). They commenced this action against Rainbow under Title VII, 42 U.S.C. § 2000e and the Minnesota Human Rights Act, Minn.Stat. § 363, alleging sexual harassment in the workplace. Also named as a defendant was John Albert Martinson (Martinson), a fellow employee and the alleged harasser.

At the final settlement conference conducted by the Chief Magistrate Judge just prior to trial, the claim of the Plaintiff Pierce was settled for the sum of $50,000.00. The settlement proceeds were divided $26,000.00 to Pierce and $24,000.00 to her attorneys, Nichols, Kaster and Anderson, as and for attorney's fees. As between the two Plaintiffs, Pierce clearly was more frequently and inappropriately touched and harassed by Martinson than was Storlie. Although the liability aspect of their claims was essentially identical, the Pierce claim had the greater potential for the recovery of damages. During the final settlement conference, an impasse between the Plaintiff Storlie and Rainbow was reached when Storlie chose not to accept a Rainbow offer of settlement of $87,000.00. While it is not this Court's role to second guess trial counsel, at the time the Court expressed the opinion that the Rainbow offer represented a fair and objective evaluation of the potential jury outcome of the Storlie claim. The Court is satisfied that were it not for the accumulation of attorney's fees totaling approximately $66,000.00 at the time of the settlement conference, the Storlie claim would have been settled on the basis of the Rainbow offer. The issue of attorney's fees was a major and, in the Court's opinion, fatal obstacle to resolving by settlement a case which should have been settled.

At trial, the claim for punitive damages was bifurcated from the compensatory damage phase of the case. The jury found for the Plaintiff Storlie and awarded her $12,000.00 against the Defendant Rainbow and $3,000.00 against the Defendant Martinson as compensatory damages. The trial of the punitive damage phase against Rainbow resulted in a verdict of $60,000.00. Now before the Court is the motion of Plaintiff's counsel for an award of interim attorney's fees in the amount of $110,168.00 and interim costs in the amount of $5,493.70.

Both Title VII and the Minnesota Human Rights Act provide for an award of reasonable attorney's fees to the prevailing party. 42 U.S.C. § 2000e-5(k); Minn.Stat. § 363.14, subd. 3. The standard and criteria to be applied in judging a fee petition under these statutes are familiar to the Court and to counsel but are easier in their recitation than in their application. The Court must start by arriving at the familiar "lodestar" by evaluating the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The process of arriving at reasonableness includes "the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity." *Jenkins by Jenkins v. Missouri,* 127 F.3d 709, 718 (8th Cir.1997). In assessing reasonableness, a district judge is instructed to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435.

***2** The Court has carefully reviewed in detail the submission of Plaintiff's counsel, including the daily entries of time and type of service rendered. The Court has separated those services by category and charges as demonstrated in the attached schedules. Based upon that review, its extended knowledge of the case, and having presided over the trial of the action, the Court makes the following findings and conclusions:

A. *Hourly Rates*

Plaintiff's counsel seek an hourly rate of $350.00 per hour for attorney Nichols and $225.00 per hour for attorney Lukas. Counsel for Rainbow does not challenge either as being excessive and has made no showing in opposition to these rates. The Court is familiar with the abilities of both of Plaintiff's attorneys and considers them to be able, experienced, and talented trial lawyers. Although the Court considers the hourly rates claimed to be generous, it does not find them unreasonable and they will be accepted for purposes of arriving at the "lodestar." It is worth noting, however, that the majority, if not all claims of the type here involved, are engaged by lawyers on a contingent fee basis. One wonders if the hourly fees asserted to be "customary and standard" in fee shifting cases are ever otherwise charged and paid by fee paying clients.

B. *Hours Reasonably Expended*

The first and most obvious inquiry into the reasonableness of counsel's claim is the necessity of engaging the services of two senior attorneys in the handling of the case. The decision to do so resulted in charges for "conferences" in the amount of $2,666.00; "trial preparation" of $23,842.00; and "trial" of $26,000.00. The Court is not unmindful that Rainbow also utilized two trial counsel. Nonetheless, in the Court's opinion, the case was one that did not require the services of two senior counsel experienced in employment discrimination law during every phase of its preparation and trial. As a result, the requested fee must be significantly reduced.

The petition includes a charge of $10,345.00 for preparation of papers opposing the Defendants' motions for summary judgment and $3,037.00 for preparation for and attendance at the hearing on the motions. This results in part because of the services of two counsel in the effort. Even apart from that factor, the Court considers the time that these charges represent far in excess of what would be reasonable and necessary for these tasks by counsel experienced in the field.

Fees for "trial preparation" of $23,842.00 and "trial" of $26,750.00 are claimed in the petition. These totals are again in part the result of duplication of effort by utilizing two attorneys. The Court is not unfamiliar with the energy required to participate in a highly contested trial, but does find the inclusion of 14 chargeable hours for one lawyer for a single day on four separate occasions to exceed the outside limit of "reasonableness."

The fee petition recites that all fees attributable to Pierce have been excluded except for time spent in responding to Rainbow's motion for summary judgment. An adjustment for fees for this service has been made by reducing the request in an amount equal to one-half of the fees attributable to these services. However, the fee petition makes no showing of the total actual time apportioned to Pierce's case. The Court is left to its own devices to make a reduction based upon counsel's representation of both Plaintiffs. The Court also notes that Plaintiff's counsel have already recovered fees in the combined cases of $24,000.00 in settlement of the Pierce claim.

***3** The case was tried as against both Defendants Rainbow and Martinson. The fee petition and its attachments makes no mention of services rendered on behalf of Storlie in her claim against the Defendant Martinson. Instead, all services have been attributed to the claim against the Defendant Rainbow. In these circumstances, any award must recognize a reduction based upon the services rendered in asserting the claim against another party to the case.

The Supreme Court in *Hensley* sets forth the appropriate standard as follows:

> Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> excessive, redundant, or otherwise unnecessary, just as a lawyer in practice ethically is obligated to exclude such hours from his fee submission. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.
> 461 U.S. at 434.

It is the Court's view, in light of this standard, that a reduction in the fees sought is necessary and appropriate.

C. *Prevailing Party and Overall Success*

It is undisputed that Storlie was a "prevailing party" and as such entitled to a fee award. However, the inquiry does not end there. Where a plaintiff achieves only limited or partial success, the Court may consider "whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Wal-Mart Store, Inc. v. Barton,* 223 F.3d 770, 772 (8th Cir.2000). The Court must also determine if there were claims upon which the plaintiff was unsuccessful.

The amended complaint included counts alleging Negligent Retention and Negligent Supervision on the part of Rainbow. These counts were dismissed on Rainbow's motion for summary judgment. They were not based on the exact same facts as the sexual harassment claim. Storlie did not prevail on these claims.

The jury awarded Storlie $12,000.00 as compensatory damages. At the conclusion of that stage of the trial, even Plaintiff's counsel would have agreed that their "success" on the Storlie claim was limited. The award of $60,000.00 in punitive damages against Rainbow quite obviously changed the analysis. Even the combined award, however, if compared to the Rainbow settlement offer made at the final settlement conference, does not result in describing the Plaintiff as being totally successful. The application for fees does not properly and accurately reflect "the relationship between the amount of the fee [requested] and the results obtained." *Hensley,* 461 U.S. at 437.

CONCLUSION

The Court recognizes that there is no precise rule or formula for making fee determinations. They are made in accordance with oft repeated standards, but in the final analysis must depend upon the decision-makers knowledge of the case, appreciation of its complexity, need for the services sought, observance and knowledge of the abilities of trial counsel, and personal background and experience. For the reasons set forth above, the Court is satisfied that a substantial reduction in the fee petition as presented is required in this instance and such a reduction will be made. In doing so, the Court in no way intends its decision to be considered a reflection upon the competence or integrity of Plaintiff's counsel, both of whom the Court did, and continues to, hold in high regard.

***4** In the Court's opinion, taking into account the experience and abilities of trial counsel, the nature of the case, the proposed hourly rate, and time and effort reasonably necessary to pursue the claim, the results obtained, the purpose underlying the award of attorney's fees, and for the reasons set forth above, the Court finds a reasonable fee for counsel in this case is in the amount of $64,550.00 and the costs reasonably and properly incurred in the amount of $5,493.70 or a total of $70,043.70.

Accordingly,

IT IS ORDERED that Plaintiff Storlie's Petition for Attorney's Fees and Costs is GRANTED in part. Plaintiff Storlie shall have and recover of Defendant Rainbow the amount of Seventy Thousand Forty-Three and 70/100 Dollars ($70,043.70) as and for attorney's fees and costs.

PARTIAL SUMMARY
PLAINTIFF COUNSEL'S TIME RECORDS

```
FEES
-----------------------------------------------
L Comp--Drafting Complaint by Lukas
$ 1,800.00
AC--Attorney Conference or Staff
Conference                    2,666.00
SJPP--Summary Judgment Papers
Preparation                     10,345.00
SJHP--Summary Judgment Hearing
Preparation & Hearing           3,037.50
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

DPP--Draft Pretrial Papers
6,615.00
TP--Trial Preparation
23,842.00
T--Trial
26,750.00
DPTM--Draft Post-Trial Memo
2,475.00
DFP--Draft Fee Petition
3,712.50

2002 WL 47000 (D.Minn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# PARTIAL TRANSCRIPTION OF EIGHTH CIRCUIT COURT OF APPEALS ORAL ARGUMENT HELD JUNE 16, 2004, IN STORAGE TECHNOLOGY CORPORATION V. CISCO SYSTEMS, INC. APPELLATE CASE NO. 03-3673

COURT: And how does making Cisco pay twice to acquire the NuSpeed enterprise remedy unjust enrichment?

BROOKS: The, the defendant originally was NuSpeed and Cisco took over NuSpeed by contract and took over all liabilities and responsibilities.

COURT: Well, what case says that, that it, it's as simple as that in an unjust enrichment equitable relief. Well, in other words you could have sued the pockets into which the purchase price went, if you wanted to recover the purchase price. How, how, how are we disgorging unjust enrichment by making a buyer, good faith buyer pay twice?

BROOKS: The primary beneficiary was NuSpeed of the wrongful conduct in employees ...

COURT: No, the $450 million which is the only damage claim pursued went somewhere – human beings got $450 million dollars – they are not the defendants.

BROOKS: That's true.

COURT: What, what case, from any jurisdiction in the United States, says that's an appropriate way to remedy unjust enrichment? Make the buyer pay twice and, and let the wrongdoer keep the spoils.

BROOKS: In this situation Cisco was advised of the claim by StorageTek before it entered into the transaction . . .

COURT: That wasn't my question, my question was what case from any jurisdiction in the United States supports that use, that employment of the unjust enrichment remedy?

BROOKS: We've cited it.

COURT: And, and it is?

BROOKS: We cited none I said.

COURT: Oh, o.k., and you know of none.

BROOKS: I know of none.

COURT: I knew you cited none. I wouldn't have asked the question if you'd cited one.

BROOKS: If we knew of one we would have cited it.