# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

**STORAGE TECHNOLOGY CORPORATION,**

*Plaintiff,*

-vs-

**CISCO SYSTEMS, INC.,**

*Defendant.*

______________________________/

Civil File No. 00-2253 (MJD/JGL)
Magistrate Judge Jonathan G. Lebedoff
Honorable Joan Ericksen Lancaster

## STORAGETEK'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND EXPERT WITNESS FEES

## I. INTRODUCTION

Cisco seeks half of $2,679,652.78 it says it incurred in attorney fees plus $688,975.16 in expert fees. To win this award, Cisco applies the "subjective misconduct and objective speciousness" standard. (Cisco Br., p. 18.) StorageTek's case failed because its damages analysis was rejected. Failed damages does not equate to objective speciousness. That Cisco required 12,570 attorney hours (Cisco Br., p. 27) plus $688,975 in expert fees to prevail is testimony to the merit of StorageTek's underlying claim. As a matter of common sense, surely an objectively specious claim can be unmasked in far less attorney time, with minimal expert input if any.

On appeal, Cisco argued, as it had successfully argued in this Court, that StorageTek failed to substantiate damages for any claim. This damages-proof failure was the sole ground of affirmance:

> Storage Technology's failure to produce evidence substantiating any amount of damages or restitution is fatal to its claim for tortious interference with contractual relations, as well as to each of its other claims.
>
> *Storage Technology Corp. v. Cisco Systems, Inc.*, 395 F.3d 921, 929 (8th Cir. 2005).

Cisco, not satisfied by avoiding liability because StorageTek failed to provide an acceptable damages theory, should not be further rewarded in this case with fees. StorageTek's failed damages methodology does not satisfy the "subjective misconduct and objective speciousness" standard. The Eighth Circuit's acknowledgment of the substantive

merit of the contract interference and breach of fiduciary duty counts forecloses the conclusion that StorageTek's actions in bringing and maintaining this suit were "subjective misconduct."

As evidence of the reason for StorageTek's alleged "subjective misconduct," Cisco accuses that this suit was nothing more than a tactic to stem the exodus of StorageTek employees "and (b) an attempt to extort a settlement." (Cisco Br., p. 1.) Settlement was discussed. Indeed, the parties retained Joseph Colaianni, a practicing intellectual property lawyer and former Claims Court trial judge, to serve as mediator. He studied submissions from the parties and concluded that StorageTek's claims had merit. This affirmation by a qualified neutral mediator justifies StorageTek's belief in this case, negating both "subjective misconduct and objective speciousness."

Cisco's motion should be denied.

## II. ARGUMENT

### A. Cisco's Attorney Time And Expert Fees Refute Cisco's Claim Of "Subjective Misconduct And Objective Speciousness"

An objectively specious case is one that is "entirely without color and [is taken] for reason of harassment or delay or for other improper purpose. . . whether a claim is colorable . . . is a matter of 'whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts had been established.'" *Fattibene v. Kealey*, 18 Conn. App. 344, 361 (Conn. App. 1989.)

It is not credible that Cisco required 12,570 attorney hours to learn this case was "entirely without color." Cisco seeks fees for half those hours — purportedly expended on the trade secret count. Cisco's claim is further undermined by its claimed need for $688,975 in expert assistance. A case requiring this level of attorney analysis and expert assistance is surely not objectively baseless.

### B. Joseph Colaianni's Analysis Erases Cisco's "Warnings" To StorageTek And Is Unanswerable Evidence "That A Reasonable Attorney Could Have Determined That Facts Supporting The Claim Might Be Established"

On December 13, 2002, Joseph Colaianni rendered his mediation report, attached as Exhibit 1. Mr. Colaianni did not conclude that StorageTek's trade secret claim was vulnerable on summary judgement. (*Id.* at 7.) He had been supplied position papers by the parties and had met with them. Joseph Colaianni's 40 plus year career has centered on

intellectual property, and included service as a trial judge in the Claims Court. In his capacity as Claims Court judge, he rendered numerous opinions on intellectual property issues. He was with the D.C. firm Patton Boggs at the time he served as mediator.

Regarding the issue of proprietary StorageTek information qualifying as trade secrets, he concluded StorageTek had a high probability of at least partial success:

> I conclude, based on the same information and further on the material showing a likelihood that NuSpeed encouraged or condoned at least one of the "key employees" to obtain STK employment information for use in recruiting STK employees, that there is at least a 70% probability of NuSpeed being found liable for inducing former STK employees to breach their fiduciary duty with respect to information qualifying as an STK trade secret.
>
> (Exhibit 1 Colaianni Report, p. 8.)

Former Judge Colaianni's Report was generally favorable to StorageTek on the question of liability, even including opinions on possible success by StorageTek at summary judgment on limited issues. (*Id.* at 4-6.) He disagreed with StorageTek on the question of damages, concluding that damages would be only a portion of that sought. (*Id.* at 11.) That StorageTek agreed to this process in the first place is unanswerable evidence that it believed its claims would survive with endorsement, and they did.

To persuade that this case was without color, Cisco must overcome the mediation assessment it sought. To persuade that this case was without color, Cisco must not only prove StorageTek and its lawyers acted without color but also that former Judge Colaianni's independent review was without color. None of the cases Cisco relies upon includes a contrary favorable neutral assessment by a former trial judge as occurred here.

In its brief, Cisco offers up its own pretrial, self-serving attacks and warnings to StorageTek as support on this motion that StorageTek's failure to heed Cisco shows objective speciousness and subjective misconduct. (*E.g.*, Cisco Br., pp. 8-9, 19-20, and 21-22.) Cisco ignores Colaianni's contrary analysis. Surely the partisan din of pretrial, self-serving "warnings" was silenced by the review Cisco sought to substantiate them by a neutral voice, when that neutral voice concluded otherwise.

## C. StorageTek's Proof Of Contractual Interference And Fiduciary Breach Refutes Cisco's Claim Of "Subjective Misconduct And Objective Speciousness"

Subsequent to StorageTek filing the present action, Cisco filed three briefs in support of summary judgment. Cisco filed: (1) Memorandum of Law in Support of Summary Judgment for Misappropriation of Trade Secrets and Related Claims; (2) Memorandum of Law in Support of Summary Judgment for Claims for Damages; and (3) Memorandum of Law in Support of Summary Judgment for Corporate Raiding and Related Claims.

In the order dated September 25, 2003, the District Court dismissed all of StorageTek's claims. This Court held that StorageTek failed to establish liability on the part of Cisco for misappropriation of trade secrets. (District Court Order at 11.)

This Court also held that damages of $450 million, the acquisition price of NuSpeed, were inappropriate in the present case. (District Court Order at 3.) The Court, however, never stated or implied that StorageTek's harm was immeasurable or nominal. The Court simply held that StorageTek's means for calculating damages was improper. *Id.* The Eighth Circuit agreed. *Storage Technology Corp.,* 395 F.3d at 929.

This Court did not hold that StorageTek failed to establish liability on the part of Cisco for the claims for contractual interference and fiduciary breach. Rather, the Court dismissed these claims for a failure to establish an appropriate measure of damages on each of the counts. (District Court Order at 4-5, 18.) Implicitly acknowledging liability, the appellate court held that:

> We conclude that Minnesota courts would allow a restitutionary remedy in a case in which the interference alleged was inducing an employee's breach of noncompetition and nondisclosure covenants and fiduciary duties. We further conclude that Storage Technology is alleging NuSpeed induced such breaches by Storage Technology's employees.
>
> *Storage Technology Corp.*, 395 F.3d at 926.

This holding predicates merit for StorageTek's claims of liability on the part of Cisco.

There is no basis in fact or in law for a finding of "objective speciousness." The Eighth Circuit clearly indicated that the StorageTek's complaint was sufficient to support liability on the part of Cisco for each of the causes of action, excluding the misappropriation and conversion claims. *Id.* It would be difficult, if not impossible, for "objective speciousness" to exist in a situation where both the district court and the appeals court found merit in the underlying claims. Further, one would be hard-pressed to establish subjective misconduct on the part of StorageTek where liability was proven and damages clearly exist — albeit not in the amount sought. StorageTek's failure to quantify damages in a manner acceptable to the Court is hardly evidence of subjective misconduct.

**D. StorageTek's Trade Secret Enumeration, Albeit Rejected By This Court, Does Not Support Cisco's Claim Of "Subjective Misconduct And Objective Speciousness"**

Cisco rehashes its discovery arguments on this motion. First, if there were discovery problems, they have been waived. On the merits, StorageTek has a different view of the procedural and substantive history.

Before filing suit, StorageTek knew that Cisco (then NuSpeed) — a start up with no employees — had hired over 30 former StorageTek engineers and technical personnel. NuSpeed had put them into the same jobs they had held at StorageTek. These facts gave StorageTek every reason to believe that NuSpeed was using StorageTek's trade secrets. That belief was strengthened when StorageTek learned, shortly before filing suit, that Cisco was developing a product much like a series of proposals made at StorageTek by some of those same employees, including Mark Bakke and Ed Fiore.

From the beginning, this suit was an integrated whole. Although StorageTek brought separate causes of action, as a matter of reality, NuSpeed/Cisco had simply taken StorageTek's core development team and moved them from one location to another. The causes of action that arose from that included breach of contract (including confidentiality and non-solicitation provisions), breach of fiduciary duties, unfair competition ("corporate raiding"), and trade secret violations.

Cisco complains that StorageTek did not list its trade secrets in the Complaint. Had StorageTek done so, the trade secrets would have been revealed to the world and all trade secret protection would have been lost — the Complaint is a public document. Cisco cites no authority that a trade secret plaintiff must list its trade secrets in the Complaint.

Cisco is also wrong when it says that StorageTek did not know what its trade secrets were. StorageTek always knew what the trade secrets were, but was unsure about which of the many trade secrets Cisco had misappropriated. The sole reason to delay discovery until Cisco came out with its product was to learn what trade secrets were actually contained in the product. This was needed because Cisco refused to provide discovery to StorageTek about its unreleased product. Despite StorageTek's efforts to obtain expedited discovery so it could move for a preliminary injunction. (*See* Exhibit 2, October 18, 2000 letter to Hon. James M. Rosenbaum.)

StorageTek and Cisco also battled over the sequencing of discovery. StorageTek was the first to serve interrogatories and document requests, but Cisco refused to answer them. StorageTek was forced to file a motion to compel. (Docket #35.) Only then did Cisco move to compel identification of trade secrets. (Docket #38.) StorageTek argued that both parties should provide simultaneously discovery even though StorageTek had served its discovery requirements first. The Court, however, ordered StorageTek to identify its trade secrets before obtaining any discovery from Cisco. (Docket #46.) Thus, contrary to Cisco's current arguments, it was not a situation where StorageTek <u>could not</u> identify the trade secrets. Rather, StorageTek believed that simultaneous discovery was more appropriate.

Two weeks after the Court ordered StorageTek to identify its trade secrets, it did so. (Docket #59.) StorageTek did not, and could not, know whether all of the trade secrets it identified were contained in Cisco's product because Cisco had not provided any discovery.[1]

---

[1] Cisco argues, incorrectly, that Jim Hughes looked for trade secrets in Cisco's product (continued...)

After disclosing its trade secret list to Cisco, StorageTek finally started receiving discovery from Cisco. StorageTek deposed the former StorageTek employees and hired an expert in the field of network communications. StorageTek discovered that Cisco had misappropriated all but a handful of the identified trade secrets. StorageTek provided that information to Cisco in supplemental interrogatory answers. Importantly, although Cisco now complains that StorageTek did not adequately supplement its trade secret list and evidence of misappropriation, it never made that argument during discovery. If, as Cisco now contends, the supplemental statements were inadequate it should have raised the matter with the Court.

Cisco also contends, baselessly, that StorageTek abandoned its trade secret claim except with respect to the SAN Appliance. To the contrary, the SAN Appliance was but one of several projects from which Cisco had taken trade secrets. As is discussed at pages 13-19 of StorageTek's summary judgment opposition brief, the projects included the Edge Module, The Junkyard Weasel, The Junkyard Monkey, and the SN6000, in addition to the SAN Appliance. Thus, it is wrong for Cisco to say that StorageTek abandoned everything but the SAN Appliance. In all, StorageTek found 16 separate trade secrets from its prior work in Cisco's product.

---

[1](...continued)
and could not find any. StorageTek buys, evaluates, and uses "a large amount of Cisco product daily," and Mr. Hughes is involved in such commonplace reviews. (Exhibit 3, Hughes Dep. at 146.) Mr. Hughes had no involvement whatsoever in the edge device technology that was at issue in the lawsuit. He was simply evaluating Cisco's product for use by StorageTek. He knew nothing about the trade secrets at issue and could not possibly have been looking for them in the Cisco product. He testified that he did not test the device or try to find trade secrets. (*Id.* at 155-56.) Nonetheless, he noted that Cisco's SN5420 edge device was similar to StorageTek's Diode Project (*id.* at 153) — the next edge device project undertaken by StorageTek after NuSpeed's raid.

Cisco principally relies upon the *Stilwell* case from California to support its "objectively specious" argument. *Stilwell* is wholly inapplicable to the facts in this case. In *Stilwell*, the court found "objective misconduct" because plaintiff marketed the product which was claimed to be secret. *Stilwell*, 11 USPQ2d at 1331. A product which is marketed to the public cannot be secret. *Medinol Ltd. v. Boston Scientific Corp.*, 346 F.Supp.2d 575, 607 (S.D.N.Y. 2004). StorageTek's actions are not like those exhibited in *Stilwell*. StorageTek did not market any of the claimed trade secrets. Further, StorageTek provided Cisco with a statement of trade secrets. (Cisco's Statement of Trade Secrets dated November 20, 2001.) StorageTek then supplemented that list as they learned more during discovery. (Cisco's Supplemental Statement of Trade Secrets dated April 11, 2002.) Cisco never voiced any objections to the Magistrate regarding StorageTek's supplemental responses. It is totally inconceivable that Cisco believed that StorageTek had a "bad faith" intent either when they filed their claims of misappropriation or during trial. StorageTek had no such bad intent.

**E. Cisco Has Failed To Establish Wrongdoing By Ernie Brooks And Tom Lewry**

28 U.S.C. § 1927 in relevant part recites that:

> [a]ny attorney or other person admitted to conduct cases in any court . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

The 11th Circuit has determined that three elements underpin 1927 sanctions.

> First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious"

> conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct".
>
> *Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir. 1997) (*citing* 28 U.S.C. § 1927).

A district court may impose sanctions under 28 U.S.C. § 1927 only on a showing of subjective "bad faith." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (citation omitted).

In order to determine whether an award of fees is warranted, the court must consider more than the mere fact that the plaintiff ultimately lost the case. *Gallerani v. Town of Plymouth*, 356 F.Supp.2d 3 (D.Mass. 2005). As the Supreme Court so eloquently put it:

> [I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight of claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.
>
> *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694 (1978).

Regardless of the final outcome of the present case, it is abundantly clear that neither StorageTek, nor their attorneys, pursued any frivolous claims. StorageTek had several claims in the present suit. Cisco makes no argument that each of StorageTek's claims were frivolous. In short, Cisco has set forth no evidence demonstrating "bad faith" on the part of Brooks and Lewry which would justify an award of attorneys' fees. Cisco's discussion of their costs relating to trade secret expert witness fees is misplaced. 28 U.S.C. § 1927 does not allow for the recovery of expert witness fees. *Dictiomatic, Inc. v. U.S. Fidelity & Guar. Co.*, 2000 WL 33115333, *14 (S.D. Fla. 2000). Cisco's request that attorneys' fees be paid by Brooks and Lewry must be denied.

## F. <u>Cisco Is Not Entitled To Fees Under This Court's Inherent Power</u>

Inherent powers must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463 (1980) (citing *Gompers v. Buck Stove & Range Co.*, 221 U.S. 418, 450-451, 31 S.Ct. 492, 501-502 (1911)). A specific finding of "bad faith" must precede any sanctions under the court's inherent powers. *U.S. v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986).

For the reasons set forth above, the Court should deny Cisco's request for attorney's fees and expert witness fees. StorageTek initiated and pursued each of their claims in "good faith." A finding of liability on the part of StorageTek, or its attorneys, is inappropriate and would encourage a judicial system where all but the most airtight claims are discouraged. *Christianburg*, 434 U.S. at 421. StorageTek had a "good faith" basis for determining that each of their claims had merit. StorageTek pursued their claims in a diligent

and appropriate manner and retained qualified expert witnesses[2], when necessary, to support their claims. Cisco's great expenditures on their expert witness further supports a belief on their part that StorageTek's claims had merit. Cisco's request for attorneys' fees and expert witness fees under the court's inherent and equitable powers is wholly inappropriate and should be denied.

## G. Cisco Has Failed To Justify The Millions It Seeks For A Case It Now Says Was Objectively Baseless

Cisco has made no effort to explain its attorney and expert fees in relation to its claim of "objective speciousness." Rather, Cisco invites the Court to simply punish StorageTek and its lawyers by shifting Cisco's fees. After quoting a litany of factors bearing on the fee awarded, rather than analyze the factors, Cisco concludes:

> Courts are not required to "examine exhaustively and explicitly" all factors relevant to a reasonable fee award.
>
> (Cisco Br., p. 26, citations omitted.)

---

[2] Cisco criticizes StorageTek's technical expert, Brian Berg, because he was not an expert in hardware design. Hardware design has nothing to do with the present case. StorageTek never alleged that Cisco misappropriated StorageTek's hardware design — indeed, as Cisco has pointed out many times, StorageTek never built the products, so there was no hardware design for Cisco to misappropriate. Mr. Berg is an expert in the architecture and operation of computer networking devices. His analysis was of the architecture and operation of Cisco's device as compared to the architecture and operation of StorageTek's designs. Cisco knows that hardware design and architecture are fundamentally different from one another. For example, Mark Bakke was Cisco's Chief Architect; Ed Fiore was the Director of Hardware Engineering. They are two different disciplines. Accordingly, the fact that Mr. Berg was not an expert in hardware design is completely irrelevant.

If the fees sought were less than $50,000, as it was in the cases cited[3], that might be true. But it is certainly not reasonable when awarding the over $2 million Cisco seeks. If legitimate, surely Cisco could have and should have done much more.

StorageTek has been unable to find any case where a $2 million fee award was made simply because the case was objectively baseless. *Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 222 F.Supp.2d 733 (D. Maryland 2002) (court awarded $134,495 for frivolous misappropriation of trade secret claims); *VSL Corp. v. General Tech. Inc.*, 1998 WL 124208 (N.D. Cal. 1998) (court awarded $78,631.98 for frivolous misappropriation of trade secret claims); *Lucent Information Mgt., Inc. v. Lucent Tech., Inc.*, 1999 WL 1057262 (D.Del. 1999) ($13,869.32 awarded for reasonable attorneys fees); *Murphy v. Housing Auth. and Urban Redevelopment Agency of the City of Atlantic City*, 158 F.Supp.2d 438 (D. N.J. 2001) ($59,215.60 awarded for reasonable attorneys fees); *Torres v. City of Orlando*, 264 F.Supp.2d 1046 (M.D. Fla. 2003) ($33,761.28 awarded for attorneys fees); *Earth Flag Ltd. v. Alamo Flag Company*, 154 F.Supp.2d 663 (S.D. N.Y. 2001) (court awarded $106,126.92 in total attorneys fees).

---

[3] *Deluxe Corp. v. MIPS Dataline Am., Inc.*, 2001 WL 476584 (D.Minn. 2001) (Attorneys' fees amounted to $41,800); *Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999) (Attorneys' fees sought were $5,071.)

## III. CONCLUSION

For all of the reasons set forth above, the Court should deny Cisco's motion for both attorneys' fees and expert witness fees.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

By: ______________________

**ERNIE L. BROOKS**
**THOMAS A. LEWRY**
**MARC LORELLI**
1000 Town Center
Twenty-Second Floor
Southfield, Michigan 48075
Tel: (248) 358-4400
Fax: (248) 358-3351

*Attorneys for Plaintiff*
*Storage Technology Corporation*

Date: **May 2, 2005**

**Of Counsel:**

**MAHONEY DOUGHERTY & MAHONEY**
RICHARD P. MAHONEY
VICTOR LUND
802 Park Avenue
Minneapolis, MN 55404
(612) 339-5863

and

**Storage Technology Corp.**
Timothy R. Schulte
2270 South 88th Street
Louisville, Colorado 80028-4309
(303) 673-5989

# CERTIFICATE OF SERVICE