# *EXHIBIT 1*

December 13, 2002

Joseph V. Colaianni
(202) 457-6174
jcolaianni@pattonboggs.com

Mark Roellig, Esquire
Vice President General Counsel
and Secretary
StorageTek
One StorageTek Drive
Louisville, CO 80028-4309

via e-mail
mark_roellig@storageTek.com

Neal Rubin, Esquire
Cisco Systems, Incorporated
170 West Tasman Drive
Building 10/2
San Jose, CA 95134-1706

via e-mail nrubin@cisco.com

RE: StorageTek v. Cisco

Gentlemen:

I have completed my review of the materials and the information that was provided to me directly or through the parties' outside counsel, and my research of the Minnesota law governing each count pleaded by StorageTek's ("STK's") Complaint, and the defenses thereto pleaded by Cisco's Answer.

This letter will be exclusively directed to my opinion on the following issues, based on the facts you have presented, and the controlling law[1]:

**EXHIBIT 1**

I. Which, if any, Counts have a reasonable likelihood of resolution or disposition by summary judgment;

II. The probability of Cisco being found liable at the conclusion of a full trial before the United States District Court for the District of Minnesota ("the Court") before which this case is currently pending;

III. An estimate, if any, for each count for which Cisco would likely be found liable, of the damages that would be awarded.

With respect to damages this Opinion does not address StorageTek's request for attorney fees pursuant to M.S.A. § 325C.04 or its request for interests and costs, set forth under its Complaint's prayer for relief. See StorageTek's Complaint at page 8.

## STK's PLEADINGS

-

STK's Complaint pleads six counts:

(1) Interference With Contractual Relations

(2) Corporate Raiding

(3) Misappropriation of Trade Secrets

(4) Inducing Breach of Contract

(5) Conversion

(6) Breach of Fiduciary Duties

For purposes of providing an economic, accurate estimation of each of I, II and III identified above, STK's claims pleaded under the above Counts are rearranged and grouped as indicated below.

STK's Counts 1 and 4 are each analyzed as "interference with contractual relations", because

Minnesota law uses the phrases "interference with contractual relations," which is STK's Count 1, and "inducing breach of contract," which is STK's Count 4, as alternative names for the same species of tort. *See Wenner v. Pioske*, 1990 WL 128290, *4 (Minn. App. Ct.)

STK's Counts 3 and 5 are analyzed collectively as "misappropriation of trade secrets." The reasoning is that both are based on alleged misappropriation or use of STK's trade secret information, and the damages calculation for "conversion" is included in the recognized damages calculations for misappropriation of trade secrets.

STK's Count 2 is not analyzed as a separate count. This is because the allegations of improperly using STK "confidential pay structure, benefits system, salary information" to recruit former STK employees are pleaded under Count 1. Count 2's allegations of misappropriation of trade secrets are pleaded under Count 3.

STK's Count 6 is analyzed as a pleading of inducement to breach fiduciary duties. The alleged fiduciary duties are on the key former STK employees to not solicit STK employees, and on the key STK former employees to protect STK trade secret information. Based on my study of Minnesota law, and the law of other jurisdictions, NuSpeed did not assume liability for STK's former employees' alleged breaches of fiduciary duty, merely by being or having become the employer of those STK employees. STK's Count 6 does plead that "Defendant knew of, encouraged, and condoned these breaches of fiduciary duty which inured to the benefit of defendant." STK Complaint at ¶ 54. Minnesota law at least recognizes an inducement of breach of fiduciary duty claim. *Schmitz v. Aegis Mortg. Corp.*, 48 F.Supp.2d 877, 884 (D. Min. 1999).

Applying the liberal notice pleading requirements of Rule 8 Fed. R. Civ. P., I therefore conclude for purposes of this Opinion that STK's Count 6 pleads "inducement of breach of fiduciary duty" with NuSpeed/Cisco being the alleged inducing party.

This Opinion applies the term "Corporate Raiding - Fiduciary Duty Claims" as a collective reference to (i) STK's claims pleaded under Counts 1 and 4, (ii) STK's claims under Count 2 based on allegations of improperly using STK "confidential pay structure, benefits system, salary information" to recruit former STK employees, and (iii) STK's claims under Count 6 based on the alleged inducing of former STK former employees to breach their alleged fiduciary duty to not solicit STK employees.

This Opinion applies the term "Misappropriation Claims" to collectively reference Counts 3 and 5, and all claims under Count 6 based on inducement of STK former employees to breach their alleged fiduciary duty to protect STK trade secret information.

## OPINION

### A. Probability of Resolution/Disposition On Summary Judgment

Based totally upon the limited factual information submitted, it is my opinion that there are only two claims pleaded by STK that have a substantial likelihood of resolution, or disposition, by summary judgment. The first is the claim for interference with the alleged non-compete agreements between certain STK former employees and STK, which is one of the three types of contract issues for which STK's Complaint pleads interference. I estimate the probability of resolution by Summary Judgment, in favor of STK, to be from 20% to 50%. As explained below this estimate only addresses liability. It is my opinion that STK's probability of proving monetary damages under this claim, as pleaded, to the level of certainty required at law, is low.

The second claims pleaded by STK having a substantial likelihood of resolution, or disposition, by summary judgment is the claim for inducement of breach by certain former key STK employees of their alleged fiduciary duty to not solicit, or recruit, other STK employees. Based on my review of the materials, with emphasis in particular on the title of each of the former STK employees identified under Count 6 of STK's Complaint, and the description of their responsibilities as employees of STK found in the materials that you presented to me, it is likely that the Court would find on summary judgment that none of these "key" former STK employees had a fiduciary duty, under Minnesota law, to refrain from soliciting or recruiting other STK employees to leave STK.

With respect to resolution on summary judgment of interference with the alleged non-compete agreements, STK must prove all of the following to establish the claim: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. *Furlev Sales and Associates, Inc. v. North American Automotive Warehouse*, Inc., 325 N.W.2d 20, 25 (Minn. 1982).

The submitted materials show that Mark Schrandt and other of the former "key STK employees" had non-compete agreements with NSC, for whom they worked when STK acquired NDC and its business. See STK Position Paper at Appendix D. Cisco's position is that these non-compete agreements are not enforceable by STK because the agreements were between the identified persons and NSC, and that "new agreements were not renegotiated when STK acquired NSC; STK provided no new consideration for such agreements; and STK never sought to enforce the agreements." Cisco Position Paper at 9. Minnesota law does not appear to support Cisco's position. STK acquired the NSC business and, under Minnesota law, "[n]oncompete agreements are assignable upon the sale of a business to protect the good will of the business. *Saliterman v. Finney*, 361 N.W.2d 175, 178 (Minn. Ct. App. 1985). *See also Guidant Sales Corp. v. George*, 2001 WL 1491317,

*2 (D. Minn.).

It is reasonably likely that the Court may find in the pleadings, depositions, answers to interrogatories and admissions of record, that NuSpeed or Cisco knew or should have known that at least some of the key STK employees had non-compete agreements. Elements (1) and (2) would, therefore, likely be established. Further, based on my reading of the non-compete provision of the provided example employment agreement, marked with Bates Nos. S 3922-24, and the parties' respective descriptions of the Cisco SN 5400, and my comparison of that product with the provided description of STK's line of business, it is likely that the Court could find that the "intentional procurement of breach" element to be established. Elements (1) through (3) therefore have a reasonable likelihood of being established by summary judgment.

Assuming that elements (1) through (3) are established, STK's Position Paper is correct in its statement that, under Minnesota law, Cisco bears the burden of disproving element (4), which is that the procurement of the breach is "without justification." I am unable to clearly identify, based on my review of the provided materials, a specific justification that Cisco would assert.

Elements (1) through (4), for claims based on alleged interference with the non-compete agreements, therefore have a reasonable likelihood of being established by summary judgment. Element (5), damages, is addressed below.

With respect to resolution on summary judgment of STK's Count 6 claim under inducement of breach of fiduciary duty with respect to the duty not to solicit, to prevail on this claim STK must show that: (1) one or more of the key former STK employees breached this fiduciary duty; (2) NuSpeed/Cisco induced or participated in the breach; and (3) damages resulted. *Schmitz v. Aegis*, 48 F.Supp.2d at 884.

The existence of a duty is a predicate to a breach of Count 6. None of Mark Schrandt, Ed Fiore, Tim Kuik and Mark Bakke, whom STK's Count 6 alleges as the "key employees of StorageTek's MRDC...[having] the fiduciary duty...not to recruit or try to recruit StorageTek employees to other companies" were officers or directors of STK. Case law establishing fiduciary duty of corporate employees generally governs officers and directors. *See, e.g., Miller v. Miller*, 301 Minn. 207, 222 N.W.2d 71 (1974), Mark Schrandt, Ed Fiore, Tim Kuik and Mark Bakke were each at-will employees of STK. None were officers or directors of STK. The only fiduciary duty owed by an at-will employees is a "duty of loyalty," which includes the duty "to not appropriate his employer's trade secrets," and to "not solicit his employer's customers" while still working for that employer. *Augat, Inc. v. Aegis, Inc.*, 409 Mass. 165, 172, 565 N.E.2d 415, 419 (1991). Minnesota law is in accord. *See Rehabilitation Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Court App. Minn. 1987).

I therefore conclude that the Court would likely dispose of STK's claim under Count 6 for allegedly inducing a breach of the fiduciary duty not to solicit STK employees.

All of the remaining claims pleaded by STK require findings on a large number of vigorously disputed material facts, likely requiring the fact finder to weigh evidence ranging from technically complex materials presented by experts witnesses to the demeanor of former STK employees on the witness stand, that the probability of the Court granting summary judgment is essentially zero.

### B. Probability of STK Prevailing At Trial

#### 1. Corporate Raiding - Fiduciary Duty Claims

Based on the materials that you provided me, if all counts pleaded by STK are fully tried, there is at least a 70% probability of Cisco being found liable for tortious interference with one or more of the non-compete agreements identified at Appendix D of STK's Position Paper.

There is a lesser, but still reasonable probability of Cisco being found liable for tortious interference with, or inducing breach of, one or more of the alleged non-solicitation agreements. The basis for there being a reasonable probability is, in part, the number of such agreements (at least 12 according to Appendix D of STK's Position Paper), and the number of former STK employees that would likely testify.

I believe there is at least a 70% probability of Cisco being found liable for tortious interference with at least one of the at-will employment agreements that existed between each former STK employee and STK prior to his or her resignation. The basis for this probability is my review of the parties' respective positions as to STK's allegedly confidential employment information allegedly used for recruiting the former STK employees over to NuSpeed, and the number of such former employees likely to testify at trial.

Each STK employee who left STK for NuSpeed had, until he or she actually resigned (or was terminated by STK), an at-will employment contract with STK. The mere fact that a competitor acts with intent to, and even succeeds in recruiting an at-will employee does not of itself establish a cause of action, regardless of the economic loss that results to his former employer. See Prosser & Keaton on Torts, § 129. However, use of improper means for inducing termination of an at-will employment agreement, subject to proof of damages, establishes interference with contractual relations. *See Bancroft Whitney Co. v. Glen*, 64 Cal.2d 327, 411 P.2d 921 (1966). Based on

my review of the materials provided, it is likely that NuSpeed/Cisco improperly used StorageTek's confidential employee information to recruit at least one STK employee.

Cisco argues that the STK employee information was not confidential to STK because each STK employee had a statutory right to obtain his or her information files from STK. Cisco Position Paper at 23. Cisco's position does not appear to have merit. Until such time that the STK employee, or former employee, exercised his or her statutory right, STK's employee file for that employee was proprietary to STK. Further, even if the STK employee obtained the information, this act would not *ipso facto* remove the information's confidential status. Still further, STK's collection of such employee information is proprietary even if each individual record can be requested.

With respect to STK's claim under its Count 6 for damages based on the alleged inducing breach of fiduciary duty not to solicit STK employees, it is likely for reasons presented earlier in this Opinion, that the Court would dispose of this by summary judgment.

### 2. Misappropriation Claims

Based on my review of the materials provide to me, including the Expert Report of Brian A Berg, Plaintiff StorageTek's Particularized Trade Secret Statement, and the Expert Report of John P. Kelly, Ph.D., and material showing NuSpeed likely having used at least some STK employee information for recruiting purposes, I conclude that there is at least a 70% probability of Cisco being found liable for misappropriation of some quantum of information qualifying as an STK trade secret.

I conclude, based on the same information and further on the material showing a likelihood that NuSpeed encouraged or condoned at least one of the "key employees" to obtain STK employment information for use in recruiting STK employees, that there is at least a 70% probability of NuSpeed being found liable for inducing former STK employees to breach their fiduciary duty with respect to information qualifying as an STK trade secret. As addressed below, however, any damages attributable to such a breach of fiduciary duty appears to be duplicative of those available under STK's Count 3 and, hence, could not be doubly collected.

## C. Damages

### 1. Corporate Raiding - Fiduciary Duty Claims

The measure of damages for each of STK's Corporate Raiding - Fiduciary Duty Claims is that required to place STK into the same position it would have been if the counts' respective underlying contract, or duty would have been performed, or had not breached[2]. *See, e.g., H.J., Inc. v. International Tel. & Tel. Corp.*, 867 F.2d 1531 (8th Cir. 1989)(Damages available for interference with contractual relations are those required to place an aggrieved party into the position he would have achieved absent the breach); *National Union Fire Ins. Co. v. Proskauer Rose*, 165 Misc. 2d 539, 546, 634 N.Y.S.2d 609, 615 (Sup. Ct., N.Y.Cty. 1994) (stating "[t]he appropriate measure of damages [for a breach of fiduciary duty] requires placing [plaintiff] in the same condition it would have been in had the wrong not occurred").

"Under Minnesota law, damages for breach of contract must be proved to a reasonable certainty, and a party cannot recover speculative, remote, or conjectural damages. *Leoni v. Bemis Co.*, 255 N.W.2d 824, 826 (Minn. 1977); *see also Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 266-67 (Minn. 1980). Once the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to

approximate the amount. *Leoni*, 255 N.W.2d at 826. *Children's Broadcasting Corp. v. Walt Disney Co.*,245 F.3d 1008, 1016., (8th Cir. 2001).

Applied to the present facts, if STK proves Cisco liable for interference with the non-compete agreements the remedy at law would be the amount of money required to place STK into the position it would have been if none of its employees having an employment agreement with a non-compete provision had gone to NuSpeed Cisco. The likelihood of the court finding sufficient facts to establish "a reasonable basis upon which to approximate the amount," *Children's Broadcasting v. Disney*, *supra*, is low. The case law shows that because of the difficulty of such a calculation, that it is more likely that a court will grant injunctive relief, or uphold a contractual liquidated damages clause. See Shred-It, USA, Inc. v. Mobile Data Shred, Inc., 202 F.Supp.2d 228, 233 (S.D.N.Y. 2002)("Generally, when a party violates a contract that contains a non-compete clause, it is very difficult to calculate monetary damages that would successfully redress the loss."). *See also, Ticor Title Insurance Co. v. Cohen*, 173 F.3d 63, (2ndCir. 1999)

Similarly, if STK proves Cisco liable for interference with the non-solicitation agreements, the remedy at law would be the amount of money required to place STK into the position it would have been if none of its employees having an employment agreement with a non-solicitation provision had solicited STK employees to work for NuSpeed/Cisco. The likelihood of the court finding sufficient facts to establish "a reasonable basis upon which to approximate the amount," *Children's Broadcasting v. Disney*, *supra*, is low.

Likewise, if STK proves Cisco liable for inducing breach of fiduciary duty with respect to non-solicitation, the remedy at law would be the amount of money required to place STK into the position it would have been if none of its employees having such a fiduciary duty had solicited STK employees to work for NuSpeed/Cisco. The likelihood of the court finding sufficient facts to establish legal damages is low.

It is therefore my opinion that none of the damages alleged or legally recoverable under STK's Corporate Raiding - Fiduciary Duty claims can be established with the required certainty for obtaining relief.

STK's Position Paper states, without identifying any of STK's pleaded counts, that "StorageTek's damages are measured by unjust enrichment." STK Position Paper at 15. My review does not support the conclusion that STK's damages are to measured by unjust enrichment. First, STK's Complaint does not plead any count of unjust enrichment. Secondly, of the counts, or causes of action, pleaded by STK, only misappropriation of trade secrets may use unjust enrichment as a measure of damages. *Compare H.J., Inc. v. International Tel. & Tel. Corp.*, 867 F.2d 1531 (8th Cir. 1989) *with* Minn. Stat. § 325C.03(a) (1998) *and Telex Corp. v. International Business Mach. Corp.*, 510 F.2d 894, 931 (10th Cir.), *cert. dismissed*, 423 U.S. 802 (1975).

STK argues that the value Cisco paid for NuSpeed can be used as a basis for damages because, according to STK, "[o]nce liability for unfair competition is established, unjust enrichment is the proper measure of damages," citing "Minn. Stat. § 325C.03(b) and *Johns-Manville*, 718 F. Supp. [1310] at 1316 [E.D. Mich. 1989]." STK Position Paper at 27. STK appears to overstate the holding of *Johns-Manville.* The defendant before *Johns Manville*was found liable of patent infringement, misappropriation of trade secrets, and unfair competition. *Johns-Manville, supra*, does not hold, or stand for the proposition, that "[o]nce liability for unfair competition is established, unjust enrichment is the proper measure of damages."

## 2. Misappropriation Claims

Damages for misappropriation of a trade secret "can include both the actual loss caused by the misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." Minn. Stat. § 325C.03(a) (1998).

Other jurisdictions use this same measure of damages, and relevant decisions can be looked to for guidance. *See generally* 2 R. Milgrim, Milgrim on Trade Secrets ("Milgrim ") § 7.08[3][a], at 7-314 to 7-318 (1990) (The amount of damages recoverable in an action for misappropriation of trade secrets may be measured either by the plaintiff's losses, or by the profits unjustly received by the defendant.) To allow both, however, would permit double recovery. *See Telex Corp. v. International Business Mach. Corp.*, 510 F.2d 894, 931 (10th Cir.), *cert. dismissed*, 423 U.S. 802 (1975).

Based on the materials provided, it is unlikely that either STK or Cisco would succeed in proving that Cisco obtained, or received, any profit based on sales of its SN 5400 product. This is the only Cisco product alleged in the submitted materials as containing STK trade secret information.

However, it is my opinion that a finite percentage of the value that Cisco paid to acquire NuSpeed may be proved at trial as being attributable to STK trade secrets extant within the NuSpeed technology that Cisco was acquiring. I cannot, by simply reviewing the materials that was provided to me, provide you with a well-supported estimate, or even a meaningful range of estimates, of what that percentage would be. The Expert Report of Brian A Berg, the expert for STK, and the Expert Report of John P. Kelly, Ph.D, the expert for Cisco, represent a polarization of the facts. Plaintiff StorageTek's Particularized Trade Secret Statement is not specific enough, and does not assign values or present facts from which values can be estimated for use in arriving at a meaningful damage figure. The Report of George M. Norton, another of STK's experts, although providing information perhaps helpful to a fact finder, is substantially conclusory and not

independently verifiable.

I therefore conclude that, with reasonable probability, the Court would find after a full trial on the merits that some percentage of the value that NuSpeed received from Cisco was an unjust enrichment to NuSpeed attributable to STK trade secrets. It is probable that the Court would find that Cisco, upon acquiring NuSpeed, also acquired its liability to STK for this unjust enrichment. However, the Court will likely find that a substantial portion of the 450 million dollars that Cisco paid was attributable to factors other than the STK trade secrets, *e.g.*, the knowledge and experience of the former STK employees in the data storage field.

I trust that this responds to all of your inquiries and will be helpful to counsel in reaching an amicable resolution of the issues.

Very truly yours,

Joseph V. Colaianni

[1] It should, of course be appreciated that a more thorough and complete treatment is not possible because of the limited information received and the extremely short period of time permitted to deal with a large number of complex legal and factual issues.

[2] Some jurisdictions, such as Wisconsin, may apply tort damages instead of contractual damages. *See Bender v. Hearst Corp.*, 263 F.2d 360 (2nd Cir. 1959). The case law shows nothing of Minnesota applying tort, rather than contractual damages, for tortious interference with contractual relations.