# *EXHIBIT 3*

ATTORNEYS' EYES ONLY COPY 1

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

STORAGE TECHNOLOGY CORPORATION,

PLAINTIFF,

vs.

COURT FILE NO. 00-2253 MJD/JGL

CISCO SYSTEMS, INC.,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

VIDEO DEPOSITION OF JAMES P. HUGHES

OCTOBER 15, 2002

REPORTED BY: CAROL BRAUSEN ENGELS
RPR, IOWA CSR 1126
2205-30TH AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55406
(612) 722-9947 * FAX NO. (612) 722-6851

**EXHIBIT 3**

A. I told you the testing we did. We booted it. We looked at the screens. We played with the vulnerability, telnetted to it sought. And that was the extent of our testing.
Q. Other than StorageTek's attorneys, did you have any discussions with anyone about the 5420?
A. There was -- the box was in my office for a matter of time with the lid off of it sitting there. There were people that came by and saw it. But I don't remember who.
Q. Did you have any opinions about the 5420 from your reviewing it, looking at it?
A. Give me a hint on what you mean by "opinions."
Q. Any opinions. Did you think it was well designed, poorly designed, good device, bad device, something StorageTek might want to do, something StorageTek might have done before? Anything at all.
A. I noted the similarity to the Diode Project.
Q. Is that the only project that you thought that the 5420 was similar to?
A. In general, the issue of a converter that converts from one media to another media, that is not uncommon to what Network Systems is all about. For me that goes unsaid. That's any piece of

that a fair statement?
A. That telephone converts sound waves into electrical energy. I don't understand your question.
Q. Well, your observation is a good one. The general idea of having some device that converts one interface to another isn't anything that's necessarily proprietary? It's how you do it, right?
A. It's how, when, where and why you do it that's proprietary.
Q. Was there anything about the 5420 as a converter device, to use your terminology, that you thought included any information that was proprietary to StorageTek?
A. It was not -- I was not called on to make that decision.
Q. So you have no opinion on that question?
A. I try to stay with the facts. The facts are this is the box. Here's the box.
Q. Well, based on the facts that you're aware of, do you have any opinion as to whether or not the 5420 includes any proprietary information of StorageTek?
MR. LORELLI: Objection to the form of

the question. Also foundation.

THE WITNESS: And from a legal standpoint, I don't have the training to make that statement.

BY MR. HAMMELL:

Q. You don't -- when you say you don't have the training to make the statement, what do you mean?

A. From a legal sense whether or not this device violates trade secrets. The device is the device. I don't know whether it violates trade secrets or not. That's what I think the lawsuit is all about.

Q. Well, I didn't ask you that question. My question was whether or not you have an opinion as to the question of -- let me start over. Do you have an opinion based on your review of the 5420 and the other information and facts that you're aware of whether or not the 5420 uses any StorageTek proprietary information in it?

A. I personally do not have an opinion. I have never been asked to give that opinion before right now.

Q. Okay. And when you said that you noted the similarity between the 5420 and the Diode Project, as you said, the Diode Project wasn't begun until 2000, correct?