**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

STORAGE TECHNOLOGY CORPORATION,

Plaintiff,

v.

CISCO SYSTEMS, INC.,

Defendant.

Civil File No. 00-2253 (JNE/JGL)

---

# <u>DEFENDANT CISCO SYSTEMS, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND EXPERT WITNESS FEES</u>

**Submitted to the Honorable Joan N. Ericksen**

Dated: May 16, 2005

**DORSEY & WHITNEY LLP**

Roy A. Ginsburg
Bar Number 123158
Joseph W. Hammell
Bar Number 172698
David Y. Trevor
Bar Number 152997
Clifford S. Anderson
Bar Number 227201
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
Telephone: (612) 340-2600

Attorneys for Defendant Cisco Systems, Inc.

## I. INTRODUCTION

Storage Technology Corporation's ("STK") opposition to Cisco Systems, Inc.'s ("Cisco") motion for attorneys' fees fails to provide any credible basis for denying the motion. STK's brief is notable in three ways: First, it largely refuses to engage with the heart of Cisco's argument, which is that the *manner* in which STK litigated its trade secret claims, *coupled with* the total lack of merit to those claims, demonstrates bad faith and justifies a fee award.

Second, STK relies heavily on a series of frankly bizarre arguments, including: (1) that the large number of hours Cisco was forced to expend in successfully defending itself somehow proves that STK's case had merit; (2) that the merit of the claims is proven by the statements of a party hired to evaluate the case for settlement, even though his assessment directly conflicts with this Court's (and the Eighth Circuit's) holdings; and (3) that the supposed validity of non-trade secret claims (which STK lost as a matter of law) reflects well on its baseless trade secret claims.

Third, STK wearily reargues the merits of the trade secret claims, even though this Court already dismissed them after careful analysis. STK also trots out a boilerplate litany of reasons why attorneys' fee motions are sometimes denied, without making any meaningful attempt to link those reasons to the actual facts of this case. When those facts are examined, STK and its attorneys should be held responsible for bringing claims that they knew lacked merit, and for litigating it so as to maximize Cisco's fees and minimize the fairness of the process.

## I. ARGUMENT

### A. STK Fails To Address Many Of The Primary Factors Demonstrating Bad Faith

The statutes and doctrines under which Cisco seeks attorneys' fees focus on "bad faith," "vexatiously" multiplying the proceedings, and acting "wantonly, or for oppressive reasons." *See* Cisco's Moving Memorandum ("Cisco Mem.") at 17, 23 and 24. STK tries to demonstrate

*again* that its trade secret claims have some merit. This is doubly irrelevant, because (1) the lack of merit of STK's claims has already been judicially determined; and (2) the proof of STK's bad faith and vexatious conduct lies largely in the way in which it pursued its claims.

Thus, Cisco demonstrated, with record evidence, that STK (1) started this lawsuit without any real idea of what trade secrets were allegedly taken; (2) had already been told by its internal expert, Jim Hughes, that he found no STK trade secrets in Cisco's product; (3) failed to define its trade secrets with adequate particularity even under Court Order; (4) changed its theories throughout the case; (5) deliberately denied its technical expert, Brian Berg, access to Cisco's product; (6) abandoned most of its theories only after Cisco had briefed them for summary judgment; and (7) never came forward with any meaningful evidence to support its case. *See* Cisco Mem. at 3-14, 19-21. This course of conduct is what justifies a fee award, and STK's response to it is limited to bare denials, unsupported by evidence or reasoned argument. If STK had a viable explanation for *how* it litigated the case, the mere fact that it lost would be less damning. The lack of any legitimate rationale confirms STK's bad faith and vexatious conduct.

**B. <u>STK Cannot Justify Its Conduct By The Amount Of Pain It Inflicted On Cisco</u>**

In Shakespeare's *Troilus and Cressida*, Troilus mocks the claim that the Trojan War's casualties are justified by Helen's beauty: "Helen must needs be fair, When with your blood you daily paint her thus." (I.i.90-91) Remarkably, what Shakespeare presented as satire, STK makes its lead argument, claiming, in effect, that its case "must needs be fair," because so many hours were spent in litigating it. STK has things entirely backward. It is not the hours that prove the merits of the case, it is the merits of the case that justify the time and expense of litigating it. Here, of course, the *lack* of merit in STK's claims demonstrates that STK was *not* justified in putting Cisco through all the time and expense necessary to obtain summary judgment.

The reason why this case required so much time and effort is no mystery. The complex, technical nature of any trade secret litigation was greatly exacerbated by STK's bad faith tactics, as summarized above and described in detail in Cisco's opening brief. STK never argues that the fees Cisco incurred were unnecessary (or that the hourly rates charged were unreasonable), and the outcome of the case demonstrated its lack of merit. Surely this is an obvious example of the principle that a meritless claim, presented vaguely and shifting in its particulars, requires more effort from the defense than a meritorious claim litigated in a straightforward manner.

The fallacy of STK's argument is highlighted by the lone authority on which it relies. *Fattibene v. Kealey*, 18 Conn. App. 344, 361 (Conn. App. 1989), points out that it is plaintiff's (not defendant's) responsibility, at the outset and during the case, to evaluate whether its claims are colorable. *Id*. at 361. STK's reversal of this burden is not supported by *Fattibene* or any other authority. Acting as "reasonable attorney[s]," STK's lawyers were obligated to determine that "facts supporting the [trade secret] claim[s]" could *not* be established. *Id.* Had they done so, Cisco never would have had to expend enormous fees to defend against frivolous trade secret claims in the first place. Cisco's fees are a consequence of STK's unjustified failure to abandon losing claims, not Cisco's inability "to learn" that STK's case was frivolous sooner. Cisco knew and stated to STK that the trade secret claims were frivolous from the outset. Accordingly, Cisco is entitled to appropriate compensation for the defense it had no choice but to mount.

### C. Judge Colaianni's Letter Is *Irrelevant* To This Court's Analysis

Ignoring the difference between a settlement process and litigation, STK relies on the letter of former Judge Joseph Colaianni, provided as part of settlement discussions, as evidence that it brought its trade secret claims in good faith. STK Mem. at 3-4. Judge Colaianni reviewed a very limited record, with limited briefing, for the limited purpose of helping the parties try to

settle. His conclusions about the merits were wholly at odds with those of this Court and the Eighth Circuit Court of Appeals. *See id.*, Ex. 1. His letter proves nothing about the case.

Procedurally, STK violated an express agreement of the parties that the proceedings before Judge Colaianni would *not* be shared with this Court *ever*. On November 8, 2002, outside counsel for the parties agreed in a joint letter to Judge Colaianni that (emphasis added):

> [T]his process is part of settlement negotiations *that are protected from disclosure* by Rule 408 of the Federal Rules of Evidence. As such, we have agreed that *neither party will notify the Court of this process.* However, if the Court asks either party whether settlement negotiations have taken place, the parties may respond by describing this process, *without revealing your conclusion.*

5-16-05 Anderson Aff., Ex. 1. STK ignores this agreement and fails to apprise the Court of it.

Substantively, Judge Colaianni's letter opinion must be rejected for many reasons. As he admits, his opinion is "[b]ased totally upon the *limited factual information* submitted." STK Mem., Ex. 2 at 4 (emphasis added). He had substantially less briefing than this Court. *See* 5-16-05 Anderson, Ex. 1. His focus was not to decide the case but to provide the parties with an assessment to prepare for a December 18, 2002, "settlement conference" with the Court. *Id.* Most critically, he was not asked to assess STK's bad faith litigation tactics. Judge Colaianni's work was based on a very different record and undertaken for a *different* purpose. It provides no basis to deny Cisco's motion.

**D. <u>STK's Non-Trade Secret Claims, Which Were Also Dismissed On Summary Judgment, Do Not Prove Its Good Faith</u>**

STK, unable to make the red herring argument that its trade secret claims were justified because it raised other claims that it *won*, breaks new ground by asserting that the trade secret claims are justified by other claims that it *lost*. STK argues that this motion should be denied because this Court "did not hold that StorageTek failed to establish liability on the part of Cisco for claims for contractual interference and fiduciary breach." Remarkably, STK is even so bold

as to claim that the Court of Appeals "[i]mplicitly acknowledge[ed] liability" on those claims. STK Mem. at 6. STK's argument is faulty in at least two respects.

First, STK *also* lost the *non*-trade secret claims. It is simply not true, as STK claims, that the "Eighth Circuit *clearly indicated* that . . . StorageTek's *complaint was sufficient to support liability* on the part of Cisco for *each* of the causes of action excluding misappropriation and conversion claims." *Id.* at 6 (emphasis added). What the Eighth Circuit wrote, *as quoted on the very same page of STK's brief*, is that "We further conclude that Storage Technology *is alleging* NuSpeed induced such breaches . . ." (emphasis added). In other words, the Eighth Circuit simply discussed what the allegations were. It made no finding on liability, because it affirmed dismissal of those claims based on lack of proof as damages. *Storage Technology Corp. v. Cisco Sys., Inc.*, 395 F.3d 921, 929 (8th Cir. 2005).

Second, even if STK's non-trade secret claims had had merit, it would not matter because Cisco is *not* basing its claim for attorneys' fees on the *non*-trade secret related claims. Cisco has limited its claim for fees incurred in litigating STK's trade secret case. The fate of STK's non-trade secret claims is not relevant, except to confirm that STK's entire lawsuit lacked merit.

**E. <u>STK's Reargument Of Its Trade Secret Claims Adds Nothing</u>**

This Court thoughtfully addressed all of STK's arguments in support of its trade secret claims and flatly rejected them. *Storage Tech. Corp. v. Cisco Sys., Inc.*, 2003 WL 22231544 (D. Minn. Sept. 25, 2003). Nonetheless, STK reargues the exact same points again. *See* STK Mem. at 7 ("On the merits, Storage has a different view"). It is too late for a "different view." STK lost. The rehashing of old arguments cannot inject life into these moribund claims.

On one specific point, it is worth reiterating, STK did in fact abandon all but its SAN Appliance theory. STK's summary judgment brief only describes the history of STK's various

product ideas. As an actual allegedly misappropriated trade secret, however, STK focused only on the SAN Appliance. *See* STK SJ Mem. at 20 ("NuSpeed/Cisco developed StorageTek's SAN Appliance"). Similarly, STK's claim that Hughes "was simply evaluating Cisco's product for use by StorageTek" is false. *See* STK Mem. at 8-9, n.1. Hughes inquired of his boss whether to buy Cisco's product because "at the time we were in a lawsuit with Cisco" and he "had been involved with the decisions of whether or not to file a lawsuit." 3-31-05 Anderson Aff., Ex. A at 135-36. There is nothing in STK's reargument that justifies denying Cisco's motion.

**F. <u>The Conduct Of Brooks And Lewry Violated 28 U.S.C. § 1927</u>**

Attorneys Brooks and Lewry argue that they should not be held liable for any of Cisco's fees because "the court must consider more than the mere fact that" STK "ultimately lost the case." STK Mem. at 11 (citing *Gallerani v. Town of Plymouth*, 356 F. Supp.2d 3 (D. Mass 2005)). At last, Cisco and STK agree on something. The fee award for violation of § 1927 does indeed rest more than the loss of the case; it rests upon the sorry history of vagueness, evasion and theory-shifting that marked this case. It rests upon the knowledge of STK's attorneys that Senior Research Fellow Hughes found no misappropriated trade secrets, and on their astonishing refusal to let their technical expert even look at Cisco's device. It rests on bad faith conduct that vexatiously multiplied these proceedings, and that conduct justifies a fee award.

**G. <u>STK Offers Nothing To Avoid Sanctions Under The Court's Inherent Powers</u>**

In addressing the Court's inherent powers, STK merely repeats its arguments and asserts in conclusory fashion that it "initiated and pursed each of their [sic] claims in 'good faith.'" STK Mem. at 12. STK offers no evidence of that fact except to claim it retained "qualified expert witnesses." *Id.* at 13. Of course, both this Court and the Eighth Circuit reached the opposite conclusion about the qualifications of STK's experts. STK's arguments must be rejected.

**H. Cisco Properly Supported Its Claim For Attorneys' and Expert Fees**

STK claims that Cisco did not adequately support its motion for fees. First, STK argues that Cisco failed to analyze the various factors for determining fees. *See id.* at 13. That is simply false. *See* Cisco's Mem. at 26-27. Second, STK asserts that many cases award much smaller fee amounts. This silly argument ignores the facts that (a) this case involved a $450 million damage claim; (b) the cases STK cites all involve much smaller claims; and (c) courts do make large fee awards where justified. *See, e.g., Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 2002 WL 1733681 at *16 (S.D.N.Y. July 26, 2002) ($26,914,070 in attorneys' fees and disbursements) (3-30-05 Anderson Aff., Ex. 37). Cisco's fee motion should be granted.

## II. CONCLUSION

STK brought a baseless claim, with foreknowledge of its lack of merit, and litigated it in a way designed to maximize Cisco's expense. That is precisely why fee-shifting statutes and doctrines exist. Cisco requests that its motion for attorney's and expert fees be granted.[1]

Dated: May 16, 2005

DORSEY & WHITNEY LLP

By _s/ Clifford S. Anderson_________
Roy A. Ginsburg, Bar Number 123158
Joseph W. Hammell, Bar Number 172698
David Y. Trevor, Bar Number 152997
Clifford S. Anderson, Bar Number 227201
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

**Attorneys for Defendant Cisco Systems, Inc.**

---

[1] Attached as Exhibit 2 to the May 16, 2005, Anderson Affidavit is an invoice evidencing approximately $34,000 in attorneys' fees in connection with preparing Cisco's motion for attorneys' fees and expert witness fess as well as its Bill of Costs. Cisco also seeks reimbursement for such fees less approximately $2,000 that would represent 50% of Cisco's fees associated with preparing its Bill of Costs related to non-trade secret claims.