Anderson Aff. Ex. 16

Westlaw.

Exhibit A (cont.)



Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.
Daniel C. MARTINO and Sandra A. Martino, Plaintiffs,
v.
UNITED STATES OF AMERICA, Defendant.
**No. Civ.95-748(JRT/RLE).**

March 20, 2002.

John E. Trojack, Law Office, West St. Paul, Minnesota, for plaintiff.

Patricia R. Cangemi, Assistant United States Attorney, Office of the United States Attorney, Minneapolis, Minnesota, for defendant.

MEMORANDUM OPINION AND ORDER ON MOTION FOR REVIEW OF COST JUDGMENT

TUNHEIM, J.

*1 Plaintiffs have prevailed in a medical malpractice action brought against defendant under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* Judgment was entered for plaintiffs on November 8, 1999. Plaintiffs submitted a Bill of Costs to the Court on December 28, 2000, and the Clerk issued a Cost Judgment in favor of plaintiffs on February 26, 2001 in the amount of $3,175.63. This matter is now before the Court on plaintiffs' motion for review of the Cost Judgment.

ANALYSIS

Pursuant to Federal Rule of Civil Procedure 54(d), costs other than attorneys' fees are allowed "as of course to the prevailing party unless the court otherwise directs." Taxation of costs against the United States is governed by the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. [FN1] Such costs are limited to those enumerated in 28 U.S.C. § 1920. [FN2] *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987); *Hull v. United States*, 978 F.2d 570, 572-73 (10th Cir.1992). Plaintiffs object to three aspects of the Clerk's Cost Judgment: (1) refusal to tax $205.00 for service fees for private process servers; (2) refusal to tax more than the statutory $40.00 per day for plaintiff's expert witness fees; and (3) refusal to tax $7,257.40 in "other costs." This Court must now determine whether any of these costs is permitted under § 1920.

FN1. The EAJA provides in relevant part:
Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title ... may be awarded to the prevailing party in any civil action brought by or against the United States....
28 U.S.C. § 2412(a)(1).

FN2. 28 U.SC. § 1920 provides in relevant part:
A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

I. Private Service of Process

Plaintiffs argue that their costs of $205.00 for hiring private process servers should be taxed to defendant. The Eighth Circuit has held that costs of private process servers are not taxable as costs because § 1920 contains no provision for such expenses. *Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir.1985). *See United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 172 (2d Cir.1996) (agreeing with *Crues* ); *Pion v. Liberty Dairy Co.*, 922 F.Supp. 48, 53 (W.D.Mich.1996) (same). Plaintiffs argue that the Ninth Circuit's decision in *Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175 (9th Cir.1990) should dictate the Court's action here. *Alflex* disapproved of the Eighth Circuit's reasoning in *Crues*, and held that private service fees are taxable because the U.S. Marshal rarely serves process today. *See id.* at 178 & n .6.

Plaintiffs' citation also recognizes that courts are split on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this matter. *Crues* is an older case, and if presented with the question today, the Eighth Circuit might decide that private service costs are taxable. *See, e.g.,* Collins v. Gorman, 96 F.3d 1057, 1059-60 (7th Cir.1996) (holding that private service fees are taxable because § 1920 refers to fees "of" the marshal, not fees "to" the marshal, and noting that *Crues* did not consider this approach); *Evergreen Pipeline*, 95 F.3d at 172 (discussing but declining to adopt possible grounds to hold that private service fees are taxable). On the other hand, the Eighth Circuit may choose to keep its present rule. In the meantime, this Court's obligation is clear. *Crues* has not yet been revisited by the Eighth Circuit; in the absence of contrary controlling authority, this Court is bound by the Court of Appeals' decision that plaintiffs' private service fees are not taxable. Accordingly, the Court holds that plaintiffs are not entitled to taxation of $205.00 in service fees.

II. Expert Witness Costs

*2 Plaintiffs object to the Clerk's failure to tax the costs of expert witness Dr. Marmorstein beyond the statutory attendance fee provided for in 28 U.S.C. § 1821. Plaintiffs claim that they should be entitled to $7,122.00, [FN3] which covers Dr. Marmorstein's retainer, "medical record review," and deposition fees, as well as his airline travel. [FN4]

FN3. This amount includes $40 that is "associated with" plaintiff's expert Dr. Levine, who apparently arrived at a scheduled deposition but then refused to testify. *See* Cangemi Decl. Plaintiffs concede that these costs are not taxable. *See* Pl. Supp. Memo in Support of Review of Cost Judgment at 5. Therefore, the amount plaintiffs are requesting for expert witnesses should actually be stated as $7,082.00.

FN4. In their Supplemental Memorandum, plaintiffs also claim that an additional $97.49 should be taxed as a subsistence expense to cover Dr. Marmorstein's hotel costs. Plaintiffs did not include this amount in their Bill of Costs, nor have they submitted affidavits indicating that such charges are correct. This is in clear violation of the requirements set forth at 28 U.S.C §§ 1920 and 1928. Plaintiffs also did not include the hotel costs in the amount they request in the Conclusion of their Memorandum. The Court is therefore uncertain whether plaintiffs are actually requesting that the additional $97.49 be taxed, or if they are simply noting that they are entitled to it. Either way, because plaintiffs did not properly include the $97.49 in their Bill of Costs and made no mention of it in their attorneys' affidavits, the Court determines that the amount is not properly presented and declines to address it.
Plaintiffs' memorandum also alludes to a deposition by Dr. Norquist. Again, neither the Bill of Costs nor any of plaintiffs' affidavits attest to such a deposition. Although the record contains veiled references to Dr. Norquist, the Court also concludes that any charges for his fees are not properly before the Court.

1. Attendance Fees

Absent explicit statutory authority to the contrary, the recovery of costs for expert witnesses that are not court-appointed is limited to $40 per day, as provided in 28 U.S.C. § 1821(b). *Crawford*, 482 U.S. at 445. Plaintiff argues that this Court should follow the traditional Eighth Circuit rule as articulated in *Paschall v. Kansas City Star Co.*, 695 F.2d 322 (8th Cir.1982). That approach permitted district courts to award expert fees when an expert's testimony was crucial to the resolution of the issues decided in the case. *Id.* at 338-39. *Paschall* based its holding upon dicta from the Supreme Court's decision in *Farmer v. Arabian Amer. Oil Co.*, 379 U.S. 227 (1964). *See Paschall*, 695 F.2d at 338-39. *See also Gilbert v. City of Little Rock, Arkansas*, 709 F.Supp. 856, 862 (E.D.Ark.1987), *aff'd*, 867 F.2d 1062 (8th Cir.1989) (explaining that *Paschall* was based upon *Farmer* ). In *Crawford*, however, the U.S. Supreme Court expressly disapproved of the *Farmer* language, calling it "classic *obiter*, something mentioned in passing, which is not in any way necessary to the decision of the issue before the Court." *Crawford*, 482 U.S. at 443. The Court held in *Crawford* that Congress has passed detailed statutes regarding witness fees, broadening their availability in certain statutes. *Id.* at 444. Thus, the Court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

concluded, federal courts are not "empowered to exceed the limitations explicitly set out in §§ 1920 and 1821 without plain evidence of congressional intent to supersede those sections." *Id.* at 445. *See* Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane 10 *Federal Practice & Procedure: Federal Rules of Civil Procedure* § 2678 (3d ed.). *See also* Hull, 978 F.2d at 572-73 (holding that the Supreme Court's rationale in *Crawford* confines taxation of costs to the United States under EAJA to the limits prescribed in §§ 1920 and 1821). The Eighth Circuit has recognized this clarification of doctrine, stating that "[i]n light of *Crawford,* this Court is convinced that it can tax as costs expert witness fees in excess of the [$40]-per-day limit of § 1821 only where expressly authorized by statute or agreement." *Gilbert,* 709 F.Supp. at 862 (emphasis added). The present case is brought for medical malpractice under the Federal Tort Claims Act, which does not explicitly authorize granting expert witness fees in excess of the statutory $40-per-day limit. The record shows that Dr. Marmorstein's services were used on two days. Therefore, the Court holds that the Clerk correctly determined that plaintiffs are entitled to no more than $80.00 for expert witness fees.

2. Witness Travel Expenses

*3 Plaintiff also requests that Dr. Marmorstein's travel expenses of $1,432.00 be taxed as costs. Section 1821(c)(1) provides that "a witness who travels by common carrier shall be paid for the actual expenses of travel.... Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished." Although this fee was noted in the Bill of Costs and an accompanying affidavit, the Court finds no receipt in the record. Plaintiffs did belatedly submit a Visa credit card statement, which contained a charge to Northwest Airlines and to a travel agent. The Court accepts the affidavit of plaintiffs' counsel John Trojack that this expense is correct and that the travel was necessary to the litigation. *See* *Holmes v. Cessna Aircraft Co.,* 11 F.3d 63, 64 (5th Cir.1994) (considering an affidavit from trial counsel sufficient to satisfy the "evidence of actual cost" requirement). In light of this affidavit, the Court will also presume that such travel was done "at the most economical rate reasonably available." 28 U.S.C. § 1821(c)(1). Therefore, the Court holds that plaintiffs are entitled to taxation of $1,432.00 in travel expenses.

III. "Other Costs"

Plaintiffs object to the Clerk's failure to tax $7,257.40 in "Other Costs," "Delivery Charges," and "Miscellaneous Expenses Incident to Discovery." These expenses, which are listed in Exhibit A to the Bill of Costs and in the Affidavit of Daniel A. Schermer, apparently include on-line and other research, fees for review of medical records, delivery charges, and airline fares. In support of their claims, plaintiffs cite to the Ninth Circuit decision in *Alflex,* claiming that the Court may interpret the meaning of terms used in § 1920. This much is certainly true. Plaintiffs rely, however, on *International Wood Processors v. Powder Dry, Inc.,* 598 F.Supp. 299 (D.S.C.1984), which itself relies on the Supreme Court's now-discredited dicta from *Farmer.* Thus, despite their citation to *Crawford,* plaintiffs essentially argue that this Court may tax costs that are not provided for in § 1920. As discussed above, this Court may not do so absent independent statutory authority. For the reasons discussed herein, the Court therefore determines that none of these "other costs" are taxable as costs as that term is used in § 1920.

The majority of these items appear to involve various types of research and review of documents. [FN5] It is well established in the Eighth Circuit that legal research--computerized and otherwise--"is a component of attorneys' fees and cannot be independently taxed as an item of cost." *Leftwich v. Harris-Stowe State College,* 702 F.2d 686, 695 (8th Cir.1983); *Benson v. Northwest Airlines, Inc.,* 1997 WL 122897 at *5 (D.Minn.1997). Therefore, the Court finds that the $4,460.37 in items listed by plaintiffs as "other costs" were properly excluded by the Clerk.

FN5. Some of these "other costs" also seem to be for services of expert witnesses. For the reasons discussed in Part II, the Court concludes that these expenses are not taxable under § 1920.

*4 Plaintiff also seeks reimbursement for several Federal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Express delivery charges. Delivery services like Federal Express are not "costs" as that term is used in § 1920, but are in fact out-of-pocket expenses. *Hollenbeck v. Falstaff Brewing Corp.,* 605 F.Supp. 421, 439 (D.Mo.1984) *aff'd,* 780 F.2d 20 (8th Cir.1985). *See also Cody v. Private Agencies Collaborating Together, Inc.* 911 F.Supp. 1, 6 (D.D.C.1995) (refusing to tax Federal Express costs because they are not litigation costs, but "overhead costs" normally associated with the practice of law); *El-Fadl v. Central Bank of Jordan,* 163 F.R.D. 389, 390 (D.D.C.1995) (citing cases and noting that the "overwhelming weight of authority" have declined to tax costs for courier services and postage). Therefore, the Court finds that the $88.29 listed by plaintiffs as "delivery charges" is not covered by § 1920, and were properly excluded by the Clerk.

Finally, plaintiffs seek reimbursement for $1,705.00 in airline travel expenses, apparently incurred for plaintiffs' attorneys to attend depositions. It is also well established that attorneys' travel expenses are generally not allowable costs under § 1920. *Hollenbeck,* 605 F.Supp. at 439 ("Absent extraordinary or compelling circumstances, travel of attorneys is not a taxable cost of taking depositions."); *Wahl v. Carrier Mfg. Co., Inc.,* 511 F .2d 209, 217 (7th Cir.1975); *Meredith v. Schreiner Transport, Inc.,* 814 F.Supp. 1004, 1007 (D.Kan.1993) (citing cases). The Court therefore finds that the $1,705.00 listed by plaintiffs as "miscellaneous expenses incident to discovery" were properly excluded by the Clerk.

Accordingly, the Court holds that plaintiffs are not entitled to taxation of $7,257.40 for "other costs."

ORDER

Based on the foregoing, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that plaintiffs' Motion for Review of Cost Judgment [Docket No. 187] is GRANTED in part and DENIED in part as set forth in the text of the Opinion accompanying this Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Anderson Aff. Ex. 17

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

STORAGE TECHNOLOGY CORPORATION,

*Plaintiff,*

-vs-

CISCO SYSTEMS, INC.,

*Defendant.*

Civil File No. 00-2253 (MJD/JGL)
Magistrate Judge Jonathan G. Lebedoff
Honorable Michael J. Davis

## STORAGE TECHNOLOGY CORPORATION'S THIRD SUPPLEMENTAL RESPONSES TO DEFENDANT CISCO SYSTEMS, INC.'S FIRST SET OF INTERROGATORIES

BK
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400

## GENERAL OBJECTIONS

1. StorageTek objects to Defendant's instructions and definitions to the extent that they impose obligations on StorageTek which differ from the requirements of the Federal Rules of Civil Procedure. StorageTek will comply with the Federal Rules of Civil Procedure when responding to these Requests.

2. StorageTek objects to the provision of any information protected by the attorney client privilege and/or the doctrine of work product protection, and, to the extent that the interrogatories seek such information, they are objected to on the grounds of said privilege and doctrine. Inadvertent disclosure of such information shall not constitute a waiver of any privilege or any other basis for objecting to discovery, or of the right of StorageTek to object to Defendant's use of such information, and to demand and seek the return of any such information that may be inadvertently disclosed. StorageTek does not presently waive any portion of this privilege and asserts entitlement to the full extent of the doctrine of work product protection.

## PREAMBLE

StorageTek hereby submits its Third Supplemental Responses to Defendant Cisco Systems, Inc.'s First Set of Interrogatories. These responses are based upon information presently known to StorageTek, and the right of supplementation or amendment is hereby expressly reserved, if it is later determined that omissions or errors have been made herein.

BK
LAW OFFICES
Brooks & Kushman P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400

The fact that interrogatories have been answered in part shall not be construed as a waiver of all or any part of any objection made by StorageTek or which could have been made by StorageTek.

The fact that StorageTek has responded to any interrogatories shall not be deemed an admission of the relevancy, materiality or admissibility in evidence of that response.

StorageTek objects to defendant's definition of the term "document." Whenever the term "document" appears in Defendant's First Set of Requests for the Production of Documents, StorageTek shall construe that term to have the same meaning as given to it by the Federal Rules of Civil Procedure.

StorageTek objects to defendant's definition of the term "you" or "your." When responding to Defendant's First Set of Interrogatories, StorageTek shall construe the term "you" or "your" to mean plaintiff Storage Technology Corporation only.

StorageTek objects to defendant's definition of the term "representative" which is irrelevant in view of StorageTek's objection to the definition of "you" and "your."

StorageTek objects to defendant's definition of the term "communication" to the extent that it imposes a different meaning than that used in ordinary English.

Cisco's definition of "relates to" and "relating to" makes the interrogatories over broad and impossible to answer because it is not possible to determine with specificity which interrogatories fall within the request. Accordingly, StorageTek will interpret the terms to mean documents that expressly discuss the subject matter of the interrogatory.

StorageTek objects to the statement that singular words refer to plural words. Singular words are singular.

BK
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400

StorageTek objects to the instructions in Defendant's First Set of Interrogatories to the extent that they impose duties and obligations different from those imposed by the Federal Rules of Civil Procedure.

StorageTek objects to defendant's designation of the relevant time period cited in the definitions and instructions section of Defendant's First Interrogatories because it is overbroad in scope. StorageTek shall construe the relevant time period to begin in November of 1999 when NuSpeed was formed.

BK
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400

## INTERROGATORIES

### INTERROGATORY NO. 1.

For each separate paragraph of your Complaint, identify the person, document, or other source of information upon which you relied for the allegations contained in that paragraph.

### SECOND SUPPLEMENTAL RESPONSE:

StorageTek objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome. StorageTek objects to this Interrogatory on the grounds that the information requested is protected by the attorney-client privilege and/or the attorney work product doctrine. StorageTek objects to this Interrogatory on the grounds that defendant has propounded it for the purpose of harassment and to make this litigation more vexatious than necessary. Without waiver of the foregoing objections, StorageTek provides the following response.

The individuals whose knowledge was relied upon for the allegations contained and their general areas of knowledge are provided in the following chart: Responsive non-privileged documents have been produced and additional information was obtained from the NuSpeed and Cisco we sites.

| | |
|---|---|
| Bob Munsey | Primarily Employment Issues |
| Scott Nelson | Employment and Technical Issues |
| Reed Nelson | Primarily Technical Issues |
| Brad Stamas | Employment and Technical Issues |
| Ravi Kavuri | Employment and Technical Issues |

BK
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400

| | |
|---|---|
| Jim Hughes | Primarily Technical Issues |
| Sheri McCallum | Primarily Employment Issues |
| Rob Bartee | Employment and Technical Issues |
| Peter Hahn | Employment and Technical Issues |
| Jeremy Swift | Primarily Employment Issues |
| Chris Van Krevelen | Primarily Employment Issues |
| Rod Nelson | Primarily Employment Issues |
| Wade Oberpriller | Primarily Employment Issues |

**INTERROGATORY NO. 2**

Identify each and every current or former employee of StorageTek who allegedly was solicited or recruited to join NuSpeed or Cisco and/or who subsequently became an employee of NuSpeed or Cisco, and for each such person, state the following:

a. the beginning and ending date of such person's employment with StorageTek and the positions held by such person while at StorageTek;

b. whether that person's employment with StorageTek was terminated voluntarily or involuntarily; and

c. a detailed description of any act or omission by each such person which is a basis for any cause of action in your Complaint, including, without limitation, specific identification of any contract, agreement, or other obligation which you allege was breached by such person and/or a specific identification of any trade secret you claim such person misappropriated, misused, or disclosed.

**SECOND SUPPLEMENTAL RESPONSE:**

StorageTek responds that the former StorageTek employees solicited or recruited to join NuSpeed or Cisco and/or who subsequently became an employee of NuSpeed or Cisco include: David Peterson, John Leyes, Erika Hohenstein, Ted Schmitz, John Massey, George

BK
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400

Black, Don Rog, Dennis Hadders, Stan Mros, Mark Schrandt, Darren Vickers, Matt Massey, Linda Sharkey, Robert Lanoux, Ed Fiore, Michael Chaffin, Steve DeGroote, David Thompson, David Huhne, John Motor, Anthony Beltran, Daniel Anonen, Dave Myers, Craig Johnson, Mark Bakke, Tim Kuik, Mark Cree, Jeremy Swift, Chris VanKrevelen, Rod Nelson, Wade Oberpriller, Tim Mueggenberg, Steven Pheneger, Lou Mazzone, Kevin Whalen, Ken Widstorm, Doug Ingraham, Brad Stamos and Ravi Kavuri.

a. Federal Rule of Civil Procedure 33(d) allows a party to produce business records in lieu of responding to an interrogatory. The information requested in this subparagraph can be obtained from the employment records of those former StorageTek employees who now work for NuSpeed/Cisco. StorageTek has already produced those employment records.

b. Federal Rule of Civil Procedure 33(d) allows a party to produce business records in lieu of responding to an interrogatory. The information requested in this subparagraph can be obtained from the employment records of those former StorageTek employees who now work for NuSpeed/Cisco. StorageTek has already produced those employment records.

c. StorageTek objects to this interrogatory as premature as some of this information is in Cisco's possession and Cisco has not yet served complete responses to StorageTek's outstanding discovery. Moreover, the Complaint alleges improper acts by Cisco/NuSpeed. These acts include improperly and unfairly targeting StorageTek employees (particularly those with specific technical information) for hiring and using knowledge of StorageTek's confidential pay structure, benefits system, salary or other information to recruit

BK
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400

StorageTek employees. Some former employees actively participated in the raiding of StorageTek personnel in violation of agreements signed with StorageTek. (*See* Supplemental Response to Interrogatory 7.) These agreements have already been produced. Additionally, some employees of NuSpeed/Cisco were key employees of StorageTek's MRDC. As such, these employees owed fiduciary duties to StrorageTek including a duty: (1) to keep secret, and to not use, StorageTek's confidential, proprietary information, and (2) not to recruit or try to recruit employee away from StorageTek. (*See* Supplemental Response to Interrogatory No. 7.)

**INTERROGATORY NO. 3**

Identify each StorageTek facility where any person worked who was solicited to become or did become a NuSpeed or Cisco employee, and for each facility provide the following information:

a. the number of employees at each such facility at the beginning of each quarter of each year from January 1, 1998, through the present;

b. the identity of each employee working at such facility at any time from January 1, 1998, through the present with whom you had a contract or agreement containing a covenant not to compete, a covenant not to solicit StorageTek employees, or any agreement relating to confidential information or trade secrets;

c. the identity of each employee who has been involuntarily terminated from each such facility from January 1, 1998, through the present; and

d. the identify of each employee who has voluntarily terminated his or her employment from each such facility from January 1, 1998.

BK
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400

SECOND SUPPLEMENTAL RESPONSE:

The facility from which NuSpeed/Cisco raided employees is StorageTek's Minneapolis Research and Development Center (MRDC). This facility is located in Maple Grove, Minnesota.

a. Federal Rule of Civil Procedure 33(d) allows a party to produce business records in lieu of responding to an interrogatory. The information requested in this subpararaph can be obtained from the headcount reports fo StorageTek's MRDC being produced contemporaneously.

b. StorageTek objects to this Interrogatory on the grounds that it is unduly burdensome. StorageTek objects to this Interrogatory on the grounds that it is directed to the discovery of sensitive confidential business information and trade secrets. Without waiving the foregoing objections, StorageTek believes each person employed at its MRDC had an agreement containing a covenant not to compete, a covenant not to solicit StorageTek employees, or any agreement relating to confidential information or trade secrets.

c. StorageTek objects to this Interrogatory on the grounds that it is not relevant to the claim or defense of either party. StorageTek objects to this Interrogatory on the grounds that defendant has propounded it for the purpose of harassment and to make this litigation more vexatious. Without waiving the foregoing objections, one MRDC employee was involuntarily terminated in 2000. Pursuant to Rule 33(d), StorageTek has produced documents responsive to this Interrogatory.

d. StorageTek objects to this Interrogatory on the grounds that it is not relevant to the claim or defense of either party. Without waiving the foregoing objection, 86

BK
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400

MRDC employees have voluntarily terminated their relationship with StorageTek in 2000. Pursuant to Rule 33(d), StorageTek has produced documents responsive to this Interrogatory.

**INTERROGATORY NO. 4**

Describe in detail the restructuring and cost-saving measures that StorageTek has undertaken from January 1, 1999, through the present, including, without limitation: reductions in force; hiring freezes; restrictions on salary increases or bonuses or other changes in compensation or bonus structures and systems for employees; discontinuation of any products, services, business, research and development projects or other projects.

**SUPPLEMENTAL RESPONSE:**

To the extent this interrogatory seeks information about locations other than StorageTek's Minnesota Research and Development Center, StorageTek objects to this Interrogatory on the grounds that it is not relevant to the claim or defense of either party. StorageTek objects to this Interrogatory as being overbroad in scope, this request could encompass every business decision made by StorageTek in the last two years. Additionally, StorageTek also objects to this interrogatory to the extent that it implicates the trade secret issues in this case. As agreed by the parties, responses to the trade secret matters will not commence until the Court determines the sequence of production.

Without waiving the foregoing objections, StorageTek is providing business records contemporaneously herewith in lieu of responding to this interrogatory in accordance with Federal Rule of Civil Procedure 33(d). The information requested can be obtained from documents referencing the success sharing, retention, and voluntary separation programs. Furthermore, due to the breath of this interrogatory StorageTek is continuing to search for other information responsive to this interrogatory and will supplement this response if

BK
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400

appropriate. StorageTek would also appreciate further discussion with Cisco to define the proper scope of this request.

**INTERROGATORY NO. 5**

Identify each and every person, whether a StorageTek employee or not, who was involved in or knowledgeable about the StorageTek's conception, design, technology, development, and/or marketing of any device for joining computer networks, including, without limitation: the conception and evaluation of two versions of such a device referred to in paragraph 6 of your Complaint; the decision to develop one version of such a device and to postpone the development of another version, as alleged in paragraphs 6 and 7 of your Complaint; and the conception, design, development, and/or marketing of the device referred to as StorageNet 6000. For each such person identified, describe the nature and extent of such person's knowledge.

**THIRD SUPPLEMENTAL RESPONSE:**

StorageTek objects to this interrogatory as being overbroad in scope because it is not limited to the devices at issue in this lawsuit. Further, this interrogatory unduly burdensome as it seeks identification of "each and every" person who was "knowledgeable about" the technology and/or marketing of various StorageTek products. This would include thousands of individuals that had access to public documents concerning the SN6000 and its sale. StorageTek further objects to this interrogatory as vague and ambiguous with respect to its usage of "describe the nature and extent of such person's knowledge" and "knowledgeable about."

To the extent not otherwise objectionable, StorageTek responds by stating that such persons include most present and past employees of StorageTek and StorageTek suppliers under a confidentiality obligation. Documents have been produced identifying such individuals and companies. For more particular identification of knowledgeable individuals, see

BK
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400

StorageTek's Particularized Trade Secret Statement and StorageTek's response to Interrogatory No. 1. Further, at least the following individuals were involved with the second type of the device identified in the Complaint: Mark Schrandt, Mark Burke, Ed Fiore, Don Rog, Doug Ingraham, Nancy Cohn, John Lupes, Ravi Kavuri, Brad Stamos, and Jim Hughes.

**INTERROGATORY NO. 6**

Identify and describe every comment, statement, or admission by any director, officer, employee, agent, or representative of NuSpeed or Cisco, or any person acting on behalf of NuSpeed or Cisco, which you claim is relevant to any issue in this case including, without limitation, specific identification of: the person who made such comment, statement, or admission, including, without limitation, the "NuSpeed investor" referred to in paragraph 10 of your Complaint; and any person(s) who witnessed or heard the alleged comment, statement, or admission.

**SUPPLEMENTAL RESPONSE:**

StorageTek objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome. StorageTek objects to this Interrogatory as premature. Discovery has only recently begun and Cisco has not yet served responses to StorageTek's outstanding discovery. With respect to the "NuSpeed Investor" in ¶10 of the Complaint, the gentleman's name is Charles Beeler. Pursuant to Rule 33(d), StorageTek has produced documents responsive to this Interrogatory.

**INTERROGATORY NO. 7**

Identify specifically any director, officer, employee, agent, or representative of NuSpeed or Cisco, or any person acting on behalf of NuSpeed or Cisco, who allegedly engaged in any act or omission or threatened act or omission upon which you premise any of the claims

BK
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
(248) 358-4400